DANIEL J. BERGESON, State Bar No. 105439
dbergeson@be-law.com
MELINDA M. MORTON, State Bar No. 209373
mmorton@be-law.com
JAIDEEP VENKATESAN, State Bar No. 211386
jvenkatesan@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
GUZIK TECHNICAL ENTERPRISES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUZIK TECHNICAL ENTERPRISES, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WESTERN DIGITAL CORPORATION, a Delaware corporation, WESTERN DIGITAL TECHNOLOGIES, INC., a Delaware corporation, WESTERN DIGITAL (FREMONT), INC., a Delaware corporation, WESTERN DIGITAL (THAILAND) COMPANY LIMITED a Thailand corporation, and WESTERN DIGITAL (MALAYSIA) SDN.BHD., a Malaysia Corporation, inclusive,<br><br>Defendants. | Case No. CV11-03786 PSG<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

Plaintiff Guzik Technical Enterprises ("GTE") states the following as its Complaint against Defendants Western Digital Corporation, Western Digital Technologies, Inc., Western Digital (Fremont), Inc., Western Digital (Thailand) Company, Ltd., and Western Digital (Malaysia) SDN.BHD (collectively "Defendants").

**THE PARTIES**

1. GTE, based in Mountain View, California, is a company that provides test solutions to the disk drive industry, as well as waveform acquisition tools for demanding ATE and OEM applications in avionics, signal intelligence, military electronics, physics, astronomy, semiconductors, and a variety of other disciplines.

2. Western Digital Corporation ("WDC") is a corporation organized and existing under the laws of Delaware having a principal place of business at 3355 Michelson Drive, Suite 100, Irvine, California 92612. Western Digital (including companies it has acquired) is a manufacturer of hard drives and solid state drives, and has been a GTE customer since 1992. Western Digital was founded in 1970, and has produced hard drives since 1988. Its storage products are marketed to OEMs, systems manufacturers, select resellers and retailers under the Western Digital and WD brands. It is headquartered in Irvine, California, with manufacturing facilities in California, Malaysia, Singapore, Thailand and Brazil; design facilities in southern and northern California, Colorado and Thailand; and sales offices around the world.

3. Western Digital Technologies, Inc. ("WDT") is a corporation organized and existing under the laws of Delaware having a principal place of business at 20511 Lake Forest Drive, Lake Forest, California 92630. On information and belief, WDT is a wholly owned subsidiary of WDC.

4. Western Digital (Fremont), Inc. ("WD Fremont"), is a corporation organized and existing under the laws of Delaware having a principal place of business at 44100 Osgood Road, Fremont, CA 94539. On information and belief, WD Fremont is directly or indirectly a wholly owned subsidiary of WDC. WD Fremont is involved in the research, development and fabrication of hard drive test systems, and heads for incorporation into hard drives.

5. On information and belief, Western Digital (Thailand) Co. Ltd. ("WD Thailand") is a corporation existing under the laws of Thailand having a principal place of business at 140 Moo 2

- 1 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

Bang Pa-In Industrial Estate, Klongjig, Bangpa-In, Ayutthaya, 13160, Thailand. On information and belief, WD Thailand is directly or indirectly a wholly owned subsidiary of WDC, and is an agent for WDC, and is responsible for the manufacture of hard drives for Defendants.

6. On information and belief, Western Digital (Malaysia) Sdn. Bhd. is a corporation existing under the laws of Malaysia having a principal place of business at Lot 3, Jalan SS 8/6, Sungei Way Free Industrial Zone, Petaling Jaya 47300. On information and belief, WD Malaysia is directly or indirectly a wholly owned subsidiary of WDC and is an agent for WDC, and is responsible for the manufacture of hard drives for Defendants.

## JURISDICTION AND VENUE

7. This action arises under the Patent Laws of the United States, U.S.C. 35 § 1 *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state statutory and common law claims in this Complaint pursuant to 28 U.S.C. §§ 1367(a) because such claims form part of the same case or controversy as the federal claims over which this Court has original jurisdiction.

8. This Court has personal jurisdiction over the Defendants because WDC conducts business in the State of California, has headquarters in the State of California, and operates a subsidiary (Western Digital (Fremont), Inc.) in Santa Clara County. In addition, the Defendants have submitted themselves to the jurisdiction of this Court under the Master Agreement for Purchase and Service of Test Systems between GTE and the Defendants in February 2004 (the "2004 Master Agreement") from which this dispute arises, and which specifies that "[a]ny dispute arising out of this Agreement will be subject to the exclusive venue of the state and federal courts in Santa Clara County, California."

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and/or 1400(b).

## INTRADISTRICT ASSIGNMENT

10. Assignment to this division is proper pursuant to Local Rule 3-2(c) and (e) as this action arises in the County of Santa Clara as set forth in the 2004 Master Agreement, and many of Defendants' acts underlying GTE's claims were undertaken by Defendants in Santa Clara County.

///

# FACTUAL BACKGROUND

11. GTE was founded in 1982 by Dr. Nahum Guzik, a pioneer in the technology for testing disk drive heads and media used in computer hard drives. A hard drive is a device that uses one or more magnetic disks to store and retrieve digital data. Hard drives are the primary storage device in the majority of personal computers and data storage subsystems, and are also used for data storage in many consumer electronics devices. Hard drives are ubiquitous in consumer and business information technologies, and the efficient and reliable manufacture of hard drives is essential to the industry.

## GTE'S Innovative Testing Technology

12. Hard drives include a Head-Disk Assembly ("HDA") comprised of heads, magnetic media, a head positioning mechanism ("actuator"), and spindle motor. In a hard drive, one or more magnetic disks on which data is written are positioned around a motor-driven spindle hub that rotates the disks. A Head Stack Assembly ("HSA"), comprised of a magnetic positioner and a pivot-arm module on which the individual heads are mounted, suspends a head directly above each spinning disk, so that the head can read data from, or write data to, the spinning disk.

13. The ability to accurately position the head with respect to the tracks on the disk so the head can accurately read and write data are critical to the performance of a hard drive. Dr. Guzik developed innovative testing equipment used by the leading disk drive manufacturers to test the heads and media when manufacturing hard drives to ensure optimal performance. WDC has stated that magnetic heads are one of the "major components currently used in the manufacture of our hard drives." Western Digital 2010 Annual Report and 10-K at 15. Western Digital dedicates its wafer fabrication facilities in Fremont, California and its slider fabrication facility in Bangpa-In, Thailand to the design and manufacture of heads and media, and related equipment. 2010 Western Digital Annual Report and 10-K at 14.

14. The required accuracy of head positioning has increased as the density of data stored on disks has increased with technological advances, since as Western Digital notes "[h]ead technology is one of the key components affecting areal density." 2010 Western Digital Annual Report and 10-K at 11. As such, the need to test such heads and media quickly and

- 3 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

accurately has become an even more critical part of the process of manufacturing hard drives, and the associated testing technology has increased in complexity with advances in hard disk capacity and density.

15. Since 1982, GTE has developed test equipment and associated software for testing heads and media used as components in hard drives. GTE's testing technology includes spinstands that provide the physical housing mechanics for testing the heads and media, and Read-Write Analyzers with the necessary hardware and software, which are an essential metric of performance testing. GTE's spinstands, Read-Write Analyzers, and associated hardware and software (collectively referred to as the "GTE Test Systems") are the product of years of effort and extensive research and development in hard drive testing solutions. GTE continues to innovate to improve the performance of GTE Test Systems and adapt them to new technological advances in the hard drive industry. GTE's innovative solutions have been widely used in the hard drive industry, including by the Defendants and companies acquired by the Defendants. GTE has protected its innovations and related intellectual property with patents, copyrights and trade secrets. Dr. Guzik and GTE hold over 65 patents on several electronic, mechanical, and optical innovations used in GTE's testing equipment.

16. Among GTE's innovations is the use of servo positioning in head test equipment. When written on tracks of a magnetic disk medium, servo data enables disk heads to be accurately positioned for reading and writing data. GTE developed the technology to use servo positioning in disk head testing equipment, dramatically increasing the performance of its head testing equipment. GTE patented its inventions in U.S. Patent No. 6,023,145 (the "'145 Patent"), entitled "Head And Disk Tester With A Thermal Drift-Compensated Closed-Loop Positioning System," and U.S. Patent No. 6,785,085 (the "'085 Patent"), entitled "Multi-Frequency Servo Bursts in Magnetic Disk Memory System."

17. The '145 patent was duly and legally issued to Anatoli Stein, Nahum Guzik and Alexander Varlakhanov on February 8, 2000. The '145 Patent describes an apparatus and process for testing hard drive heads and media. A copy of the '145 patent is attached as Exhibit A and incorporated herein by reference.

18. The '085 Patent describes a system and method of arranging multi-frequency servo burst patterns on a hard drive disk platter, which platter is then used to test hard drive heads and media. A copy of the '085 patent is attached as Exhibit B and incorporated herein by reference. The '085 patent has been assigned to GTE.

### GTE Customers Read-Rite and Western Digital Purchase GTE's Patented Equipment

19. Beginning in 1992, head manufacturer Read-Rite Corporation ("Read-Rite") began purchasing GTE Test Systems to use in its head manufacturing facilities in Fremont, California and Bangpa-In, Thailand. Read-Rite purchased several generations of GTE Test Systems, starting with the Spinstand S312. Read-Rite and GTE executed the Master Agreement for Purchase and Service of Test Systems on May 10, 1996 (the "1996 Master Agreement"), under which Read-Rite purchased hundreds of Spinstand S312s and other test equipment, such as the Spinstand 1701. A copy of the 1996 Master Agreement is attached as Exhibit C and incorporated herein by reference. Read-Rite sold disk drive heads to Western Digital until Western Digital acquired Read-Rite and its head manufacturing facilities in California and Thailand in 2003. Western Digital continued manufacturing heads at the former Read-Rite's facilities, and continued purchasing GTE Test Systems, including the Spinstands V2002 and DTR3000 – the latest generation of Guzik servo spinstands. In 2004, GTE and Western Digital executed the 2004 Master Agreement, which still governs the parties' transactions. A copy of the 2004 Master Agreement is attached as Exhibit D and incorporated herein by reference.

20. Between 1998 and 2011, Defendants purchased successive generations of GTE Test Systems, including testers that used GTE's innovative patented servo feedback mechanisms for positioning the read/write head on a magnetic disk. These systems included the Spinstand 1701/RWA 2550++A/RWA 2585 Series, the Spinstand V2002/RWA 200X Series, and the Spinstand DTR3000/DTR RWA 300X Series. To protect its intellectual property rights, GTE entered into contracts that prohibited the unauthorized use of the GTE Test Systems it provided its customers. The 1996 Master Agreement and the 2004 Master Agreement prohibit the reverse engineering, decompiling, disassembling, or deriving of source code used to operate the GTE Test

- 5 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

Systems, and prohibit the use of that software with any other equipment except under very narrow circumstances inapplicable in this case. 1996 Master Agreement, §19; 2004 Master Agreement, §5.2. The 1996 Master Agreement states that "Customer represents, warrants and covenants that it is purchasing the Product solely for the testing and design of disk drives, heads and media and will not disassemble, reverse engineer or otherwise investigate the Products for the purpose of discovering trade secret or other proprietary information relating to the design, manufacture or operation of the Products." 1996 Master Agreement, §19. The 1996 Master Agreement further provided that "[a]ll Confidential Information shall be kept in confidence by the receiving party the measure of that confidence being that the receiving party shall use the same degree of care but no less than reasonable degree of care to prevent and avoid unauthorized disclosure thereof by its employees as the receiving party uses to prevent and avoid such disclosure of its own information of similar nature which it does not desire to have disseminated or published. All Confidential Information shall be used by the receiving party solely for the purposes contemplated in the Agreement." 1996 Master Agreement, §18.

21. Under the 2004 Master Agreement, Defendants agreed that the GTE Test Systems would be considered GTE confidential information, and further agreed that they would "not use in any way for its own account or the account of any third party" any GTE confidential information. 2004 Master Agreement, §9. The 2004 Master Agreement further provided that "[d]uring the term of the Agreement or thereafter in the event of termination or expiration of this Agreement, neither party shall use or disclose any confidential information of the other, and shall not manufacture or have manufactured any devices, components, or assemblies utilizing the other's confidential information." 2004 Master Agreement, §9.

22. The 2004 Master Agreement further prohibits the modification of GTE Test Systems for three years following the delivery of each GTE Test System without providing GTE notice and the opportunity to provide such modifications. 2004 Master Agreement, §6.4.

**Defendants Use GTE Confidential Information and Intellectual Property to Manufacture Testers Using GTE's Patented Servo Technology**

23. Notwithstanding these provisions and GTE's intellectual property rights, GTE is

- 6 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

informed and believes that Defendants embarked on a campaign to use GTE's confidential information and intellectual property to create their own testers, instead of acquiring new testers from GTE. Specifically, in 2009 GTE discovered that Defendants had created at least two disk head testers, the EH-300 and the DCT-400 (also collectively referred to as the "WDC Testers") that use GTE's confidential and proprietary information protected by GTE's agreements with Defendants and its duly-issued U.S. Patents.

24. In the 1990's GTE delivered several hundred S312 testers to Defendants, including over 300 S312 testers after 1996. The GTE S312 Tester did not use servo feedback for positioning the read/write head on a magnetic disk. GTE then delivered in 1999 its first series of testers using servo technology, the Spinstand 1701. GTE continued to deliver to Defendants servo testers containing GTE's confidential and proprietary software and hardware, including Spinstands V2002 and DTR3000, after Western Digital acquired Read-Rite in 2003.

25. After receiving GTE Test Systems, Defendants decided to manufacture their own testing equipment using servo technology. GTE is informed and believes that Defendants modified GTE's S312 tester to create the EH-300. On information and belief, GTE alleges that Defendants reverse engineered the Spinstand 1701 and other servo testers to create the mechanism for providing servo feedback for use in positioning a read/write head on a magnetic disk that they then incorporated into their EH-300 tester. GTE is informed and believes that Defendants used confidential information about the GTE Test Systems disclosed only under the terms of the 1996 Master Agreement and 2004 Master Agreement, which prohibited any reverse engineering of the GTE Test Systems or other use of confidential information relating to the GTE Test Systems.

26. GTE is informed and believes that on or about the same time, Defendants also manufactured the DCT-400, another tester that utilizes servo feedback for positioning the read/write head on a magnetic disk in a manner that is substantially similar to that of the GTE Test Systems sold to Defendants. GTE is informed and believes that Defendants manufactured the DCT-400 using confidential information relating to the GTE Test Systems in contravention to the terms of the 1996 Master Agreement and 2004 Master Agreement.

27. GTE is informed and believes that the infringing WDC Testers and/or components thereof are designed and manufactured by or on behalf of Western Digital (Fremont), Inc. ("WDC Fremont") and are shipped to Western Digital fabrication facilities in Thailand and Malaysia. GTE is informed and believes that Defendants used confidential and proprietary GTE information contained within the software and hardware of the Spinstands 1701/RWA 2550++A, Spinstand V2002/RWA 200X Series, and Spinstand DTR3000/DTR RWA 300X Series provided to Defendants by GTE under the 1996 Master Agreement and 2004 Master Agreement.

28. The WDC testers have been and continue to practice and/or embody inventions that infringe GTE's '145 patent. The WDC Testers incorporate a head/disk tester having a thermal drift-compensated closed-loop positioning system for positioning a magnetic head. The WDC Testers utilize a method of positioning a magnetic head/disk tester wherein at least two servo burst signals are prewritten to a magnetic disk.

29. The WDC Testers have been and continue to practice and/or embody inventions that infringe GTE's '085 patent. The WDC Testers incorporate a system for positioning a read/write head on a magnetic disk medium that uses servo bursts of different frequencies to accurately position the head on a disk platter in the course of testing the heads and media. The WDC Testers use servo bursts of different frequencies to accurately position the head on a disk platter in the course of testing the heads and media.

30. The WDC Testers utilizing GTE's trade secrets and patent rights are used abroad to test heads and media as part of Defendants' manufacture of hard drives that are imported into the United States either as standalone hard drives or as components of other devices. Between 2005 and 2010, at least 20-35% of the hard drives manufactured using heads and media tested by the infringing WDC Testers have been imported into the United States. These may include the WD Caviar, WD Scorpio, WD VelociRaptor, and other Western Digital hard drives.

31. In addition to using GTE's confidential information and intellectual property, GTE is informed and believes that Defendants have modified GTE Test Systems and integrated third party equipment without providing notice to GTE or offering it the opportunity to make the

- 8 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

modifications, in contravention of the 2004 Master Agreement, which specifically requires such notification and opportunity.

32. Not surprisingly, after Defendants manufactured and started using the infringing WDC Testers and modifying GTE Test Systems in breach of the terms of the 2004 Master Agreement, Defendants' purchase of GTE Test Systems materially declined. GTE is informed and believes, and on that basis alleges, that such decline in purchases occurred as Defendants used GTE's patented, proprietary and confidential information and technology to develop, design, manufacture and use competing WDC Testers.

33. GTE is entitled to compensatory damages as a result of Defendants' conduct, including but not limited to lost profits and/or a reasonable royalty based on Defendants' manufacture and use of the infringing WDC Testers and importation of hard drives manufactured abroad using GTE's patented processes. GTE is further entitled to exemplary and punitive damages as a result of Defendants' conduct.

34. GTE is entitled to injunctive relief enjoining Defendants' further manufacture and use of the infringing WDC Testers and enjoining the importation of hard drives manufactured abroad using GTE's patented processes, as GTE is suffering irreparable harm due to Defendants' conduct.

**FIRST CAUSE OF ACTION**
**(Patent Infringement of U.S. Patent No. 6,023,145 against all Defendants)**
**(35 U.S.C. § 271)**

35. GTE incorporates by reference and realleges paragraphs 1 - 34 above.

36. GTE alleges that Defendants:

   (a) have directly infringed and continue to directly infringe, in violation of 35 U.S.C. §271(a), the '145 patent by making infringing WDC Testers and/or components thereof in the United States;

   (b) have infringed and continue to infringe, in violation of 35 U.S.C. §271(f), the '145 patent by exporting components of WDC Testers that are then assembled outside the United States in a manner that infringes the '145 patent; and

- 9 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

(c) have infringed and continue to infringe, in violation of 35 U.S.C. § 271(g), the '145 patent by importing and selling into the United States hard drives and/or components of hard drives that were manufactured outside the United States using a manufacturing process that infringes the '145 patent.

## SECOND CAUSE OF ACTION
**(Patent Infringement of U.S. Patent No. 6,785,085 against all Defendants)**
**(35 U.S.C. § 271)**

37. GTE incorporates by reference and realleges paragraphs 1 - 36 above.

38. GTE is informed and believes and on that basis alleges that Defendants:

    (a) have directly infringed and continue to directly infringe, in violation of 35 U.S.C. §271(a), the '085 patent by making infringing WDC Testers and components thereof in the United States;

    (b) have infringed and continue to infringe, in violation of 35 U.S.C. §271(f), the '085 patent by exporting components of WDC Testers that are then assembled outside the United States in a manner that infringes the '085 patent; and

    (c) have infringed and continue to infringe, in violation of 35 U.S.C. Section 271(g), the '085 patent by importing and selling into the United States hard drives and/or components of hard drives that were manufactured outside the United States using a manufacturing process that infringes the '085 patent.

## THIRD CAUSE OF ACTION
**(Breach of Contract by All Defendants)**

39. GTE incorporates by reference and realleges paragraphs 1 - 38 above.

40. GTE and Defendants entered into agreements that set forth the limitations on Defendants' use of GTE equipment and proprietary information, including:

    (a) Paragraph 19 of the 1996 Master Agreement under which Read-Rite stated that it "represents, warrants and covenants that it is purchasing the Product solely for the testing and design of disk drives, heads and media and will not disassemble, reverse engineer or otherwise investigate the Products for the purpose of discovering trade secret

- 10 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

or other proprietary information relating to the design, manufacture or operation of the Products."

(b) Paragraph 9 of the 2004 Master Agreement under which Defendants agreed not to use GTE confidential information "for their own account or the account of any third party," and further agreed that they would not "use or disclose any confidential information of [GTE], and shall not manufacture or have manufactured any devices, components, or assemblies utilizing any of the other's confidential information."

(c) Paragraph 6.4 of the 2004 Master Agreement under which Defendants agreed to notify GTE in writing in advance of its intent to integrate any GTE products with products of third parties and to first submit requests for modification or enhancement of GTE equipment to GTE.

41. Defendants' commitment to use GTE confidential information only in conjunction with GTE equipment and as part of a business relationship with GTE, and its commitment to notify GTE of its intent to modify GTE equipment, were material inducements for GTE in its agreement to share its confidential and proprietary information and equipment with Defendants.

42. GTE performed all conditions and covenants required to be performed under the agreements, save and except those excused by Defendants' breaches, acts and omissions.

43. GTE is informed and believes, and on that basis alleges that Defendants have materially breached their agreements with GTE by using GTE confidential and proprietary information to develop, fabricate and use competing head test systems and components.

44. GTE is informed and believes, and on that basis alleges that Defendants have materially breached their agreements with GTE by integrating third party equipment with GTE Test Systems delivered to Defendants, without providing notification to GTE or submitting a request for modification as required by the 2004 Master Agreement.

45. As a result of Defendants' material breaches of the agreements, GTE has been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Misappropriation of Trade Secrets Against all Defendants)**
**(California Civil Code § 3426, et. seq.)**

46. GTE incorporates by reference and realleges paragraphs 1 - 45 above.

47. GTE's trade secrets are trade secrets as defined by the California Uniform Trade Secrets Act, California Civil Code § 3426, *et. seq.* (the "USTA"). GTE has taken reasonable steps to preserve the confidentiality of its trade secrets, and derives economic value from this information not being known.

48. As described above, GTE trade secrets were provided to Defendants under confidentiality obligations which limited the use of such trade secrets by Defendants. GTE is informed and believes, and on that basis alleges that Defendants knowingly and willfully misappropriated GTE's trade secrets and confidential and proprietary information to design, manufacture and use WDC Testers and components for GTE testers without GTE's authorization or consent.

49. Defendants' willful and knowing misappropriation has caused, and will continue to cause, irreparable harm to GTE. Unless and until enjoined, Defendants will continue to use and export GTE's trade secrets. Further, Defendants will be unjustly enriched in an amount that is separate and distinct from GTE's damages. Accordingly, GTE is entitled to an injunction during the pendency of this action, and permanently, restraining each such Defendant from engaging in such further acts in violation of trade secret laws.

50. As a proximate cause of the misappropriation of GTE trade secrets by Defendants, GTE has been damaged in that Defendants will continue to receive the benefits of GTE's trade secrets by designing, fabricating, and using competing hard disk head testers, and GTE will suffer the loss of revenues from lost sales of its products and services. As a result, GTE is entitled to actual damages and/or royalties.

51. GTE is informed and believes and on that basis alleges that in misappropriating GTE's trade secrets, and engaging in willful and malicious conduct and omissions alleged herein, Defendants are guilty of oppression, fraud and malice. GTE is therefore entitled to exemplary and/or punitive damages and attorneys' fees.

## PRAYER FOR RELIEF

- 12 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

WHEREFORE, GTE respectfully requests that this Court enter a judgment in favor of GTE and against Defendants, as follows:

1. Ordering that the '145 patent is valid and enforceable, and that each defendant has infringed one or more claims of the '145 patent;

2. Ordering that the '085 patent is valid and enforceable, and that each defendant has infringed one or more claims of the '085 patent;

3. Ordering that Defendants have breached the terms of the 1996 Master Agreement and 2004 Master Agreement;

4. Ordering that Defendants have unlawfully misappropriated GTE's proprietary information and trade secrets;

5. Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees and attorneys, and all persons acting in active concert or participation with them, from designing, making, having made, offering to sell, selling, exporting or importing the WDC Testers and any other systems for testing disk heads and media in hard drives that infringe the '145 patent, and any hard drives made using a manufacturing process which infringes the '145 patent;

6. Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees and attorneys, and all persons acting in active concert or participation with them, from designing, making, having made, offering to sell, selling, exporting or importing the WDC Testers and any other systems for testing disk heads and media in hard drives that infringe the '085 patent, and any hard drives made using a manufacturing process which infringes the '085 patent;

7. Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees and attorneys, and all persons acting in active concert or participation with them, from using, designing, fabricating, copying, exporting, distributing or selling any GTE trade secrets and/or proprietary and confidential information, and/or any non-GTE products developed, made or used by referring to, derived from, and/or incorporating GTE trade secrets and/or proprietary and confidential information;

8. Awarding GTE such other injunctive relief that GTE may request and the Court may deem just and proper;

9. Awarding GTE general damages, statutory damages and compensatory damages, together with interest, in amounts to be proven at trial;

10. Awarding GTE Defendants' ill-gotten profits, gains or other benefits from their activities in amounts to be proven at trial;

11. Awarding GTE its consequential damages, together with interest, in an amount to be proven at trial;

12. Awarding GTE its attorneys' fees and costs of suit in this action;

13. Ordering that Defendants' misappropriation of GTE's trade secrets was willful and malicious, and awarding exemplary damages consistent with California Civil Code Section 3246.3(c);

14. Ordering that Defendants' patent infringement was willful and that damages awarded to GTE be increased under 35 U.S.C. § 284 to three times the amount found and measured; and

15. Awarding GTE such other and further relief as this Court may deem just and proper.

Dated: August ___, 2011

BERGESON, LLP

By: _____
Jaideep Venkatesan, Bar No. 211386
jvenkatesan@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
GUZIK TECHNICAL ENTERPRISES

- 14 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 3-6(a) of the Local Rules of the United States District Court for the Northern District of California, plaintiff Guzik Technical Enterprises demands a trial by jury of this action.

Dated: August 1, 2011

BERGESON, LLP

By: _____
Jaideep Venkatesan, Bar No. 211386
jvenkatesan@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
GUZIK TECHNICAL ENTERPRISES

- 15 -
COMPLAINT FOR PATENT INFRINGEMENT, BREACH OF CONTRACT, AND TRADE SECRET MISAPPROPRIATION