UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, et al., <br><br> Defendants and Counterclaim Plaintiffs, <br><br> and <br><br> WESTERN DIGITAL (THAILAND) COMPANY LIMITED and WESTERN DIGITAL (MALAYSIA) SDN.BHD, <br><br> Defendants. | Case No.: 5:11-cv-03786-PSG <br><br> **ORDER RE: GTE'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES** <br><br> **(Re: Docket Nos. 227, 233, 257, and 274)** |

Among its other claims, Plaintiff Guzik Technical Enterprises ("GTE") accuses Defendants Western Digital Corp., et al. (collectively, "Western Digital") of infringing U.S. Patent No. 6,023,145 ("the '145 patent"). Before the court are several motions brought by both parties: (1) Western Digital's January 15, 2013, motion for partial summary judgment of noninfringement of the '145 patent ("January 15 MPSJ"),[1] (2) Western Digital's July 23, 2013, motion for partial

---

[1] *See* Docket No. 131.

summary judgment of noninfringement of the '145 patent ("July 23 MPSJ"),[2] (3) Western Digital's motion for summary judgment on GTE's breach of contract claim,[3] (4) GTE's motion for summary judgment that the '145 patent is not anticipated or obvious,[4] and (5) GTE's motion to strike three of Western Digital's expert witnesses.[5]  The parties appeared for a hearing on these motions.

In this order, the court considers GTE's motion to strike Western Digital's untimely identified witnesses and the parties' motions to file related documents under seal.[6]  The court considers the balance of the motions in companion orders.

Having considered the parties' papers and arguments, the court DENIES GTE's motion to strike.  The court GRANTS-IN-PART the parties' motions to seal.

## I. BACKGROUND

### A.   Factual Background

The patents in this case describe hard drive disk test components.[7]  Hard drives consist of magnetic disks on which data is written.  Those magnetic disks encircle a motor-driven spindle hub that spins the disks.  To access the data, the hard drive uses a head-stack assembly ("HSA") with a head mounted on a pivot-arm module and a magnetic positioner.  The module and the positioner move the head above the spinning disk enabling the head to write data onto, or read data from, the disk.

---

[2] *See* Docket No. 235.

[3] *See* Docket No. 237.

[4] *See* Docket No. 238-2.

[5] *See* Docket No. 233.

[6] *See* Docket Nos. 238 and 251.

[7] Except where otherwise noted, the court derives these facts from GTE's complaint. *See* Docket No. 1.

2
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

The accuracy of the heads in accessing data on the disks is essential to the effectiveness of the hard drive. Increases in the data capacity of the magnetic disks demand even greater precision. GTE purportedly addressed this need with its hard drive testers, which analyze the performance of the heads. GTE sold testers to Read-Rite Corp. ("Read-Rite"), a head manufacturer. Western Digital, which used to purchase disk drive heads from Read-Rite, eventually acquired Read-Rite's assets.[8]

GTE argues both Read-Rite and Western Digital were subject to agreements that prohibited reverse engineering, decompiling, disassembling, or deriving source code from GTE's products. According to GTE, Western Digital violated the agreement and used GTE's testers and intellectual property to develop two testers of its own, the EH-300 and the DCT-400. These testers use servo burst feedback and a thermal drift-compensated closed-loop positioning system to determine the accuracy of the heads.

GTE says that Western Digital also infringed the '145 patent in the process. For this infringement GTE seeks lost profits.[9] On December 9, 2011, GTE served its initial disclosures specifically stating that it would seek both lost profits and reasonable royalties for Western Digital's infringement of the asserted patents and would seek lost profits for Western Digital's breach of its contracts with GTE.[10] In pursuit of its lost profits claim, on February 29, 2012, GTE served interrogatories asking Western Digital to identify all testers it developed in the United States, explain why those testers did not infringe, and identify its employees who are knowledgeable about those testers.[11] GTE also asked Western Digital to identify any efforts to

---

[8] *See* Docket No. 79 at ¶ 19.

[9] *See* Docket No. 1 at ¶ 33.

[10] *See* Docket No. 275 at 2 (citing Docket No. 227, Ex. R at 8-9).

[11] *See id.* (citing Docket No. 227, Ex. F at 6-8).

3
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

create a non-infringing alternative to the asserted patents.[12] According to GTE, it was not until June 11, 2013, that Western Digital identified for the first time four additional employees who are also apparently knowledgeable about what Western Digital could have built in 2007: William Cain, Rob Eaton, Terry Farren, and Herbert Lin.[13] Western Digital no longer asserts that Mr. Lin possesses useful information relation to the DBT tester.[14] Relying on conversations with these individuals Western Digital's damages expert, Mr. Pampinella, opines that the non-accused DBT tester could have been built in 2007 and served as a noninfringing alternative to the accused DCT-400 tester, weakening GTE's lost profits claim.

**B.  Procedural Background**

In August 2011, GTE filed this patent suit against Western Digital alleging infringement of U.S. Patent Nos. 6,023,145 ("the '145 patent") and 6,785,085 ("the '085 patent"). The complaint alleged Western Digital's products infringe claims 1-19 of the '145 patent and claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39 of the '085 patent. Western Digital answered and filed a counterclaim alleging that the '145 patent and the '085 patent are invalid and that GTE infringes four Western Digital patents: U.S. Patent Nos. 5,640,089 ("the '089 patent"), 5,844,420 ("the '420 patent"), 6,891,696 ("the '696 patent"), and 7,480,116 ("the '116 patent").[15]

The court denied Western Digital's motion to dismiss and set a case management schedule[16] with a February 10, 2012, deadline for GTE to serve infringement contentions on Western Digital and related documents in compliance with Patent L.R. 3-1 and 3-2.[17] The court

---

[12] *Id.* (citing Docket No. 227, Ex. F at 7).

[13] *Id.* at 4 (citing Docket No. 227, Ex. K at 4-5).

[14] *Id.* n.2.

[15] *See* Docket No. 79.

[16] *See* Docket No. 48.

held a claims construction hearing on September 25, 2012, and issued its constructions from the bench.

On January 15, 2013, Western Digital first moved for partial summary judgment of (1) invalidity and (2) noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent as well as (3) noninfringement of claims 20 and 29 of the '085 patent. GTE opposed Western Digital's motion and moved for relief under Rule 56(d). On March 12, 2013, the court heard arguments regarding the parties' summary judgment motions.

On February 6, 2013, the parties agreed to modify the case scheduling order: delaying the close of fact and expert discovery and the related deadline for dispositive motion practice. The trial date was continued from October 28, 2013, to December 2, 2013.[18]

On April 30, 2013, GTE sought leave on shortened time to amend its infringement contentions. GTE asserted that recently discovered evidence provided the requisite good cause for leave to amend. GTE, however, did not offer its proposed amended infringement contentions to the court or Western Digital. Instead, GTE sought leave only on the grounds that it had good cause and Western Digital would not be prejudiced based on its own assessment of its contentions.

On May 14, 2013, the court heard argument regarding GTE's motion for leave to amend its contentions and the court issued its order the same day denying GTE's request for leave. The court made no finding regarding either GTE's proffer of good cause or possible prejudice to Western Digital because, absent a review of the proposed infringement contentions, the court could not evaluate good cause or possible prejudice.[19]

---

[17] *See* Docket No. 57.

[18] *See* Docket No 143.

[19] *See* Docket No. 194.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

On July 19, 2013, the court issued an order addressing the summary judgment motions and providing the court's reasoning for its earlier-issued claim constructions.[20] In the July 19 order, the court held that the term "relatively short period of time" was indefinite and thus rendered claims 17 and 19 of the '145 patent invalid.[21] The court also granted summary judgment in Western Digital's favor on noninfringement grounds on claims 20 and 29 of the '085 patent.[22] Finding GTE's Rule 56(d) request persuasive, the court declined to rule on Western Digital's motion for summary judgment on the issue of noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent, instead deferring the issue until the court addressed the parties' respective dispositive motions filed in July 2013. The court invited both GTE and Western Digital to submit additional briefing (now before the court) regarding how GTE's subsequent discovery affected Western Digital's noninfringement arguments.

On July 29, 2013, the parties stipulated to dismissal of certain claims and counterclaims.[23] Western Digital agreed to dismiss with prejudice Counts V, VI, VII, and VIII of its counterclaims – specifically its claims that GTE infringed the '089 patent, the '420 patent, the '696 patent, and the '116 patent. In turn, GTE agreed to dismiss without prejudice Counts One, Two, Three, Four, Five, Six, Seven, and Eight of its counterclaims, in which it sought declaratory judgment of noninfringement and invalidity of Western Digital's four patents at issue. GTE also agreed to

---

[20] *See* Docket No. 224.

[21] *See* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").

[22] In Western Digital's original motion, Western Digital moved for summary judgment of claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39. *See* Docket No. 131-1. In GTE's opposition, GTE addressed only claims 20 and 29 because GTE dropped claims of infringement regarding claims 21, 24, 25, 30, 33, 34, 36, and 39. *See* Docket No. 222 at 8 n.3. The court thus addressed only claims 20 and 29 of the '085 Patent in its order. *See* Docket No. 224.

[23] *See* Docket No. 248.

6
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

dismiss with prejudice its trade secret misappropriation claim against Western Digital. GTE dropped all remaining claims from the '085 patent.

This case has significantly narrowed from the parties' original claims and counterclaims. For clarity, the court identifies the remaining claims: (1) GTE's infringement claim spanning claims 1-16 of the '145 patent, (2) Western Digital's claim for declaratory judgment of noninfringement and invalidity of the '085 and '145 patents, and (3) GTE's breach of contract claim.[24]

The court turns to the motions addressed in this order: GTE's motion to strike Western Digital's untimely identified witnesses and related sealing motions.[25]

## II. LEGAL STANDARDS

### A.  Motions to Strike

Fed. R. Civ. P. 26(a)(1)(A)(i) provides in part that "a party must, without awaiting a discovery request, provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – as that the disclosing party may use to support its claims or defenses," unless the use would be solely for impeachment. Parties have an ongoing obligation to supplement their Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties" during the discovery process or in writing.[26] "Rule 26(e) allows a party to 'supplement or correct' disclosures under Rule 26(a), not to add new

---

[24] *See* Docket No. 79.

[25] *See* Docket No. 238.

[26] Fed. R. Civ. P. 26(e)(1)(A).

7
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY
IDENTIFIED WITNESSES

witnesses who intend to offer entirely new evidence following the close of discovery."[27]

"Fed. R. Civ. P. 37(c) mandates that a party may not use evidence not previously disclosed as required by Fed. R. Civ. P. 26(a) and 26(e) unless the court finds the failure to disclose was substantially justified or harmless."[28]

Under Ninth Circuit law the court must balance several factors to determine if a party's failure to disclose was substantially justified or harmless. "In determining whether to preclude introduction of evidence pursuant to FRCP 37, courts consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence."[29] Pursuant to Rule 37(c)(1) "the burden is on the party facing sanctions to prove harmlessness."[30]

### B.     Sealing Motions

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[31] Accordingly, when considering a

---

[27] *Accentra Inc. v. Staples, Inc.*, Case No. 07-cv-5862-ABC-RZX, 2010 WL 8450890, at *7 (C.D. Cal. Sept. 22, 2010) (citing *Ford v. Maricopa County Super. Court Dept. of Adult Probation*, Case No. 08-cv-1977-PHX-GMS, 2010 WL 2266719, at *3 (D. Ariz. June 4, 2010) ("[Rule 26(e)] requires supplementation when a party learns that its prior disclosures are in some way incomplete or inaccurate. . . . Rule 26(e) does not give a party carte blanche authority to add new facts after discovery has closed.")).

[28] *Bolbol v. Feld Entm't, Inc.*, Case No. 5:11-cv-5539-PSG, 2013 U.S. Dist. LEXIS 14981, at *11 (N.D. Cal. Feb. 1, 2013); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting information not disclosed pursuant to Rule 26(a) "may be introduced if the parties' failure to disclose the required information is substantially justified or harmless").

[29] *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (internal quotations and citations omitted).

[30] *Yeti by Molly*, 259 F.3d at 1106.

[31] *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

sealing request, "a 'strong presumption in favor of access' is the starting point."[32] Parties seeking to seal judicial records relating to dispositive motions bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure.[33]

Records attached to nondispositive motions, however, are not subject to the strong presumption of access.[34] Because the documents attached to nondispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c).[35] As with dispositive motions, the standard applicable to nondispositive motions requires a "particularized showing"[36] that "specific prejudice or harm will result" if the information is disclosed.[37] "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice.[38] A protective order sealing the documents during discovery may reflect the court's previous determination that good cause exists to keep the documents sealed,[39] but a blanket protective order that allows the

---

[32] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[33] *Id.* at 1178-79.

[34] *See id.* at 1180.

[35] *Id.* at 1179 (internal quotations and citations omitted).

[36] *Id.*

[37] *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).

[38] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

[39] *See Kamakana,* 447 F.3d at 1179-80.

9
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed.[40]

In addition to making particularized showings of good cause, parties moving to seal documents must comply with the procedures established by Civ. L.R. 79-5. Pursuant to Civ. L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law." "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."[41] "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."[42]

## III. ANALYSIS

**A.    The Surprise to GTE**

The court first assesses when GTE had any indication Mr. Pampinella might rely on "private" conversations with the disputed Western Digital employees. GTE argues Western Digital identified the employees as having knowledge about "acceptable alternatives for the accused Western Digital testers and the Guzik V2002 testers," including the DBT tester, for the first time

---

[40] *See* Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

[41] Civ. L.R. 79-5(b). In part, Civ. L.R. 79-5(d)(1) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed" and an "unredacted version of the document" that indicates "by highlighting or other clear method, the portions of the document that have been omitted" from the redacted version.

[42] Civ. L.R. 79-5(e)(1). The Civil Local Rules have recently been amended shortening the time available to the designating party to file a supporting declaration from seven days to four days. As this rule change was only recently implemented the court applies the prior form of Civ. L.R. 79-5 for the purposes of this order.

on June 11, 2013, the same day that the parties exchanged their rebuttal expert reports.[43] The surprise GTE faced was exacerbated by Western Digital's failure to identify the DBT tester, why the DBT tester did not infringe GTE's patents, and the relevant witnesses in interrogatory responses.[44]

Western Digital counters that GTE cannot be surprised that Western Digital "was only able to respond fully to GTE's lost profits theory" after GTE adequately disclosed it "for the first time in GTE's damages expert report."[45] As to the interrogatories, Western Digital "objected to the extreme over breadth of the interrogatories and also objected to the term "Tester' as being "vague, ambiguous, over broad, [and] unduly burdensome."[46] Western Digital cannot be held responsible for not responding to GTE's interrogatories with respect to the DBT because it had no indication that the term tester included the DBT. The only testers GTE identified in its pleadings, infringement contentions, and discovery responses were Western Digital's EH-300 and DCT-400 and their predecessors. Furthermore, "GTE never moved to compel or provided any basis to seek discovery beyond the scope of its own contentions."[47] GTE cannot claim surprise at the identification of two of the rebuttal witnesses, Mr. Easton and Mr. Farren because they "were made known to GTE during discovery specifically in the context of the DBT tester."[48]

---

[43] Docket No. 227 at ¶ 16, Ex. K.

[44] *See* Docket No. 227 at ¶ 9, Ex. F; ¶¶ 7-8, Exs. D-E; ¶¶ 11-12, Exs. H-I; ¶10, Ex. G.  The court notes that, in addressing the surprise it faced, GTE raised unrelated discovery disputes that are not properly considered for the purposes of resolving this motion.

[45] Docket No. 256 at 12.

[46] *Id.* at 9 (citing Docket No. 258, Ex. T at 2).

[47] *Id.*

[48] Docket No. 256 at 12; *see also* Docket No. 258, Ex. Q at 259:8-10, 330:2-16, 331:9-12, 342:9-12, 430:18-431:5, 466:14-467:19; Ex. W at 246:10-247:4, 265:17-20, 281:2-282:4.

11
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

There is no real dispute that GTE was surprised by the late disclosure of Western Digital's witnesses. This factor favors granting GTE's motion.

**B.      GTE's Ability to Cure the Surprise**

GTE claims that to cure the surprise it would need to substantially replicate the discovery it has taken with regards to Western Digital's accused testers and update its expert reports at great expense. GTE identifies four lines of additional discovery: (1) whether Western Digital could make the DBT tester viable during the relevant timeframe, (2) how long it would take to develop and launch the DBT tester, (3) whether the DBT tester would work for all of Western Digital's programs or just a subset, and (4) what factors drove Western Digital's decision to rely on the accused DCT-400 tester in favor of the DBT tester. GTE argues that Western Digital's proposed solution – permitting GTE to take at least three additional fact witness depositions and supplement its expert reports – is insufficient given that GTE must now prepare for trial.

Western Digital responds that "the cost of taking fact depositions now is the same as it would have been before the close of fact discovery."[49] Any additional cost GTE must swallow by amending its expert report is "a direct result of GTE's calculated decision to conceal its lost profits damages theory until after the close of fact discovery."[50] Western Digital points out GTE has already deposed two Western Digital engineers, JD Buttar and Tahir Ali, "at length about the DBT, its capabilities, its limitations, its uses, how it compares to other Western Digital production testers, and why Western Digital ultimately decided to adopt the DCT-400 instead of the DBT tester for high-volume, production testing."[51] Moreover, GTE asked "multiple deponents what Western

---

[49] Docket No. 256 at 12.

[50] *Id.* at 13.

[51] *See* Docket No. 258, Ex. Q at 267:18-268:22, 269:17-272:21, 537:5-538:23, Ex. W at 180:5-17, 250:1-253:18, 279:21-288:14; 466:6-468:24.

12

Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY
IDENTIFIED WITNESSES

Digital would have done had it not been able to use the DBT."[52]  Western Digital argues that GTE's claim that deposing three additional witnesses would be unduly burdensome in the month leading up to trial is illusory in light of GTE's ability to depose twelve fact witnesses and defend nine of its own witnesses during the final two months of fact discovery in this case.  Finally, any burden on GTE has been reduced further by the parties' work towards narrowing this case.

On the record presented by the parties, the court finds that GTE should be able to significantly cure the surprise by deposing the relevant witnesses.  This factor favors denying GTE's motion.

## C. The Extent to Which Allowing the Evidence Would Disrupt the Trial

GTE argues "the only way to avoid undue prejudice to GTE is to delay the entire case schedule" and that GTE is vigorously opposed to such a change.[53]

Western Digital responds that it identified the witnesses to GTE on June 11 close to six months before the December 2, 2013, trial date in this case.  Western Digital believes there is plenty of time for GTE to depose these witnesses, investigate further, and update its expert reports while preparing for trial.  Moreover, it was GTE and not Western Digital who waited more than six weeks to file its motion to strike, so GTE is not a completely innocent actor.

The court does not believe that taking three additional depositions would be overly disruptive.  This factor favors denying GTE's motion.

## D. The Importance of the Evidence

GTE argues that the witnesses occupy high-profile positions at Western Digital and therefore it is inconceivable that Western Digital "would not have known about the existence of these employees – as well as their potential relevance to this case – until well after the close of fact

---

[52] Docket No. 258, Ex. Q at 281:11-21, 512:21-517:10; Ex. W at 285:10-286:10; 466:6-468:24; Ex. V at 268:8-271:11.

[53] Docket No. 233 at 14.

13

Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

discovery."[54] Therefore, these witnesses were clearly important and there "is no good reason these witnesses were not formally disclosed sooner than six hours" before Western Digital served its responsive expert report.[55] "It is highly prejudicial to require GTE to respond to previously undisclosed evidence that is 'highly important' while at the same time preparing its case for trial."[56]

Western Digital argues that the importance of the evidence cuts in the other direction. GTE moves the court to keep out witnesses whose testimony rebuts GTE's claim that Western Digital should pay over $140M to account for lost profits. "The additional witnesses possess knowledge that directly relates to and refutes specific factual assertions underlying GTE's claim for lost profit damages."[57] For example, Western Digital argues that William Cain "may testify regarding GTE's assertion that tester sales are 'inelastic' and that Western Digital would have bought the exact same number of testers even if they cost more than three-times as much."[58] Further, all of the witnesses possess "information responsive to GTE's statement in the Wagner Report that 'the operating cost of the DBT tester is twice as high as that of the DCT-400 tester.'"[59]

These witnesses support key evidence that Western Digital can offer to counter GTE's lost profits damages theory. This factor favors denying GTE's motion.

**E.      Western Digital's Explanation for Its Failure to Disclose the Evidence**

GTE argues that Western Digital's explanation for its failure to disclose these four witnesses, that Western Digital expected a reasonable royalty case and not a lost profits case,

---

[54] *Id.* at 16.

[55] *Id.*

[56] Docket No. 275 at 13.

[57] Docket No. 256 at 14.

[58] *Id.*

[59] *Id.* at 14-15 (citing Docket No. 258, Ex. K. at ¶ 72).

14
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY
IDENTIFIED WITNESSES

strains credulity. Certainly, Western Digital must have anticipated that the existence "of suitable non-infringing alternatives to GTE's patented technologies" would be an important issue.[60] GTE points to its Initial Disclosures served on December 9, 2011, which stated that damages "would include lost profits."[61] Moreover, even if GTE sought only a reasonable royalty in this case, the issue of non-infringing alternatives would be relevant to a damages analysis recreating the hypothetical negotiation.

Western Digital responds that "GTE's failure to disclose its damages contentions during the fact discovery period" necessitated "the addition of these rebuttal witnesses."[62] Significantly, "GTE did not explain its asserted damages or even confirm what measure of damages it was seeking until May 21, 2013, after the close of fact discovery."[63]

Western Digital's failure to disclose the evidence until six hours before it submitted its responsive damages expert report does not inspire confidence. Even if GTE did not confirm its pursuit of lost profits until May 21, 2013, there was little reason to wait until June 11, 2013 to disclose the individuals at issue. This factor favors granting GTE's motion.

On balance, however, the court finds that striking the late-added witnesses is not warranted. In circumstances such as these, the court's goal always is to resolve the case on the merits so long as undue prejudice can be avoided. Here, any prejudice to GTE may be mitigated by allowing GTE to depose the three disputed witnesses at a time and location convenient to GTE. The depositions shall not exceed two hours each and shall be completed no later than November 29, 2013.

---

[60] Docket No. 233 at 15.

[61] Docket No. 227 at ¶ 27, Ex. R.

[62] Docket No. 256 at 15.

[63] *Id.*

15
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY
IDENTIFIED WITNESSES

## IV. SEALING ANALYSIS

### A.     GTE's Motion to Strike

GTE seeks leave to file under seal (1) portions of GTE's Motion to Strike Western Digital's Untimely-Identified Witnesses; (2) the Declaration of Anne M. Rogaski ("the Rogaski Declaration") in support of its motion; and (3) Exhibits D, E, H, I, M and O-Q to the Rogaski Declaration.  GTE filed the sealing motion because it believed the documents at issue contain "contain confidential and/or proprietary information of Western Digital."[64]  Western Digital filed a timely declaration in support of GTE's sealing motion where it acknowledged that sealing is not warranted with regard to GTE's motion to strike, the Rogaski Declaration, and Exhibits D, I, P, and Q the Rogaski Declaration.[65]  Western Digital does seek leave to file Exhibits E, H, M, and O under seal.  In its supporting declaration Western Digital also further limits its redactions to targeted excerpts from those exhibits.  After reviewing Western Digital's declaration and the exhibits, the court is convinced that Western Digital has met the good cause standard.  GTE's request to seal Exhibits E, H, M, and O to the Rogaski Declaration is GRANTED.  GTE's request to seal the motion to strike, the Rogaski Declaration, and Exhibits D, I, P, and Q to the Rogaski Declaration is DENIED.

### B.     Western Digital's Opposition to GTE's Motion to Strike

Western Digital requests leave to file under seal (1) Exhibits B, C, I, K-Q, and T-W to the Declaration of Michelle P. Woodhouse ("the Woodhouse Declaration") and (2) portions of Western Digital's opposition to GTE's motion to strike.  Western Digital represents that (1) Exhibits L-Q, T, and V-W to the Woodhouse Declaration contain Western Digital's confidential information related to its "business operations" and (2) Exhibits B, C, I, K, and U

---

[64] *See* Docket No. 228 at ¶ 3.

[65] *See* Docket No. 245.

16

Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

contain GTE's information designated "Confidential," "Highly Confidential – Attorney Eyes Only" or that Western Digital believes is confidential based on discussions with GTE's counsel.[66] Each group of exhibits is considered below.

### 1. Exhibits L-Q, T, and V-W to the Woodhouse Declaration

Western Digital seeks leave to file Exhibits L-Q, T, and V-W under seal. These exhibits purportedly contain Western Digital's confidential information.[67] Western Digital makes a blanket, general assertion in a sworn declaration that the "parties' confidentiality interest therefore overcomes the right of public access to the record, as a substantial probability exists that the parties' overriding confidentiality interest will be prejudiced if the record is not sealed."[68] Western Digital's generic argument for sealing these exhibits is that these documents contain "confidential information regarding Western Digital's business operations."[69] Western Digital has not made a particularized showing that specific prejudice or harm will result if the information is disclosed that satisfies the good cause standard. Western Digital's request with respect to Exhibits L-Q, T, and V-W is DENIED.

### 2. Exhibits B, C, I, K, and U

Pursuant to Civ. L.R. 79-5(e)(1) GTE filed a timely declaration in support of Western Digital's sealing motion that individually addresses Exhibits B, C, I, K, and U of the Woodhouse Declaration.[70] After reviewing GTE's representations and the exhibits, the court is

---

[66] *See* Docket No. 257-1 at 1-4.

[67] *See id.*

[68] *Id.*

[69] *See id.* at 2-3, ¶¶ 5-11 and 14. The court further notes that WD made an apparent typographical error in not claiming Exhibit V contained confidential information regarding WD's business operations. *See id.* at 3, ¶ 13 ("This document was designated Highly Confidential—Attorney's Eyes Only and contains confidential information regarding Western Digital's.").

[70] *See* Docket No. 268 at ¶¶6-10.

17
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

convinced that GTE has met the good cause standard. Western Digital's request to seal Exhibits B, C, I, K, and U is GRANTED.

### 3. Western Digital's Opposition to GTE's Motion to Strike

Western Digital also seeks leave to file portions of its opposition to GTE's motion to strike under seal. As outlined above, the court has granted Western Digital's underlying sealing motion. Western Digital's request to seal portions of its opposition similarly is GRANTED to the extent the underlying sealing requests have also been granted. Western Digital must unseal the redactions within its opposition that cite material that court has determined may not be sealed.

## C. GTE's Reply in Support of Its Motion to Strike

GTE requests leave to file its reply brief in support of its motion to strike and Exhibit A to the Declaration of David L. Shaul ("the Shaul Declaration") under seal.[71]

The reply brief "relies on and cites to confidential portions" of Exhibit A to the Shaul Declaration and "deposition testimony of Tahir Ali raised in Western Digital's Opposition, as well as to the expert report of James Pampinella."[72] Western Digital designated the Ali transcript and the Pampinella expert report as "Highly Confidential – Attorneys' Eyes Only."[73] "GTE's Reply further cites to and relies on portions of the expert report of Michael Wagner" which GTE designated as "Highly Confidential – Attorneys' Eyes Only."[74] GTE filed a tailored declaration supporting the sealing of the Wagner Report.[75] Pursuant to Civ. L.R. 79-5(e) Western Digital filed a timely, tailored declaration supporting the sealing of its confidential

---

[71] *See* Docket No. 274 at 2.

[72] Docket No. 274-1 at 1-2.

[73] *See id.* at 2.

[74] *Id.* at 2.

[75] *See id.*

18
Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES

information.[76] After reviewing the declarations and the requested redactions, the court is convinced the good cause standard has been met. GTE's motion to seal portions of its reply in support of its motion to strike and Exhibit A to the Shaul Declaration is GRANTED.

**IT IS SO ORDERED.**

Dated: November 18, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[76] *See* Docket No. 292.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GUZIK'S MOTION TO STRIKE WESTERN DIGITAL'S UNTIMELY IDENTIFIED WITNESSES