1
2
3
4
5
6
7

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., | Case No.: 5:11-cv-03786-PSG |
| Plaintiff and Counterclaim Defendant, | **ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION** |
| v. | |
| WESTERN DIGITAL CORPORATION, et al., | **(Re: Docket Nos. 236, 237, 252, and 279)** |
| Defendants and Counterclaim Plaintiffs, | |
| and | |
| WESTERN DIGITAL (THAILAND) COMPANY LIMITED and WESTERN DIGITAL (MALAYSIA) SDN.BHD, | |
| Defendants. | |

Among its claims, Plaintiff Guzik Technical Enterprises ("GTE") accuses Defendants

Western Digital Corp., et al. (collectively, "Western Digital") of infringing U.S. Patent No.

6,023,145 ("the '145 patent"). Before the court are several motions brought by both parties:

(1) Western Digital's January 15, 2013, motion for partial summary judgment of noninfringement

of the '145 patent ("January 15 MPSJ"),[1] (2) Western Digital's July 23, 2013, motion for partial

---

[1] *See* Docket No. 131.

summary judgment of noninfringement of the '145 patent ("July 23 MPSJ"),[2] (3) Western Digital's

motion for summary judgment on GTE's breach of contract claim,[3] (4) GTE's motion for summary

judgment that the '145 patent is not anticipated or obvious,[4] and (5) GTE's motion to strike three

of Western Digital's expert witnesses.[5]  The parties appeared for a hearing on these motions.

In this order, the court considers Western Digital's motion for summary judgment on

GTE's breach of contract claim and the parties' motions to file related documents under seal.[6]  The

court considers the balance of the motions in companion orders.

Having considered the parties' papers and arguments, the court DENIES Western Digital's

motion for summary judgment on GTE's breach of contract cause of action.  The court

GRANTS-IN-PART the parties' motions to seal.

## I. BACKGROUND

**A.      Factual Background**

The patents in this case describe hard drive disk test components.[7]  Hard drives consist of

magnetic disks on which data is written.  Those magnetic disks encircle a motor-driven spindle hub

that spins the disks.  To access the data, the hard drive uses a head-stack assembly ("HSA") with a

head mounted on a pivot-arm module and a magnetic positioner.  The module and the positioner

move the head above the spinning disk enabling the head to write data onto, or read data from, the

disk.

---

[2] *See* Docket No. 235.

[3] *See* Docket No. 237.

[4] *See* Docket No. 238-2.

[5] *See* Docket No. 233.

[6] *See* Docket Nos. 238 and 251.

[7] Except where otherwise noted, the court derives these facts from GTE's complaint.
*See* Docket No. 1.

2

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE
OF ACTION

United States District Court
For the Northern District of California

The accuracy of the heads in accessing data on the disks is essential to the effectiveness of the hard drive.  Increases in the data capacity of the magnetic disks demand even greater precision. GTE purportedly addressed this need with its hard drive testers, which analyze the performance of the heads.  GTE sold its S312 testers to Read-Rite Corp. ("Read-Rite"), a head manufacturer, pursuant to an agreement executed in 1996.  Western Digital, which used to purchase disk drive heads from Read-Rite, eventually acquired Read-Rite's assets in 2003 after Read-Rite entered bankruptcy proceedings.[8]  Western Digital executed its own agreement with GTE in 2004.

GTE argues both Read-Rite and Western Digital were subject to agreements that prohibited reverse engineering, decompiling, disassembling, or deriving source code from GTE's products. According to GTE, Western Digital violated the agreement and used GTE's testers and intellectual property to develop two testers of its own, the EH-300 and the DCT-400.  These testers use servo burst feedback and a thermal drift-compensated closed-loop positioning system to determine the accuracy of the heads.

**B.      Procedural Background**

In August 2011, GTE filed this patent suit against Western Digital alleging infringement of U.S. Patent Nos. 6,023,145 ("the '145 patent") and 6,785,085 ("the '085 patent").  The complaint alleged Western Digital's products infringe claims 1-19 of the '145 patent and claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39 of the '085 patent.  GTE also alleged Defendants "materially breached their agreements with GTE by using GTE confidential and proprietary information to develop, fabricate and use competing head test systems and components."[9]  Western Digital answered and filed a counterclaim alleging that the '145 patent and the '085 patent are invalid and

---

[8] *See* Docket No. 79 at ¶ 19.

[9] Docket No. 1 at ¶ 43.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

that GTE infringes four Western Digital patents: U.S. Patent Nos. 5,640,089 ("the '089 patent"), 5,844,420 ("the '420 patent"), 6,891,696 ("the '696 patent"), and 7,480,116 ("the '116 patent").[10]

The court denied Western Digital's motion to dismiss and set a case management schedule[11] with a February 10, 2012, deadline for GTE to serve infringement contentions on Western Digital and related documents in compliance with Patent L.R. 3-1 and 3-2.[12]  The court held a claims construction hearing on September 25, 2012, and issued its constructions from the bench.

On January 15, 2013, Western Digital first moved for partial summary judgment of (1) invalidity and (2) noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent as well as (3) noninfringement of claims 20 and 29 of the '085 patent.  GTE opposed Western Digital's motion and moved for relief under Rule 56(d).  On March 12, 2013, the court heard arguments regarding the parties' summary judgment motions.

On February 6, 2013, the parties agreed to modify the case scheduling order: delaying the close of fact and expert discovery and the related deadline for dispositive motion practice.  The trial date was continued from October 28, 2013, to December 2, 2013.[13]

On April 30, 2013, GTE sought leave on shortened time to amend its infringement contentions.  GTE asserted that recently discovered evidence provided the requisite good cause for leave to amend.  GTE, however, did not offer its proposed amended infringement contentions to the court or Western Digital.  Instead, GTE sought leave only on the grounds that it had good cause and Western Digital would not be prejudiced based on its own assessment of its contentions.

---

[10] *See* Docket No. 79.

[11] *See* Docket No. 48.

[12] *See* Docket No. 57.

[13] *See* Docket No 143.

4

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On May 14, 2013, the court heard argument regarding GTE's motion for leave to amend its contentions and the court issued its order the same day denying GTE's request for leave.  The court made no finding regarding either GTE's proffer of good cause or possible prejudice to Western Digital because, absent a review of the proposed infringement contentions, the court could not evaluate good cause or possible prejudice.[14]

On July 19, 2013, the court issued an order addressing the summary judgment motions and providing the court's reasoning for its earlier-issued claim constructions.[15]  In the July 19 order, the court held that the term "relatively short period of time" was indefinite and thus rendered claims 17 and 19 of the '145 patent invalid.[16]  The court also granted summary judgment in Western Digital's favor on noninfringement grounds on claims 20 and 29 of the '085 patent.[17]  Finding GTE's Rule 56(d) request persuasive, the court declined to rule on Western Digital's motion for summary judgment on the issue of noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent, instead deferring the issue until the court addressed the parties' respective dispositive motions filed in July 2013.  The court invited both GTE and Western Digital to submit additional briefing (now before the court) regarding how GTE's subsequent discovery affected Western Digital's noninfringement arguments.

---

[14] *See* Docket No. 194.

[15] *See* Docket No. 224.

[16] *See* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").

[17] In Western Digital's original motion, Western Digital moved for summary judgment of claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39.  *See* Docket No. 131-1.  In GTE's opposition, GTE addressed only claims 20 and 29 because GTE dropped claims of infringement regarding claims 21, 24, 25, 30, 33, 34, 36, and 39.  *See* Docket No. 222 at 8 n.3.  The court thus addressed only claims 20 and 29 of the '085 Patent in its order.  *See* Docket No. 224.

5

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

On July 29, 2013, the parties stipulated to dismissal of certain claims and counterclaims.[18] Western Digital agreed to dismiss with prejudice Counts V, VI, VII, and VIII of its counterclaims – specifically its claims that GTE infringed the '089 patent, the '420 patent, the '696 patent, and the '116 patent.  In turn, GTE agreed to dismiss without prejudice Counts One, Two, Three, Four, Five, Six, Seven, and Eight of its counterclaims, in which it sought declaratory judgment of noninfringement and invalidity of Western Digital's four patents at issue.  GTE also agreed to dismiss with prejudice its trade secret misappropriation claim against Western Digital.  GTE dropped all remaining claims from the '085 patent.

This case has significantly narrowed from the parties' original claims and counterclaims. For clarity, the court identifies the remaining claims: (1) GTE's infringement claim spanning claims 1-16 of the '145 patent, (2) Western Digital's claim for declaratory judgment of noninfringement and invalidity of the '085 and '145 patents, and (3) GTE's breach of contract claim.[19]

The court turns to the motion addressed in this order: Western Digital's motion for summary judgment on GTE's breach of contract cause of action and related sealing motions.[20]

## II. LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery, and affidavits

---

[18] *See* Docket No. 248.

[19] *See* Docket No. 79.

[20] *See* Docket No. 237.

[21] Fed. R. Civ. P. 56(a).

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

which demonstrate the absence of a triable issue of material fact.[22]  If the moving party is the

defendant, he may do so in two ways: by proffering "affirmative evidence that negates an essential

element" of the nonmoving party's claim, or by demonstrating "the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's claim."[23]  If met by the

moving party, the burden of production then shifts to the non-moving party, who must then provide

specific facts showing a genuine issue of material fact for trial.[24]  The ultimate burden of

persuasion, however, remains on the moving party.[25]  In reviewing the record, the court must

construe the evidence and the inferences to be drawn from the underlying evidence in the light

most favorable to the nonmoving party.[26]

## B.    Sealing Motions

"Historically, courts have recognized a 'general right to inspect and copy public records and

documents, including judicial records and documents.'"[27]  Accordingly, when considering a

sealing request, "a 'strong presumption in favor of access' is the starting point."[28]  Parties seeking

to seal judicial records relating to dispositive motions bear the burden of overcoming the

---

[22] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[23] *Celotex*, 477 U.S. at 331.

[24] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Rule 56 provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c)).

[25] *Celotex*, 477 U.S. at 330 (the "ultimate burden of persuasion" always "remains on the moving party").

[26] *See Anderson v. Liberty Lobby, Inc.*,, 477 U.S. 242, 248 (1986) (noting that "all evidence must be construed in the light most favorable to the party opposing summary judgment"); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (on "summary judgment the inferences to be drawn from the underlying facts" must "be viewed in the light most favorable to the party opposing the motion" (citations and quotations omitted)).

[27] *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, n.7 (1978)).

[28] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

7

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE
OF ACTION

**United States District Court**
For the Northern District of California

1  presumption with "compelling reasons" that outweigh the general history of access and the public

2  policies favoring disclosure.[29]

3          Records attached to nondispositive motions, however, are not subject to the strong

4  presumption of access.[30]  Because the documents attached to nondispositive motions "are often

5  unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal

6  must meet the lower "good cause" standard of Rule 26(c).[31]  As with dispositive motions, the

7  standard applicable to nondispositive motions requires a "particularized showing"[32] that "specific

8  prejudice or harm will result" if the information is disclosed.[33]  "Broad allegations of harm,

9  unsubstantiated by specific examples of articulated reasoning" will not suffice.[34]  A protective

10 order sealing the documents during discovery may reflect the court's previous determination that

11 good cause exists to keep the documents sealed,[35] but a blanket protective order that allows the

12 parties to designate confidential documents does not provide sufficient judicial scrutiny to

13 determine whether each particular document should remain sealed.[36]

14         In addition to making particularized showings of good cause, parties moving to seal

15 documents must comply with the procedures established by Civ. L.R. 79-5.  Pursuant to

16 Civ. L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document

17

18

19 [29] *Id.* at 1178-79.

20 [30] *See id.* at 1180.

21 [31] *Id.* at 1179 (internal quotations and citations omitted).

22 [32] *Id.*

23 [33] *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002);
   *see* Fed. R. Civ. P. 26(c).

24

25 [34] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

26 [35] *See Kamakana,* 447 F.3d at 1179-80.

27 [36] *See* Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to
   designate certain documents as confidential is not sufficient to establish that a document, or
   portions thereof, are sealable.").

28

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE
OF ACTION

is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law." "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."[37] "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."[38]

### III. ANALYSIS

After reviewing the arguments the court finds that summary judgment on GTE's contract claim is not warranted. The court will first lay out the parties' positions regarding the two agreements at issue and then explain why genuine issues of material fact remain on each of Western Digital's key arguments.

**A. The 1996 Agreement**

**1. Western Digital's Argument It Was Never a Party to or Otherwise Liable for the 1996 Agreement**

Western Digital argues that it was not a party to, or otherwise liable for, the 1996 Agreement. It does not contest the validity of the contract entered into by GTE and Read-Rite, nor does it contest that the bankruptcy court was empowered to "execute and deliver" to Western Digital the "documents and other instruments" necessary to assign and transfer the 1996 Agreement. Western Digital does, however, contest that the contract was ever actually assigned to Western Digital. Western Digital points to the bankruptcy court's order that "explicitly stated that Western Digital would not be liable for any claim that could have been made against

---

[37] Civ. L.R. 79-5(b). In part, Civ. L.R. 79-5(d)(1) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed" and an "unredacted version of the document" that indicates "by highlighting or other clear method, the portions of the document that have been omitted" from the redacted version.

[38] Civ. L.R. 79-5(e)(1). The Civil Local Rules have recently been amended shortening the time available to the designating party to file a supporting declaration from seven days to four days. As this rule change was only recently implemented the court applies the prior form of Civ. L.R. 79-5 for the purposes of this order.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

Read-Rite," even if the 1996 Agreement was assigned.[39]

GTE responds that the 1996 Agreement was assumed by Western Digital when it acquired the assets of Read-Rite in 2003, including S312 testers sold to Read-Rite pursuant to the 1996 Agreement.[40]  GTE further notes Western Digital "provided adequate assurances of future performance" through representations Western Digital made to the bankruptcy court that it would assume the Read-Rite contract.[41]  GTE acknowledges that the bankruptcy court's order extinguished Read-Rite's prior liability under the 1996 Agreement, but argues the order did not absolve Western Digital of prospective liability from ongoing violations of the 1996 Agreement. GTE further argues "Western Digital cannot accept the benefits of the [1996 Agreement] (e.g., GTE's S312 Testers) and then disclaim the obligations."[42]

To determine if a party has assumed contractual obligations with respect to personal property, courts look to the "intent of the parties which is ascertained by considering their acts, their words and the subject matter of the contract."[43]  After acquiring Read-Rite's assets Western Digital continued to use the testers that GTE sold to Read-Rite and continued doing business with GTE.  In addition, Western Digital continued to purchase parts for service and upgrades to the S312 testers in its possession from GTE.[44]  Particularly in light of Western Digital's assurances regarding future performance under the 1996 Agreement, this creates a genuine issue of material fact regarding Western Digital's assumption of Read Rite's prospective

---

[39] *Id.*

[40] *Id.* at 4.

[41] *See* Docket No. 237-1, Ex. 2 at ¶5.

[42] Docket No. 252, ¶ 1 at 15 (citing Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent ot a consent of all obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.")).

[43] *Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 746 (1991).

[44] *See* Docket No. 252, ¶ 1 at 15 (citing Docket No. 252-1, Ex. 26).

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

liability.

### 2. Western Digital's Argument the S312 Testers Were Not Covered by the 1996 Agreement

Western Digital next argues that the S312 testers that GTE claims were copied were sold either before the effective date of the 1996 Agreement or after the 1996 Agreement was terminated in 1999.  Western Digital claims that because the GTE testers with the allegedly confidential information were sold outside the contract period, they were not covered by the contract, and therefore there can be no breach related to those testers.

GTE responds that the contract applies to "[a]ny and all of CUSTOMER'S purchases and GTE's service of purchases."[45]  There is no explicit time limitation grafted onto the purchase of GTE's products and it is undisputed that GTE sold S312 testers to Read-Rite.  Moreover, GTE points out that "there is evidence that GTE sold Read-Rite S312 Testers during the term of the agreement, between 1996 and 1999."[46]

In light of the evidence of sales of S312 testers between 1996 and 1999 and the absence of an explicit time limitation in the contract language, there remains a genuine issue of material fact as to whether the S312 testers were covered by the 1996 Agreement.

### 3. Western Digital's Argument the Design Features Were Not "Confidential Information" Under the 1996 Agreement

Western Digital further argues that GTE did not designate the five design features of the S312 tester "confidential" in accordance with the 1996 Agreement.  Western Digital points out that the design features identified by GTE were not confidential – GTE shipped out S312 testers with outward facing design features to UCSD, Alps, and Showa Denko.[47]  Moreover, GTE

---

[45] Docket No. 237-1, Ex. 1 § 1.

[46] Docket No. 252, ¶ 1 at 17 (citing Docket No. 252-1, Ex. 27).

[47] *See* Docket No. 237-1 ¶¶ 8-12.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

demonstrated its testers at industry trade shows[48] and presented product features in brochures that were distributed to customers and posted on GTE's website.[49]  Western Digital also points to GTE's expert's concession that GTE's design features were readily apparent to anyone operating or viewing the S312 testers.[50]

GTE responds that all non-public information it shared with Western Digital was confidential irrespective of whether it was designated confidential as such.  GTE points to the Alexander Varlakhanov's testimony that all GTE customers who might have seen the information have NDAs with GTE prohibiting any further disclosure.[51]  GTE further argues it carefully maintained confidentiality at its trade shows.[52]  Moreover, the 1996 Agreement contains two sections, Sections 18 and 19, that read together preclude Read-Rite (and later Western Digital) from using GTE's testers in ways not permitted by the contract.  Section 18, the confidential information section, required Read-Rite to use reasonable care "to prevent and avoid unauthorized disclosure" of GTE's confidential information and to use GTE's confidential information "solely for the purposes contemplated in the Agreement."[53]  Section 19 establishes that the confidentiality provisions of Section 18 shall survive the 1996 Agreement in perpetuity.  Read together, those provisions limit Western Digital's permitted use of confidential information even after the 1996 Agreement terminated.  Moreover, Western Digital's acquisition of Read-Rite resulted in the hiring of a number of Read-Rite engineers that had been exposed to GTE's confidential information and

---

[48] *See* Docket No. 237-1, Ex. 24 at 80:18-25, 84:14-21, 155:11-17.

[49] *See* Docket No. 237-1, Ex. 24 at 144:1-6, 237:2-9; Docket No. 237-1, Ex. 26 at 264:24-265:3.

[50] *See* Docket No. 237-1, Ex. 22 at 44:2-12, 83:5-8, 91:2-15, 107:23-108:2, 116:14-117:19.

[51] *See* Docket No. 252, ¶1 at 15 (citing Docket No. 252-1, Ex. 30 at 110:10-17).

[52] *See id.* at 109:5-23 (noting that if someone asking to see a tester at a trade show was not a customer, they would be turned away).

[53] Docket No. 237-1, Ex. 1 § 18.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

were similarly obligated to protect confidential information pursuant to the 1996 Agreement.[54]

The court agrees with Western Digital that GTE has not presented evidence that the disputed design features were designated confidential pursuant to Section 18 of the 1996 Agreement.  But that alone is not dispositive.  The product restrictions section, Section 19, prohibits the disassembly, reverse engineering, or otherwise investigation of the GTE's products "for the purpose of discovering trade secret or other proprietary information relating to the design, manufacture, or operation" of GTE's products.[55]  A genuine dispute of fact remains as to whether the claimed design features were misused in violation of Section 19.  Although Western Digital claims the design features were outward facing and the products were widely visible through industry trade shows, other evidence suggests that even in those circumstances reasonable efforts were undertaken to limit the disclosure of the claimed design features.[56]  In particular, in light of Dr. Klopp's expert testimony outlining the substantial similarity of the disputed testers, even if the design features were not designated so as to trigger the confidentiality obligations of Section 18, a reasonable jury could find that Western Digital disassembled, reverse engineered, or investigated GTE's products in violation of Section 19.

---

[54] *See* Docket No. 237 at 4; Docket No. 252 at 3.

[55] Docket No. 252-1, Ex. 1 at § 19.

[56] *See* Docket No. 252, ¶ 1 at 18 (quoting Docket No. 252-1, Ex. 28 at 18, 21, 24) ("Dr. Klopp found that 'WD had access to, and the opportunity to examine, GTE's testers and their components and, in particular, the tester cartridges and disk chuck, among other items.  Dr. Klopp also noted that the 'GTE cartridge used by WD on its EH-300 tester was inspected by GTE's representatives and found to have GTE labeling on the printed circuit board and nominally matched GTE cartridge drawings.'  Dr. Klopp reviewed photographs of the EH-300 cartridge and, in his opinion, 'it is practically identical to GTE cartridges in certain design features.'  Dr. Klopp concludes that 'WD testers and cartridges are similar enough that it is unreasonable to conclude that WD designs were conceived and implemented independently of the predecessor GTE designs.'" (citations omitted)).

13

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

**B.      The 2004 Agreement**

   **1.      Western Digital's Argument the 2004 Agreement Does Not Apply to the S312 Testers**

       Western Digital argues that the 2004 Agreement does not cover the GTE S312 testers.  It points out that the 2004 Agreement only covers products set forth in Schedule B[57] and GTE's 30(b)(6) witness conceded in a deposition that Schedule B does not identify the S312 tester in either the original or the amended Schedule B of the 2004 Agreement.[58]  Thus, because the testers were already in Western Digital's possession at the time the 2004 Agreement was entered into, Western Digital argues those testers were not subject to the confidentiality obligation and, therefore, Western Digital bears no responsibility for safeguarding allegedly confidential information disclosed through those testers.

       GTE counters that the confidential information provision of the 2004 Agreement is not limited to products covered by the 2004 Agreement, because that provision uses the phrase "including, but not limited to."[59]  GTE further responds that the five design features are also found in GTE's V2002 testers, which are covered by the 2004 Agreement.[60]  GTE also suggests that Western Digital's attempts to modify and terminate the 2004 Contract constitute evidence that Western Digital was conscious of its breach because Western Digital knew it could not develop the EH-300 and DCT-400 testers in compliance with the 2004 Agreement.  GTE argues Western Digital used confidential information in manufacturing both the EH-300 and DCT-400 testers and adding servo positioning to the EH-300 testers.

       Western Digital replies that the "ambiguity introduced by" the vague inclusionary language

---

[57] *See* Docket No. 237-1, Ex. 3 § 1.1.

[58] *See* Docket No. 237-1 at 394:15-18, 401:3-5, 411:17-412:2.

[59] Docket No. 252, ¶ 1 at 19.

[60] *See id.* at 20.

14

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE
OF ACTION

United States District Court
For the Northern District of California

cannot encompass testers purchased by a different party "as much as a decade before" the agreement.[61]   Moreover, any ambiguity from the contract is resolved by the exclusionary language in that paragraph of the contract which states neither party "bears any responsibility for safeguarding information" that is "already in a party's possession and not subject to a confidentiality obligation."[62]   Therefore, the confidentiality provision does not apply to the preexisting S312 testers.  As to the V2002 testers, Western Digital says GTE's assertion that Western Digital copied the design features from those testers is unsupported and contradicted by GTE's expert witness, Dr. Klopp, who "testified repeatedly" that Western Digital copied the design features from the S312 testers and not from the V2002s.[63]   In response to GTE's claim that it knew it was violating the 2004 Agreement, Western Digital argues that the evidence merely shows its recognition that it needed either "modification" of the contract or to "make sure" it put Western Digital hardware and software into the V2002 testers.[64]   Western Digital claims that the only evidence GTE points to in support of its claim that Western Digital used confidential information shows that Western Digital wanted to upgrade GTE testers, but does not offer evidence that the upgrades involved any GTE confidential information.

GTE further replies that its expert opined that "Western Digital testers and cartridges are similar enough that it is unreasonable to conclude that Western Digital designs were conceived and implemented independently of the predecessor GTE designs."[65]   After comparing photographs of the EH-300 cartridge Dr. Klopp concluded that Western Digital's product was practically

---

[61] Docket No. 280 at 9.

[62] Docket No. 237-1, Ex. 3 at § 9.

[63] Docket No. 237 at 8. n.3; *see also* Docket No. 280 at 9.

[64] *See* Docket No. 280 at 11; Docket No. 252 at 21 (quoting Docket No. 252-1, Ex. 3 at 6).

[65] *See* Docket No. 252, ¶ 1 at 18 (quoting Docket No. 252-1, Ex. 28 at ¶ 21).

15

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

United States District Court
For the Northern District of California

"identical to GTE cartridges in certain design features."[66]  GTE argues that this opinion is not disputed by Western Digital's experts.

Given Dr. Klopp's assessment that the relevant design features within the disputed products are practically identical, a reasonable jury could find that those design features were not conceived of, and implemented independent from, the prior GTE designs.  There are genuine disputes of material fact as to whether Western Digital breached the 2004 Agreement and whether the 2004 Agreement covers the S312 testers.

### 2.  The "Customer Obligations" Provision of the 2004 Agreement

Western Digital argues GTE cannot succeed on a breach of contract claim based on the "Customer Obligations" provision of the 2004 Agreement.  Under the 2004 Agreement, Western Digital was required to provide notice to GTE, before integrating third-party products into GTE testers.  At issue here, the notice provisions were applicable only for three years following the first delivery of a product to a customer.[67]  Western Digital first argues delivery of *any* product covered by Schedule B triggered the three year clock.  Because delivery of products under the 2004 Agreement first occurred in 2004, GTE must show Western Digital integrated third-party products into GTE's testers by 2007.  Western Digital concludes GTE has not met its burden.  In the alternative, Western Digital argues that even if the three-year period is measured from the delivery of each individual product, GTE still has not identified any particular GTE tester that was integrated with a third-party component within three years after it was delivered to Western Digital.[68]  Finally, Western Digital claims GTE has not established evidence of damages caused by the alleged breach of the customer obligations provision.  GTE's papers rely on its

---

[66] *Id.*

[67] *See* Docket No. 237-1, Ex. 3 at § 6.4.

[68] *See* Docket No. 237 at 22-23; Docket No. 280 at 13.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

expert report that cites only the language of the contract.  Moreover, GTE's damages theory is premised upon Western Digital's manufacture of the EH-300 and DCT-400 testers instead of buying V2002 testers.  But, Western Digital's decision to manufacture EH-300 and DCT-400 testers is not a breach of the 2004 Agreement, because the 2004 Agreement on its face is limited only to other products identified in Schedule B.

GTE responds that the "three-year limitation on the Customer Obligations provision applies upon the delivery of an individual Product, not upon the first delivery of any product."[69] "Western Digital cannot argue that the time limitation of the Customer Obligations provision applies because (a) GTE delivered Products consistently to Western Digital from 2004 onwards and (b) there is evidence that Western Digital secretly modified GTE's Testers on a consistent basis from March 10, 2004 to October 18, 2010."[70]  Furthermore, the 2004 Agreement is broader than Western Digital asserts.  Although "Western Digital argues that the 2004 Master Agreement does not apply to the S312 Tester because it is not a product listed in Schedule B," it ignores language from the 2004 Agreement explicitly stating that its "obligations are *not limited* to the Products listed in Schedule B."[71]  When viewed in the light most favorable to GTE – GTE continues – the evidence of Western Digital's secret modifications "hidden" from GTE  suggest Western Digital breached the Customer Obligations section of the 2004 Agreement.

---

[69] *See* Docket No. 252, ¶ 1 at 23.

[70] *Id.*

[71] *Id.* at 19 (quoting Docket No. 252-1, Ex. 3 at § 9) (emphasis in original).  Section 9 states that "GTE and Customer acknowledge that by reason of their relationship, each will have access to certain information and materials concerning of the other concerning its business, plans, customers, technology and products, including, *but not limited to*, the Equipment, Software and the terms and conditions" of this Agreement.  (emphasis added)  Therefore, "Western's Digital is obligated to protect, and not use, *all* of GTE's confidential information and materials, regardless of whether that proprietary information comes from the Products listed in Schedule B or elsewhere."  Docket No.  252, ¶ 1 at 19 (emphasis in original).

17

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

United States District Court
For the Northern District of California

The court agrees with GTE that, given the inclusionary language of the 2004 Agreement and Dr. Klopp's testimony regarding the substantial similarity of the testers, a genuine dispute of material fact remains and summary judgment is not warranted.

In sum, there are enough factual questions that summary judgment with respect to the 1996 and 2004 agreements is not warranted.  It is undisputed that Western Digital had direct access to GTE's products and GTE's expert has opined that "Western Digital testers and cartridges are similar enough" to GTE's products "that it is unreasonable to conclude that Western Digital designs were conceived and implemented independently of the predecessor GTE designs."[72]  It is also undisputed that Western Digital obtained S312 Testers along with Read-Rite employees through its acquisition of Read-Rite.  Western Digital also obtained later generation testers pursuant to the 2004 Agreement.  The question of whether Western Digital misappropriated GTE's confidential information is ultimately a fact-bound question that requires jury determination.

## C.    Statute of Limitations

The statute of limitations for GTE's breach of contract claim is four years.[73] Western Digital argues GTE's claims are barred by the statute of limitations.  In California, the so-called "discovery rule" tolls the statute of limitations where it would be "manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured."[74]  But even under the discovery rule, the statute of limitations begins to run once the plaintiff "discovers or could have discovered" all of the facts essential to his cause of action.[75]

---

[72] *See* Docket No. 252, ¶ 1 at 18 (quoting Docket No. 252-1, Ex. 28 at ¶ 24).

[73] Cal. Civ. Proc. Code. § 337.

[74] *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (quoting *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423 (2003)).

[75] *Folex Golf Indus., Inc. v. O-TA Precision Indus. Co., Ltd.*, 479 F. App'x 61, 62 (9th Cir. 2012) (quoting *Sylve v. Riley*, 15 Cal. App. 4th 23, 26 (Ct. App. 1993) ("Under the delayed discovery

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

As an initial matter, Western Digital's moving papers only raised the statute of limitations arguments as a grounds for summary judgment on the claims stemming from the 1996 Agreement, so the court will limit its analysis to that agreement. Here, Western Digital argues that GTE was on notice of facts that should have caused it to investigate Read-Rite's compliance with the 1996 Agreement. Western Digital points to evidence that GTE's CEO, Nahum Guzik, described Read-Rite's development of testers as a "Guzik killer."[76] Western Digital does not, however, link this knowledge of Read-Rite's development of testers to knowledge that it had been injured due to a breach of contract claim. Western Digital has not established as a matter of law that that GTE was on notice that Western Digital breached the 1996 Agreement (e.g. by misappropriating confidential information). Under these circumstances, summary judgment on GTE's breach of contract claim based on a statute of limitations defense is not warranted.

## IV. SEALING ANALYSIS

### A. Western Digital's Motion for Summary Judgment on the Breach of Contract Cause of Action

Western Digital seeks leave to file documents related to its summary judgment motion under seal. In particular, Western Digital asks the court to seal (1) Exhibits 1 and 3-27, (2) the Declaration of Gavin M. Masuda ("the Masuda Declaration"), and (3) portions of its motion.[77] The court will address each request in turn.

Western Digital asks the court to seal Exhibits 12-13, 18-20, 23, and 25, because those documents contain Western Digital's confidential information.[78] Western Digital provides a general, unsubstantiated conclusion that the "parties' confidentiality interest therefore overcomes

---

rule, the limitations period does not begin to run until a plaintiff discovers or could have discovered through the exercise of reasonable diligence all facts essential to her cause of action.")).

[76] Docket No. 237-1, Ex. 21 at 185:22-186:5.

[77] *See* Docket No. 236.

[78] See Docket No. 236-1 at 4.

19

United States District Court
For the Northern District of California

the right of public access to the record, as a substantial probability exists that the parties'

overriding confidentiality interest will be prejudiced if the record is not sealed."[79]

Western Digital's general claim that "the proposed sealing is narrowly tailored and no less

restrictive means exist to achieve this overriding interest"[80] does not amount to a particularized

showing that specific prejudice or harm will result if the information is disclosed.  Western

Digital's request to seal Exhibits 12, 18-20, 23, and 25 does not meet the compelling reasons

standard.  It is DENIED.[81]

In conformance with Civil L.R. 79-5(e)(1) GTE filed a declaration in support of

Western Digital's administrative motion to seal some of its confidential information.  GTE's

declaration individually addresses Exhibits 1, 3-11, 13-17, 21-22, 24, and 26-27.  After reviewing

GTE's representations and the exhibits, the court is convinced that GTE has met the compelling

reasons standard.  Western Digital's request to seal Exhibits 1, 3-11, 13-17, 21-22, 24, and 26-27 is

GRANTED.

To the extent that Western Digital's motion for summary judgment and the

Masuda Declaration cites portions of the record that may not be sealed, parallel redactions within

Western Digital's motion papers and the Masuda Declaration must also be unsealed.

**B.    GTE's Opposition to Western Digital's Motion for Summary Judgment on the Breach of Contract Cause of Action**

GTE seeks leave to file its opposition to Western Digital's motion for summary judgment

and supporting Exhibits 1-32 under seal.[82]  GTE filed a declaration supporting its sealing request as

to Exhibits 13, 27-28, and 30-32.  After reviewing GTE's supporting declaration and the exhibits

---

[79] *Id.* at 4-5.

[80] *Id.* at 5.

[81] The court finds that sealing of Exhibit 13 is warranted on the basis of GTE's representations with respect to that document.

[82] *See* Docket No. 252.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

themselves, the court finds GTE has met the compelling reasons standard with respect to those documents.  Exhibits 13, 27-28, and 30-32 may be sealed.

GTE's sealing motion relies on Western Digital's designation that Exhibits 1-12, 14-26, and 29 are confidential.[83]  Western Digital filed a timely declaration pursuant to Civil L.R. 79(5)(e)(1) supporting GTE's motion.  Western Digital acknowledged that Exhibits 4 and 5 do not warrant sealing.  Western Digital's declaration individually addresses Exhibits 1-3, 6-12, 14-26, and 29.  After reviewing Western Digital's representations and the exhibits themselves, the court is convinced that Western Digital has met the compelling reasons standard as to Exhibits 1-3, 6-11, 14, 18-23, 26, and 29.  Those exhibits may be sealed.

GTE's request to seal Exhibits 12, 15, 16, 17, 24, and 25 does not meet the compelling reasons standard.  Those exhibits may not be sealed, because the documents relate generally to the business relationship between GTE and Western Digital.  Western Digital's supporting declaration does not make a particularized showing that specific prejudice or harm will result if the information is disclosed.

GTE's motion is GRANTED-IN-PART.

## C.   Western Digital's Reply in Support of Its Motion for Summary Judgment on the Breach of Contract Cause of Action

Western Digital seeks leave to file (1) Exhibits 1-8 in support of its reply brief in support of its motion for summary judgment and (2) related portions of its motion under seal.[84]

Western Digital argues Exhibits 1-3 and 5-6 contain confidential information.[85]  Western Digital arrives at a general, unsubstantiated conclusion that the "parties' confidentiality interest therefore overcomes the right of public access to the record, as a substantial probability exists that

---

[83] *Id.* at 1-6.

[84] *See* Docket No. 279 at 2-3.

[85] Docket No. 282 at ¶ 4.

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION

the parties' overriding confidentiality interest will be prejudiced if the record is not sealed."[86] Western Digital's general claim that "the proposed sealing is narrowly tailored and no less restrictive means exist to achieve this overriding interest," does not amount to a particularized showing that specific prejudice or harm will result if the information is disclosed.  Thus, Western Digital's request with respect to Exhibits 1-3 and 5-6 is DENIED.[87]

Pursuant to Civil L.R. 79(5)(e)(1) GTE filed a timely supporting declaration.  GTE's declaration individually addresses Exhibits 4 and 7-8.[88]  After reviewing GTE's representations and the related exhibits, the court is convinced that GTE has met the compelling reasons standard. Western Digital's request to seal Exhibits 4 and 7-8 is GRANTED.

To the extent that Western Digital's reply in support of its motion for summary judgment cites portions of the record that may not be sealed, the redactions within Western Digital's reply in support of its motion for summary judgment must also be unsealed.

**IT IS SO ORDERED.**

Dated: November 19, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[86] *Id.*

[87] The court finds that sealing of Exhibit 13 is warranted on the basis of GTE's representations with respect to that document.

[88] *See* Docket No. 294.  GTE's supporting declaration represents that not all of Exhibit 4 is subject to sealing and GTE submitted a more narrowly redacted version of that exhibit. *See* Docket No. 294-1.

22

Case No.: 5:11-cv-03786-PSG
ORDER RE: MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CAUSE OF ACTION