1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

GUZIK TECHNICAL ENTERPRISES, INC.,  )    Case No. 5:11-cv-03786-PSG
                                      )
    Plaintiff and Counterclaim Defendant,  )    **ORDER RE: GTE'S MOTION FOR**
                                      )    **SUMMARY JUDGMENT OF**
        v.                            )    **NO ANTICIPATION AND**
                                      )    **NONOBVIOUSNESS**
WESTERN DIGITAL CORPORATION, et al., )
                                      )    **(Re: Docket Nos. 238, 238-2, and 251)**
    Defendants and Counterclaim Plaintiffs,  )
                                      )
and                                   )
                                      )
WESTERN DIGITAL (THAILAND)            )
COMPANY LIMITED and                   )
WESTERN DIGITAL (MALAYSIA)            )
SDN.BHD,                              )
                                      )
                        Defendants.   )
_____  )

Among its claims, Plaintiff Guzik Technical Enterprises ("GTE") accuses Defendants

Western Digital Corp., et al. (collectively, "Western Digital") of infringing U.S. Patent No.

6,023,145 ("the '145 patent").  Before the court are several motions brought by both parties:

(1) Western Digital's January 15, 2013, motion for partial summary judgment of noninfringement

United States District Court
For the Northern District of California

of the '145 patent ("January 15 MPSJ"),[1] (2) Western Digital's July 23, 2013, motion for partial summary judgment of noninfringement of the '145 patent ("July 23 MPSJ"),[2] (3) Western Digital's motion for summary judgment on GTE's breach of contract claim,[3] (4) GTE's motion for summary judgment that the '145 patent is not anticipated or obvious,[4] and (5) GTE's motion to strike three of Western Digital's expert witnesses.[5]  The parties appeared for a hearing on these motions.

In this order, the court considers GTE's motion for summary judgment that the '145 patent is not anticipated or obvious.[6]  The court considers the balance of the motions in companion orders.

Having considered the parties' papers and arguments, the court DENIES GTE's motion for summary judgment that the '145 patent is not anticipated or obvious.  The court GRANTS-IN-PART the parties' motions to seal.

## I. BACKGROUND

**A.      Factual Background**

The patents in this case describe hard drive disk test components.[7]  Hard drives consist of magnetic disks on which data is written.  Those magnetic disks encircle a motor-driven spindle hub that spins the disks.  To access the data, the hard drive uses a head-stack assembly ("HSA") with a head mounted on a pivot-arm module and a magnetic positioner.  The module and the positioner

---

[1] *See* Docket No. 131.

[2] *See* Docket No. 235.

[3] *See* Docket No. 237.

[4] *See* Docket No. 238-2.

[5] *See* Docket No. 233.

[6] *See* Docket Nos. 238 and 251.

[7] Except where otherwise noted, the court derives these facts from GTE's complaint. *See* Docket No. 1.

2

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

move the head above the spinning disk enabling the head to write data onto, or read data from, the disk.

The accuracy of the heads in accessing data on the disks is essential to the effectiveness of the hard drive. Increases in the data capacity of the magnetic disks demand even greater precision. GTE purportedly addressed this need with its hard drive testers, which analyze the performance of the heads. GTE sold testers to Read-Rite Corp. ("Read-Rite"), a head manufacturer. Western Digital, which used to purchase disk drive heads from Read-Rite, eventually acquired Read-Rite's assets.[8]

GTE argues both Read-Rite and Western Digital were subject to agreements that prohibited reverse engineering, decompiling, disassembling, or deriving source code from GTE's products. According to GTE, Western Digital violated the agreements and used GTE's testers and intellectual property to develop two testers of its own, the EH-300 and the DCT-400. These testers use servo burst feedback and a thermal drift-compensated closed-loop positioning system to determine the accuracy of the heads.

At issue in this order is the '145 patent. The '145 patent describes a "head/disk tester compris[ing] a thermal-drift compensated closed-loop positioning system that uses two sources of positioning feedback."[9] The first source, linear encoders, "reflects the position of a magnetic head with respect to the magnetic disk in the absence of thermal drift."[10] The second source, servo burst signals on the disk, "reflects the position of the magnetic head with respect to the magnetic disk in any temperature condition."[11] The purpose of the invention is "to provide a head/disk tester that

---

[8] *See* Docket No. 79 at ¶ 19.

[9] Docket No. 1, Ex. A at 2.

[10] *Id.*

[11] *Id.*

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

effects accurate positioning of a magnetic head with respect to [a] magnetic disk in a tester, even in the case of unstable temperature conditions."[12]

The court has construed five terms from the '145 patent.[13]

United States District Court
For the Northern District of California

---

[12] *Id.*

[13] *See* Docket No. 224.

4

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

| Disputed Term[14] | Court's Construction |
|---|---|
| "second feedback means for determining the position of said magnetic head with respect to said data track of said magnetic disk in varying temperature conditions" (claim 1) | Section 112(f) means-plus-function term<br><br>Function: "providing feedback for determining the position of said magnetic head, with respect to said data track of said magnetic disk in varying temperature conditions, using servo burst signals on said magnetic disk at predetermined positions radially offset from said track center line."<br><br>Structure: "the read element of magnetic head and servo analyzer, including read element, read amplifier, detector, analog to digital converter and averager" |
| "means for reading said servo burst at each of said offsets in generating and storing signals representative of each read burst associated with each said offset" (claim 17) | Section 112(f) means-plus-function term<br><br>Function: "reading said servo burst at each of said offsets and generating and storing signals representative of each read burst associated with each of said offsets"<br><br>Structure: "servo analyzer, including read element, read amplifier, detector, analog to digital converter, average, and the memory of the position controller" |
| "closed loop positioner, responsive to said first feedback means and said second feedback means to control said positioning means, whereby said magnetic head is substantially at said desired offset from said track center line" (claim 1) | Plain and ordinary meaning – Section 112(f) does not apply |
| "means for pre-writing said servo burst signal at a plurality of positions along a track of said magnetic disk, and for detecting the amplitudes of said prewritten burst signals" (claims 6 and 7) | Section 112(f) means-plus-function term<br><br>Function: "prewriting said servo burst signals at a plurality of positions along a track of said magnetic disks and detecting the amplitudes of said prewritten burst signals"<br><br>Structure: "gate sequencer, write amplifier, detector and ADC, write element of the head, read element of the head, and encoder of spindle" |

---

[14] *See* Docket No. 123 at 128-31.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

**B.      Procedural Background**

In August 2011, GTE filed this patent suit against Western Digital alleging infringement of U.S. Patent Nos. 6,023,145 ("the '145 patent") and 6,785,085 ("the '085 patent").  The complaint alleged Western Digital's products infringe claims 1-19 of the '145 patent  and claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39 of the '085 patent.  Western Digital answered and filed a counterclaim alleging that the '145 patent and the '085 patent are invalid and that GTE infringes four Western Digital patents: U.S. Patent Nos. 5,640,089 ("the '089 patent"), 5,844,420 ("the '420 patent"), 6,891,696 ("the '696 patent"), and 7,480,116 ("the '116 patent").[15]

The court denied Western Digital's motion to dismiss and set a case management schedule[16] with a February 10, 2012, deadline for GTE to serve infringement contentions on Western Digital and related documents in compliance with Patent L.R. 3-1 and 3-2.[17]  The court held a claims construction hearing on September 25, 2012, and issued its constructions from the bench.

On January 15, 2013, Western Digital first moved for partial summary judgment of (1) invalidity and (2) noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent as well as (3) noninfringement of claims 20 and 29 of the '085 patent.  GTE opposed Western Digital's motion and moved for relief under Rule 56(d).  On March 12, 2013, the court heard arguments regarding the parties' summary judgment motions.

---

[15] *See* Docket No. 79.

[16] *See* Docket No. 48.

[17] *See* Docket No. 57.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

United States District Court
For the Northern District of California

On February 6, 2013, the parties agreed to modify the case scheduling order: delaying the close of fact and expert discovery and the related deadline for dispositive motion practice.  The trial date was continued from October 28, 2013, to December 2, 2013.[18]

On April 30, 2013, GTE sought leave on shortened time to amend its infringement contentions.  GTE asserted that recently discovered evidence provided the requisite good cause for leave to amend.  GTE, however, did not offer its proposed amended infringement contentions to the court or Western Digital.  Instead, GTE sought leave only on the grounds that it had good cause and Western Digital would not be prejudiced based on its own assessment of its contentions.

On May 14, 2013, the court heard argument regarding GTE's motion for leave to amend its contentions and the court issued its order the same day denying GTE's request for leave.  The court made no finding regarding either GTE's proffer of good cause or possible prejudice to Western Digital because, absent a review of the proposed infringement contentions, the court could not evaluate good cause or possible prejudice.[19]

On July 19, 2013, the court issued an order addressing the summary judgment motions and providing the court's reasoning for its earlier-issued claim constructions.[20]  In the July 19 order, the court held that the term "relatively short period of time" was indefinite and thus rendered claims 17 and 19 of the '145 patent invalid.[21]  The court also granted summary judgment in Western Digital's favor on noninfringement grounds on claims 20 and 29 of the '085 patent.[22]  Finding GTE's

---

[18] *See* Docket No 143.

[19] *See* Docket No. 194.

[20] *See* Docket No. 224.

[21] *See* 35 U.S.C. §  112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").

[22] In Western Digital's original motion, Western Digital moved for summary judgment of claims 20, 21, 24, 25, 29, 30, 33, 34, 36, and 39.  *See* Docket No. 131-1.  In GTE's opposition, GTE

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

Rule 56(d) request persuasive, the court declined to rule on Western Digital's motion for summary judgment on the issue of noninfringement of claims 1-9, 11-16, and 17-18 of the '145 patent, instead deferring the issue until the court addressed the parties' respective dispositive motions filed in July 2013. The court invited both GTE and Western Digital to submit additional briefing (now before the court) regarding how GTE's subsequent discovery affected Western Digital's noninfringement arguments.

On July 29, 2013, the parties stipulated to dismissal of certain claims and counterclaims.[23] Western Digital agreed to dismiss with prejudice Counts V, VI, VII, and VIII of its counterclaims – specifically its claims that GTE infringed the '089 patent, the '420 patent, the '696 patent, and the '116 patent. In turn, GTE agreed to dismiss without prejudice Counts One, Two, Three, Four, Five, Six, Seven, and Eight of its counterclaims, in which it sought declaratory judgment of noninfringement and invalidity of Western Digital's four patents at issue. GTE also agreed to dismiss with prejudice its trade secret misappropriation claim against Western Digital. GTE dropped all remaining claims from the '085 patent.

This case has significantly narrowed from the parties' original claims and counterclaims. For clarity, the court identifies the remaining claims: (1) GTE's infringement claim spanning claims 1-16 of the '145 patent, (2) Western Digital's claim for declaratory judgment of noninfringement and invalidity of the '085 and '145 patents, and (3) GTE's breach of contract claim.[24]

---

addressed only claims 20 and 29 because GTE dropped claims of infringement regarding claims 21, 24, 25, 30, 33, 34, 36, and 39. *See* Docket No. 222 at 8 n.3. The court thus addressed only claims 20 and 29 of the '085 Patent in its order. *See* Docket No. 224.

[23] *See* Docket No. 248.

[24] *See* Docket No. 79.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

United States District Court
For the Northern District of California

The court turns to the motions addressed in this order: GTE's motion for summary judgment that claims 1, 3-7, 10-13, and 15-19 of the '145 patent are not anticipated or obvious and related sealing motions.[25]

## II. LEGAL STANDARDS

**A.      Summary Judgment**

GTE moves for summary judgment that none of the prior art that Western Digital has proffered creates a triable issue of a material fact as to either anticipation or obviousness of the '145 patent.  GTE offers essentially the same two arguments for both anticipation and obviousness, specifically that the prior art discloses neither head drive testers nor offsets from the track center line.

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26]  Material facts are those that may affect the outcome of the case.[27]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[28]  "In a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact, or when the non-movant cannot prevail on the evidence submitted when viewed in a light most favorable to it."[29]

A patent enjoys a presumption of validity.[30]  However, a moving party may overcome this

---

[25] *See* Docket No. 238.

[26] Fed. R. Civ. P. 56(a).

[27] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[28] *Id.*

[29] *Knoll Pharm. Co., Inc. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004).

[30] *See* 35 U.S.C. § 282.

9

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

presumption at the summary judgment stage through clear and convincing evidence of invalidity.[31] Clear and convincing evidence portrays "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'"[32]  "While a patentee has the burden of going forward with rebuttal evidence once a challenger has presented a *prima facie* case of invalidity, the presumption of validity remains intact and the ultimate burden of proving invalidity remains with the challenger throughout the litigation."[33]  "Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent."[34]  At summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[35]

**B.      Anticipation**

A patent is anticipated if it was disclosed in a patent application or published patent.[36]  To establish anticipation, the moving party must "must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is

---

[31] *See Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 872 (Fed. Cir. 1991) ("When the issue is patent invalidity due to obviousness, 35 U.S.C. § 103, the movant must overcome the statutory presumption of validity, 35 U.S.C. § 282, by proving obviousness by clear and convincing evidence based on undisputed facts. All factual inferences must be drawn in favor of the opponent of the motion.").

[32] *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, 571 F. Supp. 2d 1137, 1141 (quoting *Buildex Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

[33] *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1216 (Fed. Cir. 1998) (emphasis in original).

[34] *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

[35] *See id.* ("In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor.").

[36] *See* 35 U.S.C. § 102(a) ("A person shall be entitled to a patent unless" (1) the "claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention" or (2) "the claimed invention was described in a patent" or "in an application for patent published or deemed published" that "was effectively filed before the effective filing date of the claimed invention.").

10

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

disclosed in the prior art reference."[37]  "For prior art to anticipate a claim 'it must be sufficient to enable one with ordinary skill in the art to practice the invention.'"[38]  "Whether a prior art reference is enabling is a question of law based upon underlying factual findings."[39]  "Anticipation under 35 U.S.C. § 102 means lack of novelty, and is a question of fact."[40]  "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."[41]

## C.   Obviousness

"An invention may not be patented if it would have been obvious at the time of the invention to a person having ordinary skill in the art."[42]  "Obviousness is a question of law."[43]  "However, several factual inquiries underlie the determination of obviousness: the scope and content of the prior art, the differences between the claims and the prior art, the level of ordinary skill in the art, and secondary considerations."[44]  "The Court must examine each of those four factors prior to reaching a conclusion on obviousness, and must do so 'without any hint of hindsight.'"[45]

---

[37] *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).

[38] *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1342 (Fed. Cir. 2005) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1301 (Fed. Cir. 2002)).

[39] *Id.* at 1342-43.

[40] *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002) (quoting *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001)).

[41] *SmithKline Beecham,* 403 F.3d at 1343.

[42] *Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1322 (Fed. Cir. 2012).

[43] *Id.* (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) and *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

[44] *Id.* (citing *Graham*, 383 U.S. at 17-18).

[45] *Generac Power Sys., Inc. v. Kohler Co.*, Case No. 11-cv-1120-JPS, 2012 WL 6562153, at *17 (E.D. Wis. Nov. 29, 2012) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

A patent comprised of several elements is not proven obvious "merely by demonstrating that each of its elements was, independently, known in the prior art."[46]  The question turns on whether "a person of ordinary skill can implement a predictable variation."[47]  If so, then 35 U.S.C. § 103 "likely bars its patentability."[48]  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."[49]

## D.     Sealing Motions

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[50]  Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point."[51]  Parties seeking to seal judicial records relating to dispositive motions bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure.[52]

Records attached to nondispositive motions, however, are not subject to the strong presumption of access.[53]  Because the documents attached to nondispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal

---

655 F.3d 1364, 1375 (Fed. Cir. 2011)).  Secondary factors, for example, "commercial success, long felt but unsolved needs, and failure of others," inform the obviousness analysis.  *KSR*, 550 U.S. at 399.

[46] *KSR*, 550 U.S. at 418.

[47] *Id.* at 417.

[48] *Id.*

[49] *Id.* at 416.

[50] *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

[51] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[52] *Id.* at 1178-79.

[53] *See id.* at 1180.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

United States District Court
For the Northern District of California

must meet the lower "good cause" standard of Rule 26(c).[54]  As with dispositive motions, the standard applicable to nondispositive motions requires a "particularized showing"[55] that "specific prejudice or harm will result" if the information is disclosed.[56]  "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice.[57]  A protective order sealing the documents during discovery may reflect the court's previous determination that good cause exists to keep the documents sealed,[58] but a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed.[59]

In addition to making particularized showings of good cause, parties moving to seal documents must comply with the procedures established by Civ. L.R. 79-5.  Pursuant to Civ. L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law."  "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."[60]  "Within 4 days of the filing of the Administrative

---

[54] *Id.* at 1179 (internal quotations and citations omitted).

[55] *Id.*

[56] *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).

[57] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

[58] *See Kamakana,* 447 F.3d at 1179-80.

[59] *See* Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

[60] Civ. L.R. 79-5(b).  In part, Civ. L.R. 79-5(d)(1) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed" and an "unredacted version of the document" that indicates "by highlighting or other clear method, the portions of the document that have been omitted" from the redacted version.

13

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."[61]

### III. SUMMARY JUDGMENT ANALYSIS

**A.    Anticipation**

**1.        Preambles to Claims 1 and 10 of the '145 Patent**

GTE's argues the '145 patent's reference to "testers" in the preambles of claims 1 and 10 constitute claim limitations.  Because the "tester" term in the preamble constitutes a limitation, says GTE, and no prior art cited by Western Digital includes such a limitation, the '145 patent is not anticipated.[62]  Western Digital counters that the preambles to claims 1 and 10 are not limitations because claims 1 and 10 disclose the requisite structure and method without resort to the preamble.  Thus, the court must first resolve whether the preambles to independent claims 1 and 10 constitute claim limitations.

"The question whether the court should treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."[63]  "In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."[64]  "Conversely, a preamble is not limiting 'where a patentee defines a structurally complete

---

[61] Civ. L.R. 79-5(e)(1).  The Civil Local Rules have recently been amended shortening the time available to the designating party to file a supporting declaration from seven days to four days.  As this rule change was only recently implemented the court applies the prior form of Civ. L.R. 79-5 for the purposes of this order.

[62] The prior art Western Digital cites discloses only disk drives and not testers.  *See* Docket No. 238-2 at 11-16.

[63] *Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 F. App'x 23, 28 (Fed. Cir. 2012) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 807 (Fed. Cir. 2002) (quotations omitted)).

[64] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).

14

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"[65]          The Federal Circuit has laid out "guideposts" to assess whether a claim's preamble constitutes a limitation.  So-called "Jepson" claiming, for example, where the patentee uses "the preamble to recite 'elements or steps of the claimed invention which are conventional or known'"[66] generally "indicates intent to use the preamble to define the claimed invention, thereby limiting claim scope."[67]  Dependence "on a particular disputed preamble phrase for antecedent basis" also may serve as limitation on claim scope "because it indicates a reliance on both the preamble and claim body to define the claimed invention."[68]  In addition, "when the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope."[69] The preamble may become a limitation when "reciting additional structure or steps underscored as important by the specification" or when the preamble is used during prosecution to distinguish the claim from prior art.[70]

On the other hand, "preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant."[71]

---

[65] *Id.* (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) (the invention is the claimed structure, not the uses to which it is put)).

[66] *Dror*, 112 F.3d at 479 (quoting 37 C.F.R. § 1.75(e) (1996)).

[67] *Catalina*, 289 F.3d at 808.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 809.

15

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

Here, the parties dispute whether the preambles to claims 1 and 10 of the '145 patent are

limiting.  Claim 1 of the '145 patent provides:

1.  A head/disk tester having a thermal drift-compensated closed-loop positioning system for positioning a magnetic head at a desired offset with respect to a data track on a magnetic disk disposed about a disk axis, said data track extending along a circular track center line (TCL) on said magnetic disk disposed about said disk axis, comprising:

    A.  a base;

    B.  a spindle attached to said base, said spindle being adapted for rotatingly supporting a magnetic disk about said disk axis;

    C.  a movable carriage supported by said base, said carriage having an assembly for supporting a magnetic head in a region overlying said magnetic disk, said magnetic head having a read element and a write element;

    D.  positioning means for moving said carriage with said magnetic head with respect to said magnetic disk in a direction transverse to said disk axis;

    E.  a first feedback means for determining the position of said magnetic head with respect to said data track of said magnetic disk in stable temperature conditions;

    F.  a second feedback means for determining the position of said magnetic head with respect to said data track of said magnetic disk in varying temperature conditions, said second feedback means being responsive to servo burst signals on said magnetic disk at predetermined positions radially offset from said track center line; and

    G.  a closed-loop positioner responsive to said first feedback means and said second feedback means to control said positioning means whereby said magnetic head is substantially at said desired offset from said track center line.

Claim 10 of the '145 patent provides:

10.  A method of positioning of a magnetic head/disk tester, wherein at least two servo burst signals are prewritten to a magnetic disk with a magnetic head at a plurality of offsets from the center line of a data track on said magnetic disk before the beginning of a test of said magnetic head, said method comprising the steps of:

    A.  moving said magnetic head from one location over said magnetic disk to another location with a closed loop positioner that uses a first feedback source, wherein said first feedback source reflects the position of said magnetic head with respect to said magnetic disk, said position being in a wide range including a substantial portion of the whole width of said magnetic disk; and

    B.  adjusting the position of said magnetic head at a prescribed location over said magnetic disk using an additional closed loop responsive to a second feedback source, said second feedback source being prewritten set of servo burst signals stored on said magnetic disk at locations laterally offset from said centerline, wherein said second feedback source reflects the local position of said magnetic head with respect to said magnetic disk in a relatively narrow vicinity of said data track of said magnetic disk.

GTE argues the term "head disk tester" is a required limitation that defines the claimed

invention.  GTE points to (1) language from the specification that references the invention as a

"head/disk tester," (2) the title of the invention as a "Head and Disk Tester with a Thermal

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND
NONOBVIOUSNESS

United States District Court
For the Northern District of California

Drift-Compensated Closed-Loop Positioning System," and (3) the distinction drawn by the preamble between the claimed invention and commercially available hard drives.[72]  GTE points out Western Digital's own invalidity and infringement expert, Dr. Messner, considered the preambles to be limiting in his expert report.[73]  For example, Western Digital argued that claim 10 was limited by the preamble which rendered claim 10 indefinite under 35 U.S.C. § 112 in its invalidity contentions.[74]

Western Digital responds that "GTE did not allege the preambles of either claims 1 or 10 were limitations in its Patent Local Rule 4-1 disclosure, or at any time during the claim construction process."[75]  Western Digital claims "there is no need for 'head/disk tester' to be a limitation, because the body of the independent claims at issue adequately describes the components that make up what GTE describes in its patent as a head/disk tester."[76]  Lastly, Western Digital argues the '145 patent "claim elements completely define the invention without needing to consult the preamble to provide additional meaning, and therefore the preamble is not a limitation."[77]

On balance, the court finds the preambles of claims 1 and 10 of the '145 patent to be required limitations.  Western Digital's construction of the preamble as limiting in its invalidity contentions, invalidity expert report, and non-infringement expert report is certainly telling.  More important, in light of the specification, the recitation of "head/disk tester" in the preambles is

---

[72] *See* Docket No. 238-2 at 6.

[73] *See* Docket No. 238 at 20 (explaining that Western Digital is now arguing for the first time in this litigation that the preambles to claims 1 and 10 are not limiting).

[74] *See* Docket No. 273 at 2.

[75] Docket No. 255 at 4.

[76] *Id.*

[77] *Id.*

17

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

necessary to square the technology disclosed by the specification with that claimed.  It is also

impossible to ignore the plain language of the title of the patent, "Head and Disk Tester with a

Thermal Drift-Compensated Closed-Loop Positioning System," that describes the invention as a

tester.[78]  While GTE could have – and perhaps should have – disclosed the preambles as limiting in

their claim construction disclosures, the limiting notice of the preamble, as opposed to the need to

construe the meaning of the preamble's language, is less worthy of condemnation in the form of

the waiver Western Digital urges.  This is especially true considering the additional structure and

meaning provided by the preamble that is otherwise missing from the claim as a whole.  The

preambles of the '145 patent therefore constitute required claim limitations.

> ### 2.    Anticipation Arguments [79]

On the issue of anticipation, GTE claims that the preambles of claims 1 and 10 both

explicitly require a "head disk tester" and Western Digital's disk drive prior art references do not

disclose testers necessary to anticipate the '145 patent because they perform track following, not

positioning at an offset like the '145 patent.[80]  Because Western Digital's references do not

disclose all of the limitations of the independent claims, GTE concludes, they cannot disclose all of

the limitations of the dependent claims.[81]

Western Digital counters by concentrating on the '808 patent prior art reference and noting

that it discloses a difference, or ratio, between the A and B burst values in order to position the

head.[82]  Western Digital further claims that a jury could reasonably find that this reference, and the

---

[78] U.S. Patent No. 6,023,145 at 1.

[79] *See* Docket No. 273 at 4.

[80] *See* Docket No. 238 at 20.

[81] Claims 3-7 depend from independent claim 1. Claims 11-13 and 15-16 depend from independent claim 10.

[82] *See* Docket No. 255 at 19.

18

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND
NONOBVIOUSNESS

others it cites, although related to disk drives, expressly or inherently disclose all of the elements of the '145 patent claims at issue, even if additional elements are used in the prior art references that are not in the '145 patent.[83]

Although the court agrees with GTE that the preamble is limiting in this case, that does not mean Western Digital's prior art is off the table.  Notwithstanding the parties' experts' conflicting theories,[84] the court finds that a person of ordinary skill in the art could find the prior art inherently discloses GTE's claimed technology.[85]  This dispute represents a genuine issue of material fact that is ripe for jury assessment.  GTE's motion for summary judgment of no anticipation of the '145 patent is DENIED.

**B.      Obviousness**

GTE also moves for summary judgment that the '145 patent is nonobvious.  The parties dispute whether two claim limitations would have been obvious to one of ordinary skill in the art in light of the prior art: (1) testing at a desired offset from the track center line[86] and (2) the use of a "head disk tester."

GTE argues that Western Digital's expert report provides an incomplete invalidity analysis because Western Digital does not explicitly address how positioning the tester at an offset would

_____

[83] *Id.* at 19-20.

[84] *Compare* Docket No. 238-9, *with* Docket No. 262-1, ¶ G (Ex. 8).

[85] *See Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (A "prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference."); *Cont'l Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991) ("To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.").

[86] The court previously held that the term "closed loop positioner, responsive to said first feedback means and said second feedback means to control said positioning means, whereby said magnetic head is substantially at said desired offset from said track center line" did not warrant additional construction outside of its plain and ordinary meaning.  *See* Docket No. 224.

19

be obvious to a person of ordinary skill in the art.  GTE explains that decreasing track widths

presented challenges for testing hard drives around the time of the invention.[87]  The '145 patent

addressed these challenges by using servo information to position magnetic heads tested at an

offset rather than using servo information to center the heads over the centerline.[88]  GTE also

points out that Western Digital's obviousness arguments rely on some references that have already

been presented to the U.S. Patent and Trademark Office ("PTO") and the PTO made a prior

determination that the '145 patent satisfied the statutory requirements of patentability, including

nonobviousness, over the cited prior art.[89]

      Western Digital responds that positioning at an offset is "inherent" in the prior art,[90] and

even if the court finds otherwise, it would have been obvious to a person skilled in the art to use a

position error signal from readback amplitudes to bring the head of the tester to an offset position.[91]

Because (1) prior art was well developed and (2) "the writing of servo burst patterns using a head

positioning actuator system was well known in the art"[92] – at a bare minimum – a genuine dispute

remains for the fact finder.

---

[87] *See* Docket No. 238-2 at 4.

[88] *See id.*

[89] *See id.* at 11; *id.* at 11-12 (explaining that U.S. Patent Nos. 4,814,909 ("the '909 Patent) and 4,396,959 ("the '959 patent) disclose disk data storage equipment, not testers, that engage in track following, not positioning at an offset); *id.* at 12-13 (explaining that U.S. Patent No. 5,270,886 ("the '886 patent) and the '808 patent disclose using an error signal to follow a track, not to position at an offset from the track center line); *id.* at 13-14 (explaining that U.S. Patent No. 4,638,384 ("the '384 Patent") discloses only track following); *id.* at 14-15 (explaining that U.S. Patent No. 5,227,930 ("the '930 patent") discloses track following and not positioning the head at an offset from the track centerline); *id.* at 15-16 (explaining that U.S. Patent No. 6,057,977 ("the '977 patent") discloses track following).

[90] *See* Docket No. 255 at 1.

[91] *See* Docket No. 259-5 at ¶ 18 (explaining how the prior art disclosed the use of the position error signal from the readback amplitudes to bring the head to the center of the data track, but the same position error signal could be used to bring the head to a position that is at a desired offset).

[92] Docket No. 259-1 at 16.

20

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

GTE also asserts that the preambles of claims 1 and 10 both explicitly require a "head disk tester" and, therefore, one skilled in the art would not have consulted Western Digital's disk drive references to design the "vastly different functional requirements" of the '145 patent.[93]   GTE again points out that Western Digital relies upon prior art references similar to those that were before the PTO during prosecution and that the PTO's decision to grant the '145 patent reflects the PTO's prior determination that the patent claims were nonobvious.[94]

Western Digital responds that it would have been obvious to a person skilled in the art to mirror the operation of a disk drive and run the tests described by the '145 patent.[95] Western Digital argues that a "person of ordinary skill in the art would understand the claimed head/disk tester to be equivalent in function with respect to reading, writing, and servo operation to a disk drive" and therefore the disk drive prior art is relevant and invalidating.[96]   The claims of the '145 patent "are obvious because they merely arrange old elements, with each performing the same function" and "yield no more than what one of ordinary skill would expect from such an arrangement."[97]

---

[93] Docket No. 238-2 at 20.

[94] *See id*. at 10-1 (referring to U.S. Patent No. 4,788,608 ("the '608 Patent") as disclosing only a positioning system for a disk drive not a tester); *id*. (referring to U.S. Patent No. 5,268,800 ("the '800 patent") which discloses a disk drive, not a tester).

[95] *See* Docket No. 259-5 at ¶ 27-28 (the "purpose of a head/disk tester" such as the one described in the '145 patent is "to emulate the operation of a disk drive so that [the] head can be tested with media in the positions, in orientations, at the fly-heights and with the waveforms and potentially other conditions that occur in the operating environments of a disk drive in normal operation." Thus, "because the testers serve to emulate the operation of a disk drive, disk drive prior art is relevant to claims directed at a tester system for emulating disk drives.").

[96] Docket No. 259-5 at ¶ 24.

[97] Docket No. 259-1 at 12-13 (explaining that although references described are disk drive references, it would have been obvious to combine the various positioning references with the generic disk drive element, in particular U.S. Patent No. 5,808,435  ("the '435 patent"), thus rendering claims 1 and 10 of the '145 patent obvious).

21

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

United States District Court
For the Northern District of California

As a preliminary matter, the court notes that just because prior art was before the PTO does not generate estoppel in this case.  As outlined above, there are colorable arguments for inherency and invalidity pursuant to Section 102.  The same is true regarding Section 103.  The court agrees with Western Digital that because the testers emulate the operation of a disk drive, disk drive prior art is relevant to the validity determination.  On balance, a genuine issue of material fact as to whether the collective prior art renders the '145 patent obvious remains.   Because a reasonable jury could find the '145 patent obvious, summary judgment is not warranted.  GTE's motion for summary judgment of nonobviousness of the '145 patent is DENIED.

## IV. SEALING ANALYSIS

**A.**     **GTE's Motion For Summary Judgment of No Anticipation and Nonobviousness**

GTE requests leave to file documents under seal related to its motion for summary judgment.[98]  GTE represents that (1) Exhibits B, E, F, and Q contain information Western Digital has designated "Highly Confidential – Attorney's Eyes Only," and (2) Exhibits C and D contain GTE's confidential and proprietary information.

**1.**     **Exhibits C and D to the Kolassa Declaration**

GTE requests that Exhibits C and D containing its confidential information be filed under seal.  GTE represents that Exhibit C contains "excerpts from the expert report of Michael J. Wagner and includes a discussion regarding GTE's expenditures associated with the development of its read/write head tester technology."[99]  GTE also represents that Exhibit D "excerpts a GTE tester user guide that includes technical information regarding GTE's read/write head tester

---

[98] *See* Docket No. 238 (requesting leave to file Exhibits B-F and Q to Declaration of Scott E. Kolassa ("the Kolassa Declaration") under seal).

[99] Docket No. 238-1 at ¶ 2.

22

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

technology."[100]  GTE claims that "the public disclosure of this information would pose a

significant threat to GTE's competitive standing."[101]  After reviewing GTE's representations and

the exhibits, the court is convinced that GTE has met the compelling reasons standard as to

Exhibits C and D.  GTE's request to seal Exhibit C and D to the Kolassa Declaration is

GRANTED.

### 2.    Exhibits B, E, F, and Q to the Kolassa Declaration

GTE asks the court seal Exhibits B, E, F, and Q under seal.  GTE asserts that Exhibits B

and E contain "excerpts from a certain expert report of Dr. William C. Messner," Exhibit F

"excerpts from the deposition transcript of Dr. William C. Messner" and Exhibit Q "excerpts from

the deposition transcript of Dr. Joshua W. Phinney."[102]  GTE represents that Western Digital has

designated all these documents "Highly Confidential – Attorney's Eyes Only" pursuant to the

Protective Order."[103]

Western Digital filed a timely declaration in support of GTE's sealing motion where it

acknowledged that sealing is not warranted with regard to Exhibit B to the Kolassa Declaration.[104]

Western Digital does ask the court to seal Exhibits E, F, and Q.[105]  Western Digital represents that

the documents contain detailed information about the structure and/or functionality of Western

Digital's Accused Products and makes a blanket, general assertion that the "parties' confidentiality

interest therefore overcomes the right of public access to the record, as a substantial probability

exists that Western Digital's overriding confidentiality interest will be prejudiced if the record is

---

[100] *Id*. at ¶ 3.

[101] *Id.*at ¶¶ 6-7.

[102] *Id*. at ¶¶ 1, 4- 6.

[103] *Id.*

[104] *See* Docket No. 244 at ¶ 4.

[105] *See id.* at ¶ 5.

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND
NONOBVIOUSNESS

not sealed."[106]  Western Digital has not made a particularized showing that specific prejudice or

harm will result if the information is disclosed that satisfies the compelling reasons standard.

GTE's sealing request with respect to Exhibits B, E, F, and Q is DENIED.

**B.    Western Digital's Opposition to GTE's Motion For Summary Judgment of No Anticipation and Nonobviousness**

Western Digital requests leave to file several sealed documents in support of its opposition

to GTE's motion for summary judgment be filed under seal.[107]  The court will address these

requests in turn.

**1.    Exhibit G to the Woodhouse Declaration**

Western Digital requests leave to file Exhibit G under seal.  Western Digital asserts

Exhibit G "contains confidential information about the structure and function of the Accused

Products."[108]  Western Digital has not made a particularized showing that specific prejudice or

harm will result if the information is disclosed that satisfies the compelling reasons standard.

Western Digital's request with respect to Exhibit G is DENIED.

**2.    Exhibits H, O, and Q and Western Digital's Opposition**

Western Digital requests leave to file (1) Exhibits H, O, and Q and (2) portions of its

opposition under seal because they have been designated confidential by GTE pursuant to the

protective order in this case.[109]

GTE filed a timely declaration in support of Western Digital's sealing motion where it

withdrew any assertion of confidentiality with regard to Exhibit Q.[110]  GTE does seek leave from

---

[106] Docket No. 244 at ¶¶ 6-8.

[107] *See* Docket No. 251 (requesting leave to file Exhibits G, H, O, and Q to the declaration of Michelle P. Woodhouse ("the Woodhouse Declaration") and portions of Western Digital's Opposition brief that refer to Exhibit H under seal).

[108] Docket No. 251-1 at ¶ 2.

[109] *Id*. at ¶ 4.

24

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND NONOBVIOUSNESS

United States District Court
For the Northern District of California

1   the court to file Exhibits H, O, and portions of Western Digital's Opposition Brief referring to

2   Exhibit H under seal.  These documents purportedly contain "highly confidential and proprietary

3   details of the function, design and operation of GTE's products" and "public disclosure of the

4   information contained in [Exhibit H and O] to GTE's Competitors would pose a significant

5   competitive disadvantage for GTE."[111]  After reviewing GTE's representations and the exhibits,

6   the court is convinced that GTE has met the compelling reasons standard as to Exhibits H and O.

7   Western Digital's request to seal Exhibits H and O is GRANTED.  Western Digital's request to

8   seal Exhibit Q is DENIED.

9

10         Lastly, because the court will grant leave to file Exhibit H under seal, Western Digital's

11   request that relevant references to Exhibit H in its opposition to GTE's Motion for

12   Summary Judgment remain redacted is GRANTED.

13   **IT IS SO ORDERED.**

14   Dated: November 19, 2013

15

16

17   PAUL S. GREWAL
     United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27   [110] *See* Docket No. 269 at ¶ 6.

28   [111] *Id.* at ¶¶ 8-12.

25

Case No.: 5:11-cv-03786-PSG
ORDER RE: GTE'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND
NONOBVIOUSNESS