United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., | ) | Case No. 5:11-cv-03786-PSG |
| | ) | |
|     Plaintiff and Counterclaim Defendant, | ) | **OMNIBUS ORDER RE: MOTIONS** |
| | ) | **IN LIMINE** |
|       v. | ) | |
| | ) | |
| WESTERN DIGITIAL CORPORATION, et al., | ) | **(Re: Docket Nos. 311, 316-4, 328, 329,** |
| | ) | **331, 332, 333, 334, 335, 336, 338, 339,** |
|     Defendants and Counterclaim Plaintiffs, and | ) | **340, 341, 343, 344, 345, 347, 349, 350,** |
| | ) | **352, 356, 371-4, 371-6, 371-8, 373, and** |
| WESTERN DIGITAL (THAILAND) COMPANY | ) | **373-1)** |
| LIMITED AND WESTERN DIGITAL | ) | |
| (MALAYSIA) SDN. BHD, | ) | |
| | ) | |
|       Defendants. | ) | |

       Plaintiff Guzik Technical Enterprises ("GTE") and Defendants Western Digital Corp., et al.

(collectively, "Western Digital") have each filed various motions in limine ("MIL").  Yesterday,

the parties appeared for a hearing.  In the interest of expediency the court presumes familiarity with

the background of this case[1] and turns directly to the motions before it.

---

[1] Unfamiliar readers are directed to three of the court's recent summary judgment orders. *See* Docket Nos. 442, 443, and 445.

**A.     GTE's MIL No. 1**

GTE moves to preclude (1) Western Digital from calling David Rauch as a witness and (2) James Pampinella from supporting his damages analysis by suggesting the DBT Tester was a non-infringing alternative based on testimony from David Rauch and/or conversation with Tahir Ali.[2]   GTE's motion refashions arguments presented in its motion to strike, except this time GTE targets Mr. Rauch – a witness GTE acknowledges was identified by GTE "in its initial disclosures" as "knowledgeable" about Western Digital's testers.[3]   Nonetheless, GTE argues that Western Digital's boilerplate disclosure that it might rely on all persons identified in plaintiff's initial disclosures was insufficient to give GTE notice that "Mr. Rauch would have information regarding the late-identified purportedly non-infringing DBT."[4]   Because GTE was not on notice that Mr. Rauch possessed information relevant to Western Digital's theory that the DBT was a non-infringing alternative, Western Digital should not be able to rely on David Rauch's testimony at trial.

GTE also argues that Mr. Pampinella may not rely on his conversation with Mr. Ali that he had an "informed guess" about the development of the DBT and from whom he could get details about the development of the DBT.[5]   GTE points out Mr. Ali was not involved in the development of the tester.   Thus, Mr. Pampinella should not be permitted to base his expert opinion on his discussions with Mr. Ali.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B)(i) – GTE continues – Mr. Pampinella's expert report was required to include "a complete statement of all opinions" he "will express and the basis and reasons for them."   Because Mr. Pampinella never identified "Mr. Rauch as providing the basis for

---

[2] *See* Docket No. 371-4 (GTE's MIL No. 1).

[3] *Id.* at 3.

[4] *Id.* at 3-4.

[5] *Id.* at 4.

2

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

any of his opinions," Mr. Pampinella "should therefore not be allowed to rely on Mr. Rauch's trial testimony to provide an opinion to the jury at trial."[6]  GTE concludes that if the court excludes "the testimony of Mr. Rauch, as well as Messrs. Eaton, Farren, Cain, and Lin" and similarly determines that "Mr. Pampinella cannot rely on his conversation with Mr. Ali, then there are no facts in the case supporting the assertion that the DBT tester 'could have been available' as early as 2007.  As a result, Mr. Pampinella should be precluded from offering any opinions or testimony premised on the availability in 2007 of the DBT tester as a non-infringing alternative."[7]

Western Digital responds that GTE's motion "to exclude Western Digital from calling David Rauch to testify at trial and to exclude Western Digital's expert, James Pampinella, from relying on the 2007 availability date of the DBT tester is nothing more than a regurgitation of arguments previously laid out" in its motion to strike.[8]  Those arguments are without merit, because GTE "has known about Mr. Rauch, and Western Digital's potential reliance on him," including the "general subject matter of his testimony since 2011."[9]  GTE "failed to depose Mr. Rauch, and now seeks to benefit from this failure by speculating as to a supposedly improper basis for his hypothetical testimony about one particular topic, and excluding Mr. Rauch's testimony in its entirety on that basis."[10]  Pursuant to Rule 26, a party need only supplement its disclosures if the identity of the witness "has not otherwise been made known to the parties during the discovery process."  Here, Mr. Rauch was a custodian "from whom it sought email communications in its First Set of Requests for Production of Email on October 23, 2012."[11]  It is

---

[6] *Id.*

[7] *Id.*

[8] Docket No. 404 at 1 (WD's Opposition to GTE's MIL No. 1).

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2.

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

therefore disingenuous for GTE to complain that "it did not know about Mr. Rauch or the information he has in his possession."[12]  It was GTE's own dilatory conduct that is the cause and related election to forego deposition testimony that self-inflicted any prejudice it now faces. GTE's request to exclude Mr. Rauch's testimony is also overbroad, because its "arguments regarding the subject matter of Mr. Rauch's testimony are based on nothing more than conjecture. There are multiple non-infringing alternatives, including the Xyratex and Hitachi testers, in addition to the DBT tester" that Mr. Rauch might testify to.[13]

As to Mr. Pampinella's reliance on information from Mr. Ali, Western Digital claims GTE mischaracterizes Mr. Pampinella's testimony.  "Mr. Pampinella stated that 'there were some questions that we had in our meeting about the DBT' for which Mr. Ali stated he could provide an 'informed guess,' and for those questions he referred Mr. Pampinella to Mr. Farren and Mr. Eaton."[14]  GTE "has no basis to believe that these are the same topics in Mr. Pampinella's expert report for which he relies on Mr. Ali."[15]

As a preliminary matter, the court's denial of Western Digital's motion to strike limits the scope of Western Digital's MIL No. 1.[16]  Mr. Rauch and Mr. Ali will be permitted to testify as to what they know that is relevant to this case.  Because Mr. Rauch has yet to be deposed, GTE may take a three-hour deposition to mitigate any prejudice.  GTE's MIL No. 1 otherwise is DENIED.

---

[12] *Id.*

[13] *Id.* at 3.

[14] *Id.* at 4 (quoting Docket No. 337, Ex. 8 at 138:14-25).

[15] *Id.* at 4.

[16] *See* Docket No. 436.

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

1

**B.**      **GTE's MIL No. 2**

2

GTE requests the court preclude the introduction of evidence pertaining to Mr. Guzik's

3

temperament at trial because it is irrelevant under Rule 401 and unfairly prejudicial under

4

Rule 403.[17]  GTE argues evidence of "Mr. Guzik's temperament is unrelated to his 'character for

5

truthfulness'" and therefore the evidence is inadmissible under Rule 608.[18]

6

Western Digital responds that Mr. Guzik's "past acts are relevant" because "they impacted

7

the state of mind of those dealing with him."[19]  Western Digital argues because GTE put

8

Western Digital's employees' state of mind at issue in this case, it opened the door to evidence of

9

Mr. Guizk's past acts.  In particular, Western Digital argues those acts are relevant to: (1) whether

10

Western Digital's patent infringement was willful and (2) whether "Western Digital employees hid

11

their development of the Accused Products from Mr. Guizk because they 'knew [they were]

12

violating GTE's rights.'"[20]

13

The court finds that the probative value of evidence pertaining to Mr. Guizk's past acts is

14

substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading

15

the jury.  The relevance of Mr. Guzik's temperament is dampened by the court's order that

16

willfulness will not be submitted to the jury.  GTE's MIL No. 2 is GRANTED.  The witnesses may

17

speak about their own state of mind, but may not speak about Mr. Guizk's alleged bad acts.

18

**C.**      **GTE's MIL No. 3**

19

GTE requests that Western Digital be precluded from offering new invalidity theories – or

20

details that were required to be provided during expert discovery but were not provided – through

21

22

23

24

---

25

[17] *See* Docket No. 349 (GTE's MIL No. 2).

26

[18] *Id.* at 2 (quoting Fed. R. Evid. 608).

27

[19] Docket No. 405 at 1.

28

[20] *Id.* (quoting Docket No. 237 at 13) (alteration in original).

5

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Dr. Messner's testimony at trial.[21]  GTE argues that Dr. Messner, Western Digital's invalidity expert, offered only an unsupported obviousness opinion in his invalidity expert report and only supplemented his expert report through a supporting declaration[22] bolstering its opposition to GTE's motion for summary judgment that the '145 patent is not anticipated or obvious.  That declaration came late – indeed, after the close of expert discovery – and should be excluded pursuant to Rule 26.

GTE characterizes Dr. Messner's declaration as suggesting that the prior art inherently discloses positioning at an offset.  GTE claims "Western Digital never disclosed these theories in its invalidity contentions, discovery responses, expert reports, or at any other time during fact or expert discovery.  As a result, GTE had no reason to rebut these theories" with its own evidence and opinions or "to question Dr. Messner regarding them."[23]  Similarly, Dr. Messner's expert report on invalidity "provided no opinion on the purported invalidity of claim 10 of the '145 patent based on 35 U.S.C. § 112."[24]  Nonetheless, Western Digital's opposition to GTE's motion for summary judgment of validity raised indefiniteness arguments for the first time.  Because GTE had no reason to rebut or explore these theories during fact or expert discovery, Western Digital should be precluded from raising them at trial.

Western Digital responds that it was GTE's late amended infringement contentions that necessitated its updated 35 U.S.C. §§ 103 and 112 arguments.  If GTE is now permitted to allege "infringement based on the mere capability" to position a head at an offset then Western Digital should be permitted to "allege obviousness on the same grounds" and Dr. Messner "should be able

---

[21] *See* Docket No. 328 at 1 (GTE's MIL No. 3).

[22] *See* Docket No. 259-5.

[23] Docket No. 328 at 3 (GTE's MIL No. 3).

[24] *Id.* (citing Ex. 12).

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

United States District Court
For the Northern District of California

1   to testify consistent with his expert report and August 2013 declaration."[25]   Western Digital

2   characterizes GTE's suggestion in its motion for summary judgment regarding validity that the

3   preamble to claim 10 of the '145 patent is limiting as an "eleventh hour claim construction

4   argument" that certainly "gives rise to an additional invalidity argument under 35 U.S.C. § 112."[26]

5       The court agrees with Western Digital that GTE knew how it might amend its infringement

6   contentions and GTE is without clean hands with respect to its late adopted constructions.

7   Nevertheless, because Western Digital submitted its supplemental expert report after Dr. Messner's

8   deposition, GTE may take an additional four-hours deposition of Dr. Messner.  GTE's MIL No. 3

9   otherwise is DENIED.

10

11   **D.   GTE's MIL No. 4**

12       GTE asks the court to preclude Western Digital from arguing that Western Digital's testers

13   do not contain five GTE design features or that those features were not copied from GTE's testers

14   or were independently developed.[27]   GTE makes this request because Western Digital's rebuttal

15   expert reports do not affirmatively state that it developed the tester features independently and did

16   not copy them from GTE.  All those reports claim is that GTE's expert "fails to show that

17   Western Digital did not independently develop" the five GTE design features.[28]   Thus, Dr. Talke

18   effectively admits those design features are present, because Western Digital's expert failed to

19   show – and did not affirmatively state – Western Digital independently developed its testers.

20

21       Western Digital responds that GTE's motion is premature and unnecessary, because GTE

22   "cites no basis for its speculation that Western Digital's expert may testify beyond the scope of

23

24

---

25   [25] Docket No. 413 at 5 (WD's Opposition to GTE's MIL No. 3).

26   [26] *Id.* at 6.

27   [27] *See* Docket No. 371-6 (GTE's MIL No. 4).

28   [28] Id. at 3 (quoting Docket No. 353-1 at ¶ 26, Ex. 24 (Talke Rebuttal Report) at ¶¶ 361-83).

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

their expert reports."[29]  If the court concludes that a "prophylactic order prohibiting Western Digital's experts from denying actual copying or asserting that the five features were independently developed, the order should apply equally to GTE's expert Dr. Klopp."[30] "Dr. Klopp admitted that he has no direct evidence of copying, despite having full access to Western Digital's testers, source code, and thousands of pages of design and other technical documents."[31]

With the understanding that the experts are required to testify only as to arguments and theories disclosed in their expert reports, GTE's MIL No. 4 is DENIED.

**E.      GTE's MIL No. 5**

GTE requests the court preclude the expert opinion of Mr. Jestice.[32]  "Because Western Digital's claims regarding '089 and '116 Patents have been dismissed, the opinions that were disclosed by Mr. Jestice regarding GTE's source code and software that are no longer relevant to any issue remaining in this case, and any new testimony regarding Western Digital source code, the software for the Accused Testers, and opinions based thereon of Mr. Jestice have never been disclosed and, if offered now, would be untimely."[33]

Western Digital does not facially oppose GTE's motion.  Western Digital does, however, attempt to reserve "the right to introduce testimony of Mr. Jestice to the extent Guzik offers opinions on source code beyond the scope of the May 21, 2013 infringement report by its expert, Dr. Joshua W. Phinney."[34]

---

[29] Docket No. 414 at 4 (WD's Opposition to GTE's MIL No. 4)

[30] *Id.* at 5.

[31] *Id.*

[32] *See* Docket No. 329 (GTE's MIL No. 5).

[33] Docket No. 329 at 2-3.

[34] Docket No. 415 at 1.

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

GTE's MIL No. 5 is GRANTED.  The court DENIES Western Digital's requested reservation of rights.  Mr. Jestice's testimony is excluded.

**F.      GTE's MIL No. 6**

GTE requests the court preclude Western Digital from eliciting testimony from Dr. Messner regarding the source code and software-related functionality of Western Digital's EH-300 and DCT-400 testers, because Dr. Messner – admittedly – did not perform any review of the source code or software of the accused testers.[35]  Moreover, Western Digital has not supplemented Dr. Messner's expert reports to disclose his review of the software or source code for the accused testers.  At bottom, GTE would like to limit Dr. Messner to theories disclosed in his report.

Western Digital responds that GTE's request is too vague and does not adequately lay out what it means by "source code and software-related functionality."[36]  Western Digital concedes that Dr. Messner will not testify about source code.

Dr. Messner's testimony will be limited to the theories and arguments disclosed in his expert report, but a vague preclusion order is not warranted at this point.  GTE's MIL No. 6 is DENIED.

**G.      GTE's MIL No. 7**

GTE requests the court preclude Western Digital from relying on Dr. Messner's untimely supplemented invalidity expert report that relies on references that were known – or should have been known – to Western Digital for at least a year.[37]  Western Digital cannot meet its burden to provide substantial justification for its failure to timely disclose the opinions in Dr. Messner's supplemented expert report.

---

[35] See Docket No. 350 (GTE's MIL No. 6).

[36] *Id.* at 2.

[37] *See* Docket No. 331 (MIL No. 7).

9

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Western Digital responds that because "Dr. Messner's supplemental expert report (and the references cited therein) is both substantially justified and harmless" exclusion of the supplemented invalidity report is not warranted.[38]  Western Digital's supplemental report was necessitated by GTE's own wrongdoing and "Western Digital should not be penalized for merely catching up to Guizk's shifting theories."[39]  Because GTE "never properly amended its contentions, Dr. Messner was forced to opine on infringement in the dark."[40]  "Western Digital did not and could not foresee GTE's last minute change in theories, it was unable to address these alleged limitations in Dr. Messner's Invalidity Report."[41]

Dr. Messner's supplemented invalidity expert report will not be precluded.  As outlined above in response to GTE's MIL No. 3, the court will permit Dr. Messner to rely on his supplemental report, but the court also will allow GTE to take an additional four hours of deposition from Dr. Messner.  GTE's MIL No. 7 is DENIED.

## H.   GTE's MIL No. 8

GTE requests that Western Digital be precluded from arguing that: "(1) Western Digital or Read-Rite first conceived of the idea underlying the invention of the '145 Patent, and (2) the '145 Patent is invalid over an internal Western Digital use."[42]  Because evidence of prior conception and prior use are invalidity arguments, Western Digital was obligated to include these arguments in their invalidity contentions and expert reports.[43]  GTE did not.  GTE therefore claims

---

[38] Docket No. 417 at 1 (WD's Opposition to GTE's MIL No. 7).

[39] *Id.* at 2.

[40] *Id.*

[41] *Id.*

[42] Docket No. 371-8 at 1 (GTE's MIL No. 8).

[43] *See* Docket No. 371-8 at 4 (GTE's MIL No. 8) ("Whether  someone other than the named inventors conceived of the invention has not been properly  preserved through invalidity

10

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

this evidence is irrelevant under Rule 401 and unfairly prejudicial under Rule 403 and should be excluded.

Western Digital attempts to refocus the court's attention solely on Western Digital's presentation to GTE on January 14, 2011, where it presented several reasons why the '145 patent is invalid.  Western Digital concedes it will not use the presentation to argue invalidity, but instead suggests it "will rely on the Brown prior art patent itself and Dr. Messner's analysis of it in its invalidity case-in-chief."[44]  Western Digital points out that its subjective state of mind regarding the validity of the '145 patent is relevant to perceived willfulness.

The court agrees with Western Digital that the validity of the '145 patent is relevant to willfulness, but willfulness is no longer at issue.  The relevance of the document for other purposes is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, or waste of time.  GTE's MIL No. 8 is GRANTED.

## I.     GTE's MIL No. 9

GTE requests the court preclude any references not included in the Western Digital's expert's invalidity report.[45]  This includes: (1) references listed on Western Digital's invalidity contentions, (2) Western Digital's supplemented contentions on October 21, 2013, and (3) Western Digital's 35 U.S.C. § 282 notice of November 1, 2013.  GTE objects to these references as not preserved in expert discovery or untimely disclosed in contravention of the court's scheduling orders and the Patent L.R.  GTE argues that 35 U.S.C. § 282 provides a "statutory outer limit" for the disclosure of prior art that may be relied upon by an accused infringer at trial, but urges that "Section 282 does not eliminate a defendant's obligations under the

_____

contentions and expert reports, and therefore, is not a fact of  consequence regarding whether Western Digital's Accused Testers infringe the '145 Patent or whether the patent is invalid.").

[44] Docket No. 418 at 1 (WD's Opposition to GTE's MIL No. 8).

[45] *See* Docket No. 356 (GTE's MIL No. 9).

11

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

United States District Court
For the Northern District of California

1   Federal Rules of Civil Procedure" and "to the contrary, the statute and the rules are intended to

2   coexist."[46]  "Western Digital's invalidity contentions should have established the outer boundary of

3   its prior art references, with expert discovery further narrowing the scope as the parties progressed"

4   towards trial.[47]  GTE urges the exclusion of the late-added references is an appropriate sanction in

5   this case.

6        Western Digital responds that "every reference listed in Western Digital's Section 282

7   Statement (except for three references) were disclosed in Western Digital's Invalidity Contentions

8   on April 13, 2012 and Guzik has known about these references for 19 months.  Any claim by

9   Guzik of unfair surprise is therefore meritless and the case law cited by Guzik is inapposite."[48]

10  One of the three undisclosed references, "United States Patent No. 6,140,815 was cited by

11  Dr. Messner in his opening expert report as 'prior art' to one of Guzik's" trade secrets and

12  therefore "was not required to be in Western Digital's Invalidity Contentions."[49]  As to the other

13  two, it was GTE's belated infringement theories that necessitated the supplemental Messner

14  invalidity report.  Western Digital further argues it is only following its statutory obligation

15  pursuant to 35 U.S.C. § 282 to disclose art that it may rely on to show "the state of the art" or that

16  its witnesses may introduce through fact witnesses or cross-examination.

17        GTE's MIL No. 9 is GRANTED.  Dr. Messner is limited to the reports discussed in his

18  expert report or at his deposition.

---

[46] *Id.* at 7 (quoting *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280
(Fed. Cir. 2012)); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998)
("The purpose of § 282, like that of the Federal Rules, is to prevent unfair and prejudicial surprise,
not to facilitate last-minute production of evidence.").

[47] Docket No. 356 at 8 (GTE's MIL No. 9).

[48] Docket No. 419 at 1 (WD's Opposition to MIL No. 9).

[49] *Id.* at 2.

12

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

J.      **GTE's MIL No. 10**

GTE requests the court preclude reference to Mr. Guizk's prior, unrelated litigation.[50] Based on testimony elicited during Mr. Guzik's deposition GTE believes that Western Digital will attempt to introduce evidence of Mr. Guzik's prior unrelated litigation to paint him as aggressive and litigious in contravention of Fed. R. Civ. P. 401 and 403.

Western Digital responds "evidence of Guzik's prior lawsuits is directly relevant to rebut allegations that Western Digital employees hid their tester development because they knew it was somehow wrong.  In fact, Western Digital's employees were often cautious about what they disclosed to Guzik because they knew about the company's, and its founder's, litigation history. Thus, Western Digital witnesses will likely need to at least mention prior lawsuits by Guzik to truthfully respond to Guzik's accusations."[51]

The court finds that the probative value of evidence pertaining to Mr. Guizk's prior litigation is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  GTE's MIL No. 10 is GRANTED.  Western Digital may elicit testimony as to its employees' subjective fear of litigation, but may not present evidence of Mr. Guizk's prior litigation.

K.      **GTE's Daubert to Exclude Expert Testimony of James Pampinella**

In light of the parties' representations, neither expert should improperly characterize *Panduit* Factor No. 1 either in their affirmative testimony or in their criticism of the opposing damage's expert.  GTE's motion is GRANTED-IN-PART.

---

[50] *See* Docket No. 352 (GTE's MIL. No. 10).

[51] Docket No. 420 (WD's Opposition to GTE's MIL No. 10).

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

United States District Court
For the Northern District of California

**L.      GTE's Daubert to Exclude Certain Testimony of Dr. Messner**

GTE requests the court preclude certain testimony of Dr. Messner, because it lacks "legitimate" support.[52]  GTE argues that some of Dr. Messner's opinions are "based on insufficient or improper data," rendering them "irrelevant and unreliable" under *Daubert* and Rule 702.[53]  GTE specifically asks the court to order Dr. Messner not to testify "in any way about the source code for the Accused Testers and opinions about source code-driven functions that have no basis" in sufficient facts or reliable methods.[54]  Western Digital specifically seeks to keep out opinions like those "in ¶¶ 89-90 of his Rebuttal Report, [in which] Dr. Messner opines that (1) Dr. Phinney failed to provide any evidence that the Accused Testers position magnetic heads at an offset from a track centerline and, furthermore, that (2) the Accused Testers do not position magnetic heads at an offset during testing."[55]  Such opinions do not rely on a review of the source code – that is essential – and substitute in reliance on bare, uninformed testimony from Western Digital's lay witnesses.

Western Digital responds that GTE's Daubert motion relies on the "false premise" that "testers are wholly based on" source code-driven functionality.[56]  In turn, GTE's premise relies on "three other incorrect assumptions: (1) that Dr. Phinney's analysis is the complete and only way to analyze infringement; (2) that Dr. Messner's opinions regarding non-infringement of the offset limitation can only be reached by reference to source code; and (3) that the closed-loop positioner limitation is software driven such that any analysis other than that of the source code must be wholly ignored."[57]  Western Digital believes Dr. Messner's reliance on "witnesses who designed

---

[52] Docket No. 311 at 1 (Messner Daubert).

[53] *Id.*

[54] *Id.* at 2.

[55] *Id.* at 5 (citing Docket No. 311-7, Ex. F at ¶¶ 89-90).

[56] Docket No. 366 at 1 (Opposition to Messner Daubert).

[57] *Id.*

14

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

and developed the accused products" was appropriate in light of their deep and relevant experience with the testers.[58]  GTE's denigration of these Western Digital employees as lay witnesses was therefore unwarranted.  It was also unnecessary to pore over thousands of lines of source code as GTE's expert did, because his expert opinion does not rely on that source code.

The court finds that the vague preclusion order sought by GTE in this case is not warranted. A vigorous cross-examination could point out many of the flaws GTE believes present in Dr. Messner's report.  GTE's motion is DENIED.

**M.      Western Digital's MIL No. 1**

Western Digital requests the court preclude "presenting evidence or argument regarding: (1) infringement theories inconsistent with its Infringement Contentions; and (2) infringement theories undisclosed in Dr. Phinney's report."[59]  The court has discretion to craft "appropriate sanctions for failing to timely assert an infringement theory" and Western Digital urges the court to exercise that discretion, because Dr. Phinney's infringement expert report "is replete with opinions that were not disclosed in Guzik's Infringement Contentions and should accordingly be stricken."[60] Western Digital incorporates by reference the arguments from its related summary judgment motion and specifically moves to exclude GTE's structural equivalents arguments with respect to claim 1(d) (the stepper motor) and 1(e) (the optical encoder).  GTE's "boilerplate" reservation of rights was insufficient.[61]  Western Digital cites a recent opinion from this court that noted the

---

[58] *Id.* at 4.

[59] Docket No. 332 at 1 (WD's MIL No. 1).

[60] *Id.*

[61] *Id.* at 3.

15

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

"doctrine of equivalents exists to prevent a fraud on the patent and not to give a patentee a second shot at proving infringement if it is not literally present."[62]

GTE responds that because Dr. Phinney's expert report demonstrates structural equivalents in the accused products, Western Digital cannot argue that GTE has not complied with Fed. R. Civ. P. 26(a)(2). Western Digital's motion goes astray – GTE continues – because it does not recognize the distinction that "literal infringement of limitations governed by 35 U.S.C. § 112(6) statutorily includes 'structural equivalents.'"[63]

Although the court notes that GTE's infringement contentions might well fall short of the Patent Local Rules' expectations, the court is not convinced that the broad preclusion order requested by Western Digital is warranted. Western Digital's MIL No. 1 is DENIED.

## N.      Western Digital's MIL No. 2

Western Digital requests the court preclude GTE "from introducing evidence and argument regarding infringement under 35 U.S.C. § 271(g)" because GTE "failed to preserve the theory because its Infringement Contentions and responses to Western Digital's contention interrogatories are wholly conclusory and lack the requisite evidentiary support. Moreover, Guzik's § 271(g) theory depends entirely on its flawed contention that testing disk drive heads is somehow the same as making those heads under 271(g) despite the fact that the heads were already manufactured— and indeed had to have been pre-made—before the testing can be conducted."[64] GTE "did not include any evidence in its infringement expert's report that would support that hard drives or hard

---

[62] *See Creagri, Inc. v. Pinnaclife Inc.*, Case No. 5:11-cv-06635-LHK-PSG, 2012 U.S. Dist. LEXIS 158540, at *17 (N.D. Cal. Nov. 2, 2012).

[63] Docket No. 394 at 1 (GTE's Opposition to WD's MIL No. 1).

[64] Docket No. 333 at 1 (WD's MIL No. 2).

16

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

drive heads are 'made by' Western Digital's testing equipment, which only tests the heads to produce information about those heads."[65]

GTE responds that its complaint asserted infringement under Section 271(g) and "never abandoned" this theory of infringement.[66]  Despite this, Western Digital now (inappropriately) brings a motion for summary judgment that it has "disguised" as a motion in limine to "effectively bar" GTE from raising this cause of action at trial.[67]  As to the making versus testing distinction, GTE cites a district court decision from Utah where that court "rejected the argument that testing is categorically separate from the manufacturing process."[68]

The court agrees with GTE that this motion is little more than a thinly-veiled dispositive one.  Pursuant to the court's scheduling order the last day for dispositive motions in this case to be heard was August 27, 2013 and motions were required to be noticed in compliance with Civil L.R. 7-2(a).[69]  On that basis Western Digital's MIL No. 2 is DENIED.

**O.     Western Digital's MIL No. 3**

Western Digital MIL No. 3 requests "the subjective requirement of willful infringement reach the jury only if the Court first determines the objective requirement is satisfied. Western Digital requests a hearing prior to any willfulness evidence or argument being presented to the jury to establish that there is no willfulness, as a matter of law.  To the extent the Court is

---

[65] *Id.* at 3.

[66] Docket No. 378 at 1 (GTE's Opposition to WD's MIL No. 2).

[67] *Id.*

[68] *Id.* at 5 (citing *Phillip M. Adams & Associates, LLC v. Dell Inc.*, Case No. 1:05-cv-64-TS, 2009 WL 562587, at *2 (D. Utah Mar. 3, 2009) ("It appears there are both issues of fact and issues of claim interpretation to be resolved before Winbond's argument of no liability as a matter of law can be addressed. For example, if the testing is performed as part of the manufacture of Winbond's non-defective FDCs, under Plaintiff's interpretation of the claim terms, the resulting product might be made by the patented process even if the process is not ultimately part of the physical product, namely a computer with data corruption-free FDC chips.").

[69] *See* Docket No. 141; Docket No. 57 at 3 ("Any such motions must be noticed in compliance with Civil Local Rule 7-2(a).").

17

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

unable to determine this issue after the hearing, Western Digital believes that the Court should construct interrogatories for the jury that get at any remaining issues."[70] Western Digital requests these structured proceedings to determine willfulness because this court cannot "unring the bell on willfulness evidence or arguments" if the court decides that GTE's willfulness claims are meritless.[71] Western Digital points the court to a Delaware district court case, *Tarkus Imaging, Inc v. Adobe Systems, Inc.*, where that court considered on summary judgment whether the court should first resolve the objective prong of willfulness in the accused infringer's favor and preclude sending the subjective willfulness prong to the jury.[72] That court determined that given the accused infringer's "credible, reasonable non-infringement theories" it need not submit the subjective prong of the willfulness inquiry to the jury.

GTE responds that, yet again, Western Digital has filed a summary judgment motion disguised as a motion in limine.[73] If Western Digital wanted to move for summary judgment on willfulness it should have done so at the appropriate time in this case. It did not and cannot do so now. Moreover, any potential efficiency benefits by addressing willfulness pretrial are illusory, because the jury will hear related evidence in other contexts during trial.

The court notes that its order denying summary judgment that the '145 patent is not anticipated and nonobvious held that there are triable 35 U.S.C. §§ 102 and 103 issues. Because a reasonable jury could find that the '145 patent could be found invalid on multiple grounds, a finding of willfulness is precluded. It would be unfairly prejudicial to instruct the jury on willfulness where that issue is not properly before the jury.

---

[70] Docket No. 334 at 1 (WD's MIL No. 3).

[71] *Id.*

[72] 867 F. Supp. 2d 534 (D. Del. 2012).

[73] *See* Docket No. 395 (GTE's Opposition to WD's MIL No. 3).

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Western Digital's MIL No. 3 is GRANTED.  Willfulness will not be submitted to the jury. Because the court believes Western Digital's invalidity defenses to be objectively reasonable, the court does not reach Western Digital's request for a hearing or interrogatories.

## P.   Western Digital's MIL No. 4

Western Digital requests the court exclude GTE "from presenting evidence or argument" that "Guzik's V2002 tester practices the '145 patent beyond claims 1, 3-4, and 6-7 of the '145 patent and to further preclude Guzik from presenting evidence or argument that any other Guzik tester practices the '145 patent."[74]  GTE failed to substantively respond to Interrogatory No. 12 – which sought a claim chart identifying where each limitation of each asserted claim is found within each of GTE's covered products – and also has not presented any evidence in either its expert reports or its interrogatory responses demonstrating how any product other than the V2002 practices the '145 patent.  GTE's shortcomings warrant precluding GTE from presenting undisclosed evidence or argument at this point in the case.

GTE responds that as threshold matters "nothing in the relevant law requires that a patentee show that its products practice any asserted claims of a given patent—much less all of them."[75]  Moreover, "Western Digital refers to Fed. R. Civ. P. 26, 33, 37(c) almost as an afterthought in the last line of its Motion.  Nowhere within the body of Western Digital's Motion does it offer any actual analysis of how any of these rules should preclude the evidence."[76]  As to the V2002, Dr. Phinney's expert report stated that the V2002 "practices claims beyond the exemplary claims identified here."[77]  Similarly Dr. Phinney's expert opinion was not limited to the V2002: "It is my opinion that GTE's testers, including testers based on V2002, DTR3000, RWA-2000 Series, and

---

[74] Docket No. 335 at (WD's MIL No. 4).

[75] Docket No. 380 at 1 (GTE's Opposition to WD's MIL No. 4).

[76] *Id.*

[77] Docket No. 380-2, Ex. 1 at 1.

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

RWA-3000 Series, practice claims 1, 3-7, 10-13, and 15-19 of the '145 patent."[78]   Moreover, GTE objected to Western Digital's Interrogatory No. 12, in part, because "Western Digital prematurely sought expert opinion outside of the expert disclosure schedule set by this Court."[79]   And, Western Digital has not moved to compel, "presumably because it received the information it sought in Dr. Phinney's Infringement Report, consistent with the schedule in the case."[80]

GTE's failure to submit a claim chart in response to Interrogatory No. 12 unfairly prejudices Western Digital's ability to substantively prepare for trial and warrants exclusion of late-added infringement theories at trial.   The preclusion order Western Digital is seeking is warranted in light of the parties' arguments.   Western Digital's MIL No. 4 is GRANTED.

## Q.      Western Digital's MIL No. 5

Western Digital requests the court exclude "new allegations of breach of contract at trial that were not previously disclosed in its interrogatory responses."[81]   Specifically, even though GTE amended its interrogatory responses three times as to the basis of its breach of its contract claim it abandoned its disclosed theories and staked out new positions in its opposition to Western Digital's motion for summary judgment on the breach of contract claim.

GTE responds that its interrogatory responses identified "five exemplary design features" that Western Digital copied and twenty-one documents providing "other examples of Western Digital's breaches of its contracts with GTE."  This disclosure was sufficient pursuant to

---

[78] *Id.* at ¶ 105.

[79] Docket No. 380 at 2 (GTE's Opposition to WD's MIL No. 4) (citing Docket No. 380 at 1 (GTE's Opposition to WD's MIL No. 4)).

[80] *Id.*

[81] Docket No. 336 at 1 (WD's MIL No. 5).

20

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Rule 26.[82]  Moreover, "Western Digital has cited no case law supporting its argument that GTE was required to detail with exacting specificity its 'theories of breach.'"[83]

The agreement between the parties appears to permit the parties to rely on example documents to support other documents, not other breach of contract theories.  For example, GTE did not tell Western Digital explicitly that servo copying was one theory of breach of contract.  At the hearing GTE conceded that it did not write out that Western Digital had breached the contract by copying the servo in its interrogatory responses.  Instead, GTE identified the sections of the agreement it believed had been breached, as well as relevant witnesses and documents.

Western Digital's has the better of this argument.  The court did not impose the agreement on the parties, but it will enforce it.  Western Digital's MIL No. 5 is GRANTED.

**R.     Western Digital's MIL No. 6**

Western Digital represented at the hearing that it was withdrawing MIL No. 6[84] in light of the court's breach of contract summary judgment order.[85]  Western Digital's MIL No. 6 is therefore DENIED-AS-MOOT.

**S.     Western Digital's MIL No. 7**

Western Digital requests the court preclude GTE's infringement expert, Dr. Joshua Phinney, from presenting testimony on Western Digital's alleged copying of GTE's tester technology and GTE's breach of contract claims.

GTE conceded at the hearing that Dr. Phinney does not take any position in his report about the impact of the similarity of the testers on GTE's breach of contract claim.  Therefore, Dr.

---

[82] GTE also points out that it was Western Digital who first "proposed that the parties only identify documents 'sufficient to show' their theories, not every relevant document." Docket No. 399 at 3 (GTE's Opposition to WD's MIL No. 5) (citing Docket No. 399-2, Ex 1; Docket No. 399-3, Ex. 2.).

[83] *Id.* at 2.

[84] *See* Docket No. 338.

[85] *See* Docket No. 442.

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Phinney may not testify at trial that the copying is evidence of breach.  Dr. Phinney may speak about copying, but may not offer an opinion as to whether there was a breach of contract – he will be limited to the opinion disclosed in his expert report.

Western Digital's MIL No. 7 is GRANTED.

**T.     Western Digital's MIL No. 8**

Western Digital requests the court preclude "any argument or evidence at trial of secondary indicia of nonobviousness, including but not limited to: (1) commercial success, (2) long-felt but unmet need and failure by others, (3) praise by others, and (4) copying."[86]  This is because without "the legally required nexus, this evidence is irrelevant and will only confuse the jury and unfairly prejudice Western Digital."[87]

GTE responds that a blanket preclusion order is not warranted, because the cumulative weight of the evidence could establish a nexus at trial.  GTE urges the court to address evidence of secondary considerations where a nexus may not have been established on a case-by-case basis.

Although the court has doubts about whether the evidence has the legally required nexus to nonobviousness, the court is unwilling to issue a blanket order at this time.  Western Digital's MI No. 8 is DENIED.  The court expects to see the legally required nexus established at trial and will entertain relevant objections where appropriate.

**U.     Western Digital's MIL No. 9**

Western Digital requests the court exclude unsupported allegations of copying pursuant to Rule 403.[88]  For example, a reference to servo code was identified in a cited document, but servo code was not disclosed as a copied feature.

---

[86] Docket No. 340 at 1 (WD's MIL No. 8).

[87] *Id.*

[88] *See* Docket No. 341 (WD's MIL No. 9).

22

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

The court notes that the motion is a close call, but will address whether GTE's expert strays beyond the bounds of his expert report as necessary at trial.  Western Digital's MIL No. 9 is DENIED.

## V.   Western Digital's MIL No. 10

Western Digital moves to prevent GTE's damages expert, Michael Wagner, from presenting opinions not included in his report, including a reasonable royalty opinion.[89] Western Digital's MIL No. 10 is GRANTED as unopposed.

## W.   Western Digital's MIL No. 11

Western Digital moves to preclude GTE from introducing evidence of Western Digital's size, wealth, or overall revenue – including Western Digital's Form 10-Ks.[90]  GTE responds that there are many uses for Form 10-Ks including the disclosure of Western Digital's apparent need for testers.  Because the Form 10-K may be used for many flagrantly prejudicial reasons, Western Digital's MIL No. 11 is DENIED.  GTE nevertheless is ordered that it is not to submit facts and figures to inflame the jury or that are otherwise untethered or relevant to a particular point that a witness is making.  The court will address particular testimony in context as it arises during trial.  The court will entertain requests for redactions of Western Digital's Form 10-Ks and orders the parties to meet-and-confer on this issue if the document is submitted as an exhibit during trial.

## X.   Western Digital's MIL No. 12

Western Digital moves to preclude the introduction of "evidence regarding or making reference to any prior lawsuit against Western Digital or against Read-Rite" Corporation

---

[89] *See* Docket No. 343 (WD's MIL No. 10).

[90] *See* Docket No. 344 (WD's MIL No. 11).

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

("Read-Rite").[91]  Because the court is wary of introducing satellite issues that will distract the jury, the court GRANTS Western Digital's MIL No. 12 on Rule 403 grounds.

## Y.    Western Digital's MIL No. 13

Western Digital requests the court preclude evidence of charitable donations made by Mr. Guzik or GTE on Rule 401 and 403 bases.[92]  Because evidence of Mr. Guizk's temperament and prior litigation where GTE and Mr. Guizk was a party may not be marshaled at trial, there will be no need for GTE to repair the company, or its namesake's – reputation.  The court agrees. Western Digital's MIL No. 13 is GRANTED.

## Z.    Western Digital's MIL No. 14

Western Digital requests the court preclude evidence of industry awards received by GTE on Rule 401 and 403 bases.[93]  Although ""praise by others" may be evidence of secondary considerations of non-obviousness, the alleged praise must be tied to the claims of the patents in suit."[94]

Although the court has doubts about whether the evidence has the legally required nexus to nonobviousness, the court is unwilling to preclude industry awards at this time.  Western Digital's MIL No. 14 is DENIED.  The court expects to see the legally required nexus established at trial and will entertain relevant objections where appropriate.

---

[91] Docket No. 345 at 1 (WD's MIL No. 12).

[92] See Docket No. 346 (WD's MIL No. 13).

[93] See Docket No. 347 (WD's MIL No. 14).

[94] Id. at 1.

24

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

1

## AA.   Western Digital's MIL No. 15

2        Western Digital seeks leave of the court to file its MIL No. 15 to preclude GTE from

3   raising an alleged breach of the implied covenant of good-faith and fair dealing at trial.[95]   The court

4   GRANTS Western Digital leave and will consider the motion.  Western Digital bewails the

5   prejudice it faces from GTE's late disclosure of this cause of action.  Western Digital "could not

6   and did not seek any discovery" on this cause of action and it did not receive "evidence regarding

7   any breach of the implied covenant cause of action in its interrogatory responses, or in its expert

8   reports."[96]

9

10       GTE responds that it "is well-established in California law that there is a covenant of good

11  faith and fair dealing implied" in every contract and "a breach of the covenant of good faith and

12  fair dealing is not required to be a separate cause of action from a breach of contract claim."[97]

13  Indeed, "California courts have held that, while a claim for breach of the covenant of good faith

14  and fair dealing is sometimes pleaded as a separate count, it is necessarily a type of breach of

15  contract, and need not be pleaded separately."

16

17       The court notes that GTE conceded that it did not explicitly call out the implied covenant

18  theory in its interrogatory responses.  Because the theory was not in GTE's interrogatory responses,

19  it will not be presented to the jury at trial. Western Digital's MIL No. 15 is GRANTED.

20

21

22

23  ---
[95] Western Digital filed the motion late, because the "first time Western Digital learned of Guzik's
24  intention to rely on this cause of action was the morning of Tuesday, November 5th, after
    reviewing Guzik's trial brief and proposed verdict form, filed and served after midnight on
25  Tuesday, November 5th."  Docket No. 371-1 at ¶ 2.

26  [96] Docket No. 371-1, Ex. 1 at 1 (WD's MIL No. 15).

27  [97] *See* Docket No. 384 at 1 (GTE's Opposition to WD's MIL No. 15) (citing *Digerati Holdings,
    LLC v. Young Money Entertainment, LLC*, 194 Cal.App.4th 873, 885 (2011) ("Although breach of the
28  implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a
    breach of contract.")).

25

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

**BB.   Western Digital's Daubert to Exclude the Expert Testimony of Michael Wagner**

Western Digital moves to exclude the expert opinion of Mr. Wagner.[98]  Although an order will issue separately laying out the court's reasoning, Western Digital's motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 22, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[98] *See* Docket No. 316-4.

26

Case No.: 5:11-cv-03786-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE