1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GUZIK TECHNICAL ENTERPRISES, INC., )  Case No.: 5:11-cv-03786-PSG
                                              )
          Plaintiff and Counterclaim Defendant, )  **ORDER RE: SEALING MOTIONS**
                                              )
          v.                                 )  **(Re: Docket Nos. 467, 468, and 469)**
                                              )
WESTERN DIGITAL CORPORATION, et al., )
                                              )
          Defendants and Counterclaim Plaintiffs, )
                                                )
and                                            )
                                             )
WESTERN DIGITAL (THAILAND)        )
COMPANY LIMITED and                )
WESTERN DIGITAL (MALAYSIA)        )
SDN.BHD,                                 )
                                Defendants. )

       Before the court are Defendants' Western Digital Corp., et al. (collectively,

"Western Digital") three renewed sealing motions.  The court presumes familiarity with the

background of this case[1] and turns immediately to the motions before it.

_____

[1] Unfamiliar readers are directed to three of the court's recent summary judgment orders.
*See* Docket Nos. 442, 443, and 445.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

# I. LEGAL STANDARDS

## A.    Sealing Motions

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[2]  Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point."[3]  Parties seeking to seal judicial records relating to dispositive motions bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure.[4]

Records attached to nondispositive motions, however, are not subject to the strong presumption of access.[5]  Because the documents attached to nondispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c).[6]  As with dispositive motions, the standard applicable to nondispositive motions requires a "particularized showing"[7] that "specific prejudice or harm will result" if the information is disclosed.[8]  "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice.[9]  A protective order sealing the documents during discovery may reflect the court's previous determination that good

---

[2] *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

[3] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[4] *Id.* at 1178-79.

[5] *See id.* at 1180.

[6] *Id.* at 1179 (internal quotations and citations omitted).

[7] *Id.*

[8] *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).

[9] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

cause exists to keep the documents sealed,[10] but a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed.[11]

In addition to making particularized showings of good cause, parties moving to seal documents must comply with the procedures established by Civil L.R. 79-5.  Pursuant to Civil L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law."  "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."[12]  "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."[13]

## II. ANALYSIS

A. **Western Digital's Motion for Summary Judgment on Breach of Contract**

1. **Exhibit 12 to the Masuda Declaration**

Exhibit 12 "is a document introduced as Exhibit 67 to the Deposition of JD Buttar, an email from Mr. Buttar to Barry Coughlin, dated October 30, 2003," produced in this case that "summarizes confidential conversations among employees from Read-Rite, Western Digital, and

---

[10] *See Kamakana,* 447 F.3d at 1179-80.

[11] *See* Civil L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

[12] Civil L.R. 79-5(b).  In part, Civil L.R. 79-5(d)(1) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed" and an "unredacted version of the document" that indicates "by highlighting or other clear method, the portions of the document that have been omitted" from the redacted version.

[13] Civil L.R. 79-5(e)(1).

3

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

Guzik, and reveals character issues about Nahum Guzik, the founder of Guzik."[14]  Western Digital

claims that if "these conversations are publicly revealed, Nahum Guzik or Guzik could use them to

file a defamation lawsuit against Western Digital" or its employees and the disclosure of this

information "may harm Western Digital's competitive standing."[15]  The court has reviewed

Western Digital's representations alongside Exhibit 12 and finds Western Digital's concerns about

this ten-year old e-mail are speculative and insufficiently particularized.  Western Digital's request

is DENIED.

       **2.**        **Exhibit 19 to the Masuda Declaration**

        Exhibit 19 to the Masuda Declaration consists of "excerpts from the transcripts of the

March 15, 2013 and April 19, 2013 depositions of JD Buttar."[16]  The "documents describe the

internal development of the accused products and details regarding Western Digital's test suites.

The documents also refer to possible future Western Digital products that are currently in

development.  Western Digital considers the information in these documents highly sensitive and

derives a business advantage from the information not being known by its competitors and the

general public."[17]  The court has reviewed Western Digital's representations alongside the

highlighted redactions from Exhibit 19 and finds sealing the redacted transcript excerpts is

warranted.  Western Digital's request is GRANTED.

       **3.**        **Exhibit 20 to the Masuda Declaration**

        Exhibit 20 to the Masuda Declaration consists of "excerpts from the transcript of the

April 11, 2013 deposition of Maxine Gandall."[18]  The "deposition transcript contains confidential

---

[14] Docket No. 467-1 at ¶ 2a.

[15] *Id.*

[16] *Id.* at ¶ 2b.

[17] *Id.*

4

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

details on the Master Purchase Agreement between Guzik and Western Digital, including the circumstances under which Western Digital signed the agreement."[19]  The court has reviewed Western Digital's representations alongside Exhibit 20 and finds sealing the deposition excerpts is not warranted.  Western Digital's request is DENIED.

### 4.    Exhibit 15 to the Shaul Declaration

Exhibit 15 consists of an e-mail produced in this case that "includes quotations from the Master Purchase Agreement which by its own terms is confidential, and for which the Court has already allowed sealing."[20]  Although "Western Digital considers the information in this document to be highly" sensitive, the court finds that the e-mail's disclosure that a Western Digital agreement requires thirty days-notice prior to termination does not warrant sealing.  Western Digital's request is DENIED.

### 5.    Exhibit 24 to the Shaul Declaration

Exhibit 24 consists of a series of e-mails that "reveals confidential joint development plans between Western Digital and Guzik."[21]  The court has reviewed Western Digital's representations alongside the e-mail chain and finds sealing the e-mail chain is not warranted.  Western Digital's request is DENIED.

### 6.    Exhibit 2 to the Woodhouse Declaration

Exhibit 2 consists of a presentation that "includes highly confidential information relating to Western Digital's business operations, specifically internal financial analyses and product

---

[18] *Id.* at ¶ 2c.

[19] *Id.*

[20] *Id.* at ¶ 3a.

[21] *Id.* at ¶ 3b.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

strategies."[22]  The court has reviewed Western Digital's representations alongside the presentation and finds sealing Exhibit 2 is warranted.  Western Digital's request is GRANTED.

### 7.   Exhibit 3 the Woodhouse Declaration

Exhibit 3 consists of a presentation produced in this case that contains "highly confidential information relating to Western Digital's business operations, specifically internal financial analyses and product" strategies and "contains proprietary technical and financial information" of nonparties including Maxtor , SAE, and Hitachi.[23]  The court has reviewed Western Digital's representations alongside the presentation and finds sealing the presentation to be warranted. Western Digital's request is GRANTED.

### 8.   Exhibit 6 the Woodhouse Declaration

Exhibit 6 consists of "excerpts of the April 19, 2013 deposition of JD Buttar."[24]  The transcript "describes the internal development of the accused products and details" test suites and also "refers to possible future Western Digital products that are currently in development."[25]  The court has reviewed Western Digital's representations alongside the highlighted redactions from the deposition transcript and finds sealing the redacted transcript excerpts is warranted. Western Digital's request is GRANTED.

## B.   Western Digital's Opposition to Guzik's Motion to Strike

### 1.   Exhibit M to the Woodhouse Declaration

Exhibit M consists of "an email from Tahir Ali to Herbert Lin cc JD Buttar, Kriangkrai Sitthiosoth, Terry Farren, Anchalee Siwasttaporn, and Rob Eaton with subject "ROI and Cost analysis for DBT with current KPI,' dated April 13, 2011" produced in this case that contains "an

---

[22] *Id.* at ¶ 4a.

[23] *Id.* at ¶ 4b.

[24] *Id.* at ¶ 4c.

[25] *Id.*

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

internal chart that compares the test cost per head gimbal assembly against units" per hour and "also reveals design and development details about a confidential alternative tester that Western Digital developed."[26]  The court has reviewed Western Digital's representations alongside the email and finds sealing is warranted.  Western Digital's request is GRANTED.

### 2.    Exhibit N to the Woodhouse Declaration

Exhibit N "is an e-mail from Kriangkrai Sitthiosoth to Tahir Ali, Rob Eaton, Terry Farren cc Anan Wonganu , Rittirong Bamrungtham, Jarupat Yamjerm, Kitti Tangtrakoon with subject 'ROI calculation worksheet,' dated April 12, 2011," that contains "charts detailing internal cost analyses and scenario modeling and discusses budgeting" concerns and "also reveals design and development details about a confidential alternative tester that Western Digital developed."[27]  The court has reviewed Western Digital's representations alongside the email and finds sealing is warranted.  Western Digital's request is GRANTED.

### 3.    Exhibit O to the Woodhouse Declaration

Exhibit O "is an e-mail exchange between Jinghuan Chen, Terry Farren, Rob Eaton and other Western Digital employees with subject 'WDB DBT Production Pareto 3-10-2011,' dated March 2011," produced in this case that "reveals design and development details about an alternative tester that Western Digital developed as well as information regarding its performance and capabilities."[28]  The court has reviewed Western Digital's representations alongside the e-mail chain and finds sealing is warranted.  Western Digital's request is GRANTED.

### 4.    Exhibit P to the Woodhouse Declaration

Exhibit P consists of Mr. Pampinella's expert rebuttal damages report.[29]  The report "details

---

[26] Docket No. 468-1 at ¶ 2a.

[27] *Id.* at ¶ 2b.

[28] *Id.* at ¶ 2c.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

the economic considerations Western Digital undertakes" in making purchasing decisions, contains information regarding costs and Western Digital testing statistics, and contains GTE's "financial information and profit margins."[30]  After reviewing Exhibit P, the court finds that some sealing is warranted.  Pages 9-13, 18, 27-29, 42, and 44-45 may be filed under seal.  Western Digital's request is GRANTED-IN-PART.

**C.      Western Digital's Motion for Summary Judgment of Non-Infringement**

**1.      Exhibit D to the Woodhouse Declaration**

Exhibit D contains excerpts from Dr. Phinney's infringement expert report.[31]  The exhibit consists "of two infringement claim charts comparing the '145 patent claim elements to Western Digital's DCT-400 and EH-300" testers including "information regarding the hardware layout of Western Digital's servo board, including the specific components" of the board and a description of "Western Digital's method of reading and writing servo bursts, including the servo burst patterns."[32]  The court agrees that sealing Exhibit D is warranted.  Western Digital's request is GRANTED.

**2.      Dr. Phinney's Declaration**

Dr. Phinney's declaration supporting GTE's opposition to Western Digital's motion "contains information regarding Western Digital's head testing procedures and certain testing parameters that Western Digital uses during the testing" process, details on the "structural relationship between certain specifically identified" components that might enable the reverse

---

[29] *See id.*

[30] *Id.* at ¶ 2d.

[31] *See* Docket No. 469-1 at ¶ 2a.

[32] *Id.* at ¶ 2a.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

engineering of Western Digital's testers.[33]  The court has reviewed Western Digital's

representations alongside Dr. Phinney's declaration and believes some sealing is warranted.

Western Digital's request is GRANTED-IN-PART.  Western Digital seeks leave to file

Dr. Phinney's declaration with redactions to paragraphs 2-37 under seal.  Paragraphs 2-6 may not

be filed under seal.  Paragraphs 7-37 may be filed under seal.

### 3.    Exhibit 8 to the Kolassa Declaration

Exhibit 8 consists of excerpts from the Infringement Report of Dr. Joshua Phinney

described above.[34]  Exhibit 8 may be filed under seal.  Western Digital's request is GRANTED.

### 4.    Exhibit 12 to the Kolassa Declaration

Exhibit 12 consists of "GTE's infringement contentions served on Western Digital" in this

case and includes "include photographs of dissembled Western Digital products which

Western Digital does not sell or display" publicly that "could be utilized to redesign

Western Digital's testers."[35]  Exhibit 12 may be filed under seal.  Western Digital's request is

GRANTED.

### 5.    Exhibit 14 to the Kolassa Declaration

Exhibit 14 is a document that "provides direction on how various parts of the EH-300

tester" are interconnected that was produced in this case.[36]  Exhibit 14 may be filed under seal.

Western Digital's request is GRANTED.

### 6.    Exhibit 16 to the Kolassa Declaration

"Exhibit 16 contains six pages of detailed schematics and is entitled 'SPS7.'  The document

---

[33] *Id.* at ¶ 3a.

[34] *See id.* at ¶ 3b.

[35] *Id.* at ¶ 3c.

[36] *Id.* at ¶ 3d.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

describes the hardware layout of the Western Digital servo board, including but not limited to the actual hardware components and interconnections."[37]  Exhibit 16 may be filed under seal. Western Digital's request is GRANTED.

### 7.   Exhibit 17, 26-28, and 31-32 to the Kolassa Declaration

Exhibits 17, 26-28, and 31-32 to the Kolassa Declaration "are schematics produced in this case" that "describe the hardware layout of the Western Digital servo board and related auxiliary boards, including but not limited to the actual hardware components and interconnections."[38] These exhibits may be filed under seal.  Western Digital's request to file these exhibits under seal is GRANTED.

### 8.   Exhibit 18 and 39-40 to the Kolassa Declaration

Exhibits 18-20 and 39-40 to the Kolassa Declaration "are copies of source code produced in this case" that are "used by Western Digital's accused testers in performing its head testing functions."[39]  These exhibits may be filed under seal.  Western Digital's request to file these exhibits under seal is GRANTED.

### 9.   Exhibit 21 to the Kolassa Declaration

Exhibit 21 consists of a presentation produced in this case that "details the preparation plan for the DCT400, which Western Digital generally keeps confidential from its competitors."[40] Exhibit 21 may be filed under seal.  Western Digital's request is GRANTED.

### 10.   Exhibit 24 to the Kolassa Declaration

Exhibit 24 consists of a document produced in this case that "details internal testing specifications that are integral to Western Digital's technology and business" operations and

---

[37] *Id.* at ¶ 3e.

[38] *Id.* at ¶ 3f.

[39] *Id.* at ¶ 3g.

[40] *Id.* at ¶ 3h.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

discloses "insight into Western Digital's intellectual property and engineering capabilities and quality assurance process."  Exhibit 24 may be filed under seal.  Western Digital's request is GRANTED.

**11.    Exhibit 1 to the Rogaski Declaration**

Exhibit 1 contains excerpts from GTE's infringement contentions including "photographs of dissembled Western Digital products which Western Digital does not sell or display" publicly that "could be utilized to redesign Western Digital's testers."[41]  Exhibit 1 may be filed under seal. Western Digital's request is GRANTED.

**12.    Exhibit 2 to the Rogaski Declaration**

Exhibit 2 consists of excerpts from Dr. Phinney's infringement expert report.[42]  The excerpts from the report "contains information regarding the hardware layout of Western Digital's servo board, including the specific components" of the board and "additionally describes Western Digital's method of reading and writing servo bursts, including the servo burst patterns."[43] Exhibit 2 may be filed under seal.  Western Digital's request is GRANTED.

**13.    Exhibit B to the Woodhouse Declaration**

Exhibit B is the same as the document submitted as Exhibit D to the Woodhouse Declaration above (*see* page 8).  As above, the court finds sealing is warranted.  Exhibit B may be filed under seal.  Western Digital's request is GRANTED.

---

[41] *Id.* at ¶ 4a.

[42] *See id.* at ¶ 4b.

[43] *Id.*

11

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

**IT IS SO ORDERED.**

Dated: December 2, 2013

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS