1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., )<br><br>  Plaintiff and Counterclaim Defendant, )<br><br>  v. )<br><br>WESTERN DIGITAL CORPORATION, et al., )<br><br>  Defendants and Counterclaim Plaintiffs, )<br><br>and )<br><br>WESTERN DIGITAL (THAILAND)<br>COMPANY LIMITED and )<br>WESTERN DIGITAL (MALAYSIA) )<br>SDN.BHD, )<br><br>        Defendants. ) | Case No.: 5:11-cv-03786-PSG<br><br>**ORDER RE: SEALING MOTIONS**<br><br>**(Re: Docket Nos. 482, 483, 484, 486, 487, 492, 500, and 514)** |

   Before the court are Defendants' Western Digital Corp., et al. (collectively,

"Western Digital") renewed sealing motions.  The court presumes familiarity with the background

of this case[1] and turns immediately to the motions before it.

---

[1] Unfamiliar readers are directed to three of the court's recent summary judgment orders.
*See* Docket Nos. 442, 443, and 445.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

# I. LEGAL STANDARDS

## A.   Sealing Motions

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[2]  Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point."[3]  Parties seeking to seal judicial records relating to dispositive motions bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure.[4]

Records attached to nondispositive motions, however, are not subject to the strong presumption of access.[5]  Because the documents attached to nondispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c).[6]  As with dispositive motions, the standard applicable to nondispositive motions requires a "particularized showing"[7] that "specific prejudice or harm will result" if the information is disclosed.[8]  "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice.[9]  A protective order sealing the documents during discovery may reflect the court's previous determination that good

---

[2] *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

[3] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[4] *Id.* at 1178-79.

[5] *See id.* at 1180.

[6] *Id.* at 1179 (internal quotations and citations omitted).

[7] *Id.*

[8] *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).

[9] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

cause exists to keep the documents sealed,[10] but a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed.[11]

In addition to making particularized showings of good cause, parties moving to seal documents must comply with the procedures established by Civil L.R. 79-5.  Pursuant to Civil L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law."  "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."[12]  "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."[13]

## II. ANALYSIS

**A.     GTE's Daubert to Exclude James Pampinella**

**1.     Exhibit 1 to the Tadlock Declaration**

GTE requests leave to file Figure 4: Test Cost Comparison on page 27 of Exhibit 1 under seal, because the "contains confidential information of both GTE and Western Digital related to the overall cost of certain of their head/disk testers (GTE's V2002, and Western Digital's DCT-400

---

[10] *See Kamakana,* 447 F.3d at 1179-80.

[11] *See* Civil L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

[12] Civil L.R. 79-5(b).  In part, Civil L.R. 79-5(d)(1) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed" and an "unredacted version of the document" that indicates "by highlighting or other clear method, the portions of the document that have been omitted" from the redacted version.

[13] Civil L.R. 79-5(e)(1).

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

and DBT testers), as well as the relative cost of these testers."[14]  Figure 4 may be sealed.

Western Digital also seeks sealing of paragraph 69 that "includes a graph that depicts Western Digital's internal procurement cost of the testers as compared to the cost of Guzik's products and paragraph 82" that "describes internal Western Digital business decisions and identifies certain alternatives to the accused products considered by Western Digital and Western Digital's evaluation thereof."[15]  Paragraphs 69 and 82 may be sealed.

**B.     Western Digital's Daubert to Exclude Michael Wagner**

**1.     Exhibit 1 to the Schon Declaration**

GTE requests leave to file Exhibit 1 to the Schon Declaration under seal, because the "document includes the pricing for GTE's V2002 core equipment and cartridges, in addition to GTE's operating margins for its core equipment and accessories. This information is present throughout the document. GTE only provides pricing information to customers with whom it has entered into confidentiality agreements, such as Master Purchase Agreements or non-disclosure agreements. GTE also does not disclose its operating margins to non-GTE parties because this would give an unfair advantage to its competitors by allowing competitors to undercut GTE's pricing and exploit GTE's profit margins to GTE's detriment."[16]  Exhibit 1 may be filed under seal.

**C.     GTE's MIL Nos. 1-10**

**1.     Exhibit 12**

GTE requests leave to file a redacted version of Exhibit 12, because "the excerpts contain (A) information regarding system architecture, including information regarding what aspects of the design are implemented in software and which are implemented in hardware and factors impacting that design decision; (B) information regarding how certain measurements are taken, and (C)

---

[14] Docket No. 482-1 at ¶ 4; *see also* Docket No. 482.

[15] Docket No. 492-1 at ¶ 6a.

[16] Docket No. 483-1 at ¶ 3.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

information regarding the design of certain components of the testers that were the focus of GTE's now-dismissed trade secret misappropriation case."[17]  The redacted version of Exhibit 12 may be filed on the docket.

### 2.      Exhibit 26

GTE requests leave to file a redacted version of Exhibit 26, the deposition transcript of Dr. Talke, because "the design of certain components of GTE's head/disk tester products, which it treats as highly confidential and regards as valuable trade secret information. More specifically, the excerpts contain information regarding the design of certain components of the testers that were the focus of GTE's now-dismissed trade secret misappropriation case."[18]  The redacted version of Exhibit 26 may be filed on the docket.

### 3.      Exhibit 30

GTE requests leave to file a redacted version of Exhibit 30, Mr. Jestice's expert report, because "document identifies file names for GTE's highly confidential source code for its head/disk tester products, which relate to their functionality. These file names also reflect certain names of GTE's customers' head programs."[19]  The redacted version of Exhibit 30 may be filed on the docket.

### D.      Western Digital's Opposition to GTE's Daubert to Exclude James Pampinella

### 1.      Western Digital's Opposition

GTE requests leave to file a redacted version of its opposition, because the motion "identifies specific price information for GTE's V2002 testers. GTE does not disclose prices for its V2002 testers without entering into Master Purchase Agreements with confidentiality provisions and/or Non-Disclosure Agreements. Public disclosure of this information this would create an

---

[17] Docket No. 484-1 at ¶ 4.

[18] Docket No. 484-1 at ¶ 6.

[19] Docket No. 484-1 at ¶ 8.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

unfair advantage to GTE's competitors by allowing competitors to exploit these numbers by undercutting GTE's prices."[20]  The redacted opposition may be filed on the docket.

**2.     Exhibit A to the Schon Declaration**

GTE requests leave to file Exhibit A, excerpts from Mr. Pampinella's report, under seal, because the "document includes specific pricing for GTE's V2002 core equipment, GTE's sales numbers from 2003 to 2012 period, and specific configuration options for the V2002 testers. GTE only provides pricing information and configuration options to customers with whom it has entered into Master Purchase Agreements with confidentiality provisions and/or Non-Disclosure Agreements. Public disclosure of this information would unduly harm GTE as customers may use this information in an attempt to drive GTE's prices down."[21]  The redacted version of Exhibit A may be filed on the docket, with the exception of paragraph 97 which may not be redacted.

**3.     Exhibit B to the Schon Declaration**

GTE requests leave to file a redacted version of Exhibit B, excerpts from Mr. Wagner's report, because the "document identifies cumulative sales unit numbers by GTE for the V2002 tester and DTR3000 testers. This document also includes excerpts from the deposition testimony of GTE's Director of Planning and Operations, Konstantin Perevoztchikov, who identified the specific components involved in assembling a V2002 tester."[22]  GTE further "does not disclose the identities of the specific components of the V2002 to parties with whom it has not entered into Master Purchase Agreements with confidentiality provisions and/or Non-Disclosure Agreements. GTE also does not disclose its sales numbers, including unit sales, to non-GTE individuals because

---

[20] Docket No. 486-1 at ¶ 3a.

[21] Docket No. 486-1 at ¶ 3b.

[22] Docket No. 486-1 at ¶ 3c.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

this could adversely affect GTE's relationships with its customers and suppliers."[23]   The redacted version of Exhibit B may be filed on the docket.

### 4.    Exhibit C to the Schon Declaration

GTE requests leave to file a redacted version of Exhibit C, excerpts from Mr. Wagner's deposition transcript, because the "document includes specific price information for GTE's V2002 testers. GTE does not disclose prices for its V2002 testers without entering into Master Purchase Agreements with confidentiality provisions and/or Non-Disclosure Agreements. Public disclosure of this information would unduly harm GTE as customers may use this information in an attempt to drive GTE's prices down."[24]   The redacted version of Exhibit C may be filed on the docket.

## E.    Western Digital's Motions for Summary Judgment of Non-Infringement

### 1.    Exhibit F to the Woodhouse Declaration

GTE requests leave to file Exhibit F, excerpts from a document entitled "MSCAN Digital Media Defect Scanning Package User's Guide for WITE32 version 4.00," under seal, because the "document contains confidential technical information relating to the operation of GTE's products which GTE only provides to customers under the condition that such customers agree to maintain the confidentiality of such information, such as through "Master Purchase Agreements" or non-disclosure agreements. This information, which includes instructions and block diagrams relating to certain tester sub-systems, is not available to the public. The disclosure of such information would enable GTE's competitors, or other interested individuals, to improperly use or replicate GTE's confidential information embodied in Exhibit F."[25]   Exhibit F may be filed under seal.

### 2.    Exhibit 34 to the Kolassa Declaration

GTE requests leave to file Exhibit 34, excerpts from a document that describes

---

[23] *Id.*

[24] Docket No. 486-1 at ¶ 3d.

[25] Docket No. 487-1 at ¶ 4.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

Texas Instruments' SR1984AAA8/SR1984AAA4/SR1984ABA2 device, under seal, because the exhibit "describes read amplifier data sheets for integrated circuits that were designed specifically for Western Digital.  This data sheet identifies, among other things, specific pin layouts and configuration modes for the custom integrated circuit. Information regarding these custom integrated circuits is not available to the public and its disclosure would enable individuals to gain insight into Texas Instruments' intellectual property and engineering capabilities, gain insight into the chips used by GTE and Western Digital, and also to replicate and/or redesign these custom devices using the information disclosed. Because the information was provided to GTE under a Non-Disclosure Agreement, its public disclosure would expose GTE to potential legal and financial consequences, and harm GTE's competitive standing by adversely affecting GTE's business relationship with Texas Instruments or other potential vendors. Further, GTE derives a business advantage from the information not being known by its competitors and the general public."[26]  Exhibit 34 may be filed under seal.

### 3.     Exhibit 35 to the Kolassa Declaration

GTE requests leave to file Exhibit 35, excerpts from a document that describes the functionality of Texas Instruments' SR3480AAA4YZ device, under seal, because the exhibit "describes read amplifier data sheets for integrated circuits that were designed specifically for Western Digital. This data sheet identifies, among other things, specific pin layouts and configuration modes for the custom integrated circuit.  Information regarding these custom integrated circuits is not available to the public and its disclosure would enable individuals to gain insight into Texas Instruments' intellectual property and engineering capabilities, gain insight into the chips used by GTE and Western Digital, and also to replicate and/or redesign these custom devices using the information disclosed. Because the information was provided to GTE under a Non-Disclosure Agreement, its public disclosure would expose GTE to potential legal and

---

[26] Docket No. 487-1 at ¶ 6.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

**United States District Court**
For the Northern District of California

financial consequences, and harm GTE's competitive standing by adversely affecting GTE's business relationship with Texas Instruments or other potential vendors. Further, GTE derives a business advantage from the information not being known by its competitors and the general public."[27]  Exhibit 35 may be filed under seal.

### 4.   Exhibit 36 to the Kolassa Declaration

GTE requests leave to file Exhibit 36, excerpts from a document that describes the functionality of Texas Instruments' SR5580BAA2_CBA4_BAA6_BAA8_AAAA device, under seal, because the exhibit "describes read amplifier data sheets for integrated circuits that were designed specifically for Western Digital.  This data sheet identifies, among other things, specific pin layouts and configuration modes for the custom integrated circuit. Information regarding these custom integrated circuits is not available to the public and its disclosure would enable individuals to gain insight into Texas Instruments' intellectual property and engineering capabilities, gain insight into the chips used by GTE and Western Digital, and also to replicate and/or redesign these custom devices using the information disclosed. Because the information was provided to GTE under a Non-Disclosure Agreement, its public disclosure would expose GTE to potential legal and financial consequences, and harm GTE's competitive standing by adversely affecting GTE's business relationship with Texas Instruments or other potential vendors. Further, GTE derives a business advantage from the information not being known by its competitors and the general public."[28]  Exhibit 36 may be filed under seal.

### 5.   Exhibit 38 to the Kolassa Declaration

GTE requests leave to file Exhibit 38, excerpts from a document that describes the functionality of Texas Instruments' SR3482ABA6/ABA4/AAA2YZ device, under seal, because the exhibit "describes read amplifier data sheets for integrated circuits that were designed

---

[27] Docket No. 487-1 at ¶ 7.

[28] Docket No. 487-1 at ¶ 8.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

specifically for Western Digital. This data sheet identifies, among other things, specific pin layouts and configuration modes for the custom integrated circuit. Information regarding these custom integrated circuits is not available to the public and its disclosure would enable individuals to gain insight into Texas Instruments' intellectual property and engineering capabilities, gain insight into the chips used by GTE and Western Digital, and also to replicate and/or redesign these custom devices using the information disclosed. Because the information was provided to GTE under a Non-Disclosure Agreement, its public disclosure would expose GTE to potential legal and financial consequences, and harm GTE's competitive standing by adversely affecting GTE's business relationship with Texas Instruments or other potential vendors. Further, GTE derives a business advantage from the information not being known by its competitors and the general public."[29] Exhibit 38 may be filed under seal.

**F.      Western Digital's Trial Brief, MIL, and Daubert Motions**

**1.      Trial Brief**

Western Digital requests leave to file a modified redacted version of its trial brief. The court will accept additional redactions to page 7 lines 18-19. All other redactions may not be redacted pursuant to the court's prior sealing order.[30]

**2.      Exhibit 25 to the Kolassa Declaration**

Western Digital requests leave to file a redacted version of Exhibit 25, the Messner Rebuttal Expert Report, because "Dr. Messner provided an expert report on behalf of Western Digital regarding the structure and function of the accused products and Western Digital considers the information in this document to be highly sensitive regarding the detailed design features of its

---

[29] Docket No. 487-1 at ¶ 9.

[30] *See* Docket No. 465 at 5-6.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

production head testers."[31]   The redacted version of Exhibit 25 may be filed on the docket.

### 3.   Exhibit 26 to the Kolassa Declaration

Western Digital requests leave to file a redacted version of Exhibit 26, Dr. Talke's deposition, under seal, because "Dr. Talke discusses at length the specific design features of the EH-300 and DCT-400."[32]   The redacted version of Exhibit 26 may be filed on the docket.

### 4.   Exhibit D to the Mosley Declaration

Western Digital requests leave to file a redacted version of Exhibit D, excerpts from Dr. Phinney's expert report, because "Dr. Phinney provides testimony regarding the structure and function of the accused products, including but not limited to source code, and Western Digital considers the information in this document to be highly sensitive. Exhibit G of Exhibit D to the Mosley Messner Daubert Decl. is an infringement claim chart that details confidential information about the structure and function of the accused products. For example, this document contains information regarding the hardware layout of Western Digital's servo board, including the specific components of the board. It additionally describes Western Digital's method of reading and writing servo bursts, including the servo burst patterns."[33]   The redacted version of Exhibit D may be filed on the docket.

### 5.   Exhibit F to the Mosley Declaration

Western Digital requests leave to file a redacted version of Exhibit F, excerpts from Dr. Messner's expert report, because "Dr. Messner provided an expert report regarding the structure and function of the accused products and Western Digital considers the information in this document to be highly sensitive. For example, Dr. Messner discusses details of the accused

---

[31] Docket No. 492-1 at ¶ 3a.

[32] Docket No. 492-1 at ¶ 3b.

[33] Docket No. 492-1 at ¶ 4a.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

products' head positioning capabilities, feedback means, and use of servo."[34]  The redacted version
of Exhibit F may be filed on the docket.

### 6.    Exhibit 1 to the Woodhouse Declaration

Western Digital requests leave to file a redacted version of Exhibit 1, excerpts from
Dr. Phinney's expert report.  The court has already granted sealing the exhibit.[35]  The redacted
version of Exhibit 1 may be filed on the docket.

### 7.    Exhibit 2 to the Woodhouse Declaration

Western Digital requests leave to file a redacted version of Exhibit 2, excerpts from
Dr. Messner's expert report, for the same reason as Exhibit F above.[36]  The redacted version of
Exhibit 2 may be filed on the docket.

### 8.    Exhibit 1 to the Tadlock Deposition

The court has already determined that paragraphs 69 and 81 to the Tadlock Deposition may
be redacted.[37]

### 9.    Western Digital's Opposition to GTE's Daubert to Exclude James Pampinella

The court has already determined that the redacted opposition may be filed on the docket.[38]

### 10.    Exhibit A to the Schon Declaration

The court has already determined that the redacted version of Exhibit A may be filed on the
docket, with the exception of paragraph 97 which may not be redacted.[39]

---

[34] Docket No. 492-1 at ¶ 4b.

[35] *See* Docket No. 465 at 15.

[36] *See* Section F.5.

[37] *See* Section A.1.

[38] *See* Section D.1.

[39] *See* Section D.2.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

**11.     Exhibit C to the Schon Declaration**

The court has already determined that the redacted version of Exhibit C may be filed on the docket.[40]

**12.     Exhibit H to the Woodhouse Declaration**

Western Digital requests leave to file Exhibit H, an e-mail from JD Buttar to Saovanee Kietisingnakorn and Trung Vinh with subject "NPL Unique test tool matrix," dated October 2, 2008, under seal, because the exhibit "includes information on the structure and function of the accused products, including their capabilities, improvements over other testers, and internal development plans. If this information were disclosed, the public and Western Digital's competitors would gain insight into Western Digital's engineering capabilities and product design."[41]  Exhibit H may be filed under seal.

**13.     Western Digital's Reply Supporting Its Daubert Motion to Exclude Michael Wagner**

Western Digital requests leave to file a redacted version of its reply brief, because "Western Digital business information which it considers highly sensitive. For example, the Wagner Reply contains information regarding Western Digital's current and historic head testing statistics. If this information were disclosed, the public and Western Digital's competitors would gain insight into Western Digital's internal operations and may gain a competitive advantage."[42]  The redacted version of the reply brief may be filed on the docket.

**14.     Exhibit 2 to the Schon Declaration**

Western Digital requests leave to file a redacted version of Exhibit 2, excerpts from Mr. Pampinella's expert report, because "Western Digital financial and business information which it considers to be highly sensitive. The information at Paragraph 101 and Figure 5 should be sealed

---

[40] *See* Section D.4.

[41] Docket No. 492-1 at ¶ 8a.

[42] Docket No. 492-1 at ¶ 9a.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

because it is the same chart and information that Court sealed with respect to Guzik's Reply to its Motion to Exclude Portions of Mr. Pampinella's Testimony."[43]  The redacted version of Exhibit 2 may be filed on the docket.

### 15.      Exhibit 3 to the Schon Declaration

Western Digital requests leave to file a redacted version of Exhibit 3, the deposition transcript of Mr. Wagner, because the "document contains Western Digital financial and business information which it considers to be highly sensitive. For example, Mr. Wagner provides testimony on Western Digital's purchasing history and testing capabilities and provides information regarding Western Digital's head testing statistics and failure rates."[44]  The redacted version of Exhibit 3 may be filed on the docket.

### G.      GTE's Motion for Summary Judgment that U.S. Patent No. 6,023,145 Is Not Anticipated or Obvious

### 1.      Exhibit B to the Kolassa Declaration

GTE requests leave to file a redacted version of Exhibit B, Dr. Messnner's expert report, because pages "'v' and 'vi' of the table of contents of Exhibit B refer to GTE's confidential and trade secret information. Such information specifically refers to and describes certain confidential design features of components to GTE's head/disk testers.  The confidential features described in the table of contents of Exhibit B have significant value to GTE. Accordingly, GTE only sells products incorporating these design features to customers who have executed non-disclosure agreements or "master purchase agreements" that impose an obligation of confidentiality. The public disclosure of GTE's confidential design features would enable a competitor to unfairly profit from GTE's internally developed technologies (free of the R&D expenses that GTE incurred

---

[43] Docket No. 492-1 at ¶ 9b; *see also* Docket No. 465 at 18.

[44] Docket No. 492-1 at ¶ 9c.

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

to come up with these features), which would harm GTE's competitive standing."[45]  The redacted version of Exhibit B may be filed on the docket.

### 2.      Exhibit E to the Kolassa Declaration

Western Digital requests leave to file a redacted version of Exhibit E, Dr. Messner's rebuttal expert report, because the report describes "the structure and function of the Accused Products and Western Digital considers the information in this document to be highly sensitive regarding the detailed design features of its production head testers. Furthermore, Dr. Messner provided testimony on the capabilities of the Accused Products and how to add and remove functionalities."[46]  The redacted version of Exhibit E may be filed on the docket.

### H.      Western Digital's Opposition to GTE's Motion for Summary Judgment that U.S. Patent No. 6,023,145 Is Not Anticipated or Obvious

### 1.      Exhibit G to the Woodhouse Declaration

Western Digital requests leave to file a redacted version of Exhibit G, excerpts from Dr. Phinney's expert report, because the report "provides infringement claim charts that detail confidential information about the structure and function of the Accused Products. These claim charts include for example, information regarding the hardware layout of Western Digital's servo board, including the specific components of the board as well as descriptions of source code functionality. They additionally describe Western Digital's method of reading and writing servo bursts, including the servo burst patterns. The infringement claim chart is based on confidential information that was provided as part of this litigation, which is highly sensitive and technical in nature. The Court has previously allowed sealing of one of these claim charts,[47] however, as these claim charts contain the same amount of detail and differ only with respect to the product, Western

---

[45] Docket No. 500-1 at ¶¶ 4-5.

[46] Docket No. 514-1 at ¶ 2a.

[47] *See* Docket No. 465 at 15.

15

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Digital believes sealing of both claim charts is necessary."[48]   The redacted version of Exhibit G may be filed on the docket.

**I.      Western Digital's Opposition to GTE's Motion to Strike Western Digital's Untimely Identified Witnesses**

       **1.      Exhibit P to the Woodhouse Declaration**

Western Digital requests leave to file a redacted version of Exhibit P, excerpts from Mr. Pampinella's rebuttal expert report, because although the court already granted sealing of Pages 9-13, 18, 27-29, 42 and 44-45.[49]   However, this document contains additional sensitive financial information of Western Digital and Guzik which also warrants sealing. For example, unredacted portions of this document at pages 54-57 contain dollar amounts for Western Digital's capital and operating costs for its internally developed testers which Western Digital considers highly sensitive."[50]

GTE also submitted a declaration supporting the redaction of portions of Exhibit P.   GTE argues the redacted "excerpts contain sales information from which GTE's pricing of its V2002 test systems may be derived. GTE only provides pricing information and configuration options to customers with whom it has entered into Master Purchase Agreements with confidentiality provisions and/or Non-Disclosure Agreements. More specifically, the excerpts contained in paragraphs 39-41 (and associated footnote 89), 45, 54-59, 116-117, 122, 127, 133, 143, 146-147, 149-151 and footnote 195 contain (A) sales volume information; (B) sales revenue information, and (C) profits associated with those sales. The public disclosure of this information could have financial consequences to GTE and threaten its competitive standing."[51]

The parties' proposed redacted version of Exhibit P may be filed on the docket.

---

[48] Docket No. 514-1 at ¶ 3a.

[49] *See* Docket No. 476 at 8.

[50] Docket No. 514-1 at ¶ 4a.

[51] Docket No. 515 at ¶ 3.

16

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS

**IT IS SO ORDERED.**

Dated: December 13, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:11-cv-03786-PSG
ORDER RE: SEALING MOTIONS