1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUZIK TECHNICAL ENTERPRISES, INC., ) | Case No. 5:11-cv-03786-PSG |
| Plaintiff and Counterclaim Defendant, ) | **ORDER GRANTING MOTION TO** |
| ) | **ENFORCE SETTLEMENT** |
| v. ) | **AGREEMENT** |
| ) | |
| WESTERN DIGITAL CORPORATION, ) | **(Re: Docket Nos. 531-4)** |
| WESTERN DIGITAL TECHNOLOGIES. INC., ) | |
| and WESTERN DIGITAL (FREMONT), INC., ) | |
| Defendants and Counterclaim Plaintiffs, ) | |
| and ) | |
| WESTERN DIGITAL (THAILAND) ) | |
| COMPANY LIMITED AND WESTERN ) | |
| DIGITAL (MALAYSIA) SDN. BHD., ) | |
| Defendants. ) | |

The settlement of any case rarely comes without mixed feelings.  It is a time when parties struggle to let go of their deep-seated belief that with trial will come vindication.  It is also a time when the plaintiff and defendant wonder if they are about to be snookered, either by giving too much or taking too little.  Patent cases are no different.  For both the patentee and the accused

United States District Court
For the Northern District of California

infringer, the question ultimately is the same, what will I regret more, settling this case-- or not

settling it?

Sometimes such buyer's remorse causes one party or the other to try to "unsettle" the case,

or "resettle" it on different terms. That appears to be the case here. Having made multiple

representations to the court that the case was settled, Plaintiff Guzik Technical Enterprises, Inc.

now claims that no settlement took place at all. In response, Defendants and Counterclaimants

Plaintiffs Western Digital Corporation et al. move to enforce the settlement. As explained below,

because the necessary terms were agreed upon without qualification and sufficiently definite, the

court GRANTS Western Digital's motion

## I. BACKGROUND

GTE sells high-end testers for disk drive heads and media, and for years Western Digital

has been one of its largest customers.[1] GTE filed this suit against Western Digital in 2011, alleging

patent infringement, breach of contract, and trade secret misappropriation.[2] After over two years of

litigation and just a few days before trial, the parties signed an eight-page term sheet entitled

"Agreed Terms" so as "to resolve all claims pending, or previously pending, in the lawsuit."[3] In

exchange for a dismissal of all GTE claims, Western Digital agreed to an upfront payment of ███

███████████████████████████. The term sheet also set out scope and pricing of

the purchase orders, purchase order placement, provision for termination of the agreement,

---

[1] *See* Docket No. 1 at 4; Docket No. 531-4 at 1.

[2] *See* Docket No. 1.

[3] *See* Docket No. 533, Exhibit A at 7. The term sheet was the result of negotiations launched
several months before. *See* Docket No. 533-1 at ¶¶ 2, 4-7.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

covenants not to sue, and so forth.[4] The parties anticipated that the term sheet would be incorporated into a complete settlement agreement within 48 hours after its signing.[5]

On November 30, 2013, the parties filed a "Joint Notice of Settlement," representing that the parties had "reached an agreement in a signed term sheet."[6] The parties continued to "work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the terms set out in the term sheet.[7] On December 2, 2013, as trial was set to start, the parties appeared before the court with news that they "reached an agreement with respect to the main terms and are just really hammering out the details at this point."[8] Based on this representation, the court sent the jury home and noted on the docket that the "case has settled."[9] In the following days, negotiations between the parties to further memorialize the settlement deteriorated. Things then fell apart completely. GTE insisted that, instead of the term sheet, all further settlement negotiations revolve around a nine-point list.[10] Western Digital rejected the demand and followed with this motion to enforce settlement.

---

[4] *See* Docket No. 533, Exhibit A.

[5] *See* Docket No. 533, Exhibit A at 8.

[6] Docket No. 474.

[7] *See* Docket No. 474 at ¶ 18.

[8] Docket No. 529 at 4:8-10.

[9] Docket No. 475.

[10] *See* Docket No. 531-6, Exhibit C.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

## II. ANALYSIS

There is no question that "[t]he district court [has] inherent power to enforce the agreement in settlement of litigation before it."[11] "Whether a contract is certain enough to be enforced is a question of law. Courts favor enforcing contracts if the parties' intention can be ascertained."[12]

"A settlement agreement is binding on the parties, and a party challenging the validity of a settlement agreement carries a heavy burden."[13] Because the signed term sheet purports "to resolve all claims pending, or previously pending, in the lawsuit,"[14] GTE has the burden to prove that the term sheet is unenforceable.[15]

The construction and enforcement of settlement agreements are governed by principles of local law that apply to the interpretation of contracts, even if the underlying cause of action is federal.[16] Under California law, a signed document is a valid agreement if it contains all material terms in a reasonably definite manner.[17] If a material term is missing or not sufficiently definite, the agreement is unenforceable. Further, if a missing term is material but merely affects the *value*

---

[11] *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

[12] *David B. Newman CPA, Inc. v. Jerome Leventhal Accountancy Corp.*, No. B237166, 2013 Cal. App. Unpub. LEXIS 6441, at *9 (Sept. 11, 2013) (citing *Patel v. Liebermensch*, 45 Cal. 4th 344, 348, n.1 (2008); *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1255-56 (2002)).

[13] *Taylor v. Dep't of Interior*, 34 F. App'x 766, 767 (Fed. Cir. 2002) (citing *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1468 (Fed. Cir. 1998)); *accord Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.").

[14] Docket No. 533, Exhibit A at 7.

[15] *See Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.").

[16] *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992).

[17] *See* Cal. Civ. Code § 3390 ("An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be specifically enforced.); *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 816 (1998) (citations omitted) (holding that an agreement "must not only contain all the material terms but also express each in a reasonably definite manner.").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

of the bargain, the court may still find the settlement agreement enforceable, considering the language of the document, the intent of the parties, whether the parties have delegated choices over material terms, and public policy favoring the enforcement of settlement agreements.[18]

### A.    The Term Sheet Contains All the Material Terms

Whether any material terms are missing from the contract "depends on the agreement and its context and also on the subsequent conduct of the parties."[19]  The court may take into consideration the record of the parties' negotiations, the financial impact on the parties, the relative importance of the term to the parties, and whether the term's absence would make enforcing the remainder of the contract unfair to either party.[20]  Furthermore, the Ninth Circuit draws a distinction between the two ways a term may be material:

> It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain.  Obviously, omission of the former would render the contract a nullity.  But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages. This is not a very demanding test.[21]

---

[18] *See Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011).

[19] *Lamle v. Mattel, Inc.*, 394 F.3d 1355 (2005) (citing *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 206 (1984), *overruled on other grounds by Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85 (1995)).

[20] *See Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) (citing *Weddington Productions*, 60 Cal. App. 4th at 808) (One measure of whether terms are material is "whether they have been the subject of debate and discussion during the course of the parties' negotiations".); *Terry v. Conlan*, 131 Cal. App. 4th 1445, 1458-59 (2005) (looking to the discussions on the record to determine the material terms of the agreement and finding that "the means to achieving the goals were material to the settlement, because they had a significant financial impact on the parties."); *City of Los Angeles v. Superior Court*, 51 Cal. 2d 423, 433 (1959) ("The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement.").

[21] *Facebook, Inc.*, 640 F.3d at 1037-38 (citing *Elite Show Servs., inc. v. Staffpro, Inc.*, 119 Cal.App.4th 263 (2004)).

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

Like the settlement agreement in *Facebook*, the term sheet easily passes this test: both sides agreed that Western Digital would get a variety of testers and services, GTE would get a total of ███, ███, and everyone would return to a productive commercial relationship rather than this destructive litigation.

Also as in *Facebook*, the term sheet here even specifies that the parties would complete the "material" terms that GTE claims are missing from the deal: "The parties will work in good faith to draft within 48 hours a settlement agreement and a purchase order agreement and any other agreement reasonably necessary to effect the above terms." This clause confirms that GTE and Western Digital meant to bind themselves and each other to a deal, "even if some material aspects of the deal would be prepared later."[22] .

What GTE and Western Digital disagree about is the scope of the future purchase orders contemplated in the term sheet and GTE argues this scope is material to the settlement.[23] The bulk of GTE's consideration for signing the term sheet is Western Digital's commitment to issue ███ ███ in future purchase orders. The means of achieving this consideration is undoubtedly important because it dictates the future of the parties' business relationship.[24] It also has a large financial impact on both of the parties, especially since Western Digital is one of GTE's largest customers.[25] In drafting the complete settlement agreement, the details of these purchase orders were the subject of much debate between the parties, indicating their importance to the parties.

---

[22] *Id.* (citing *Sterling v. Taylor*, 40 Cal.4th 757 (2007); *Cal. Lettuce Growers, Inc. v. Union Sugar Co.*, 45 Cal.2d 474 (1955)); *see also Blix Street Records, Inc. v. Cassidy*, 191 Cal.App.4th 39, 48 (2010) ("when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement.").

[23] *See* Docket No. 528-4 at 13.

[24] *See Terry v Conlan*, 131 Cal. App. 4th at 1459 ("The means to achieving the goals were material to the settlement, because they had a significant financial impact on the parties.").

[25] *See* Docket No. 531-4 at 1.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

The scope of future purchase orders is therefore a material aspect of any settlement agreement to resolve this dispute.

However, the details of which future purchase orders count towards the ████████ commitment are not *necessary* terms of the settlement agreement; a contract can still exist without them. It is well-established that the existence of consideration is necessary for a valid contract,[26] and the parties here have agreed on a firm amount of consideration. Instead, the dispute centers around the means of achieving this consideration. Although these means are material to the agreement, they are merely terms that affect the total value GTE is to receive from Western Digital throughout their entire business relationship. Thus, the term sheet is an enforceable settlement agreement as long as the scope of purchase orders is sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages.

**B.      The Material Terms Are Sufficiently Definite**

"The defense of uncertainty is disfavored, and the court should enforce an agreement if it appears the parties intended to enter into a contract and the outlines of the agreement are sufficiently definite that the court knows what is to be enforced."[27]

GTE urges the section in the term sheet defining "Purchase order scope and pricing" is too indefinite to be enforced. The provision reads as follows:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

---

[26] Cal. Civ. Code § 1550 (providing that it is essential to the existence of a contract that there should be a "sufficient cause or consideration."); *Gallagher v. Holt*, 436 F. App'x 754, 755 (9th Cir. 2011) (citations omitted) ("It is well established in California that, to maintain an action at law for breach of contract, one need only prove the existence of consideration, rather than its adequacy."); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001) (citation omitted) ("An essential element of any contract is the consent of the parties, or mutual assent.").

[27] *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002) *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) (citing Okun, 203 Cal. App. 3d at 817); *see also Rosenbluth v. Prudential Sec., Inc.*, 134 F. App'x 124, 125 (9th Cir. 2005) (citations omitted) ("The parties' intentions are determinative of the question of contract formation.").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California



[28]

GTE argues that this language limits purchase order scope strictly to that which is on the Price List, while Western Digital maintains that the parties also agreed to other purchases that fall outside the Price List.  However, the parties agree the Price List includes the V-2002 testers, which are "the bulk of what Western Digital will buy and wants to buy" from GTE.[29]  The Price List includes products that are part of a complete system, but does not say anything about the other products or services Western Digital may purchase.  The disagreement thus centers around whether included in the scope are orders for products or services not on the Price List, including repairs and maintenance,[30] and products GTE makes for other customers.[31]

The term sheet is sufficiently definite to determine both a breach of the agreement as well as damages arising therefrom.  A jury could discern whether a future Western Digital purchase order would count toward the committed ████.  There are not two reasonable interpretations, as GTE suggests.  In fact, GTE's argument that purchase orders are limited to only those goods/services on the Price List contradicts language in the document itself.  For example, ██ ████████████████████████████████████████████, which are not on the Price List, but yet the document explicitly says are included in the scope of purchase orders.

---

[28] Docket No. 533, Exhibit A.

[29] Docket No. 529.

[30] *See* Docket No. 538-5 at 2.

[31] *See id.*; Docket No. 538-4 at 8.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

Additionally, Western Digital is authorized in the agreement ███████████████

████████████████████████████████████████████████████████████████

████████████████████████[32] The term sheet thus acknowledges that

products/services may be ordered other than just those on the Price List.

Furthermore, any ambiguities in the term sheet generating this dispute involve such

relatively small amount of purchase orders that the scope of purchase orders can still be sufficiently

definite without their resolution.  Looking at the disagreement in the context of the entire

agreement, and because repairs and maintenance will account for such a small portion of the ████

████, this disagreement is immaterial.[33]  Therefore, the term sheet is sufficiently definite to

determine which of Western Digital's future purchase orders could be credited against its ████

████ commitment and to determine any breach of an obligation arising therefrom.

A jury also could easily determine damages arising from any future dispute over the term

sheet.  Western Digital is required to pay ████████████████████████ in purchases

over ████████ (unless the agreement is subsequently terminated).  Therefore, GTE can expect to

receive a total of ████████ so long as it tenders appropriate purchase orders.  If it does not then

receive these payments, damages can easily be calculated.

The parties certainly gave the court the impression that they intended to settle their dispute.

The best place to look for party intent is the document itself, where the parties explicitly agreed

that they intended the term sheet to end this litigation.[34]  The document was signed by senior

executives of both companies, including GTE's President and Western Digital's General Counsel.

---

[32] Docket No. 533, Exhibit A at 2.

[33] *Cf. Terry v. Conlan*, 131 Cal. App. 4th 1445, 1455 (2005) (holding that a settlement agreement
was not enforceable in a dispute regarding disposition of trust assets where terms left in dispute
included management of the estate, status and category of the trust, payment of attorney fees,
compensation for services previously rendered, and others).

[34] *See* Docket No. 533, Exhibit A at 2 ("The parties 'hereby agree to the above terms to resolve all
claims pending, or previously pending, in the lawsuit.'").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

They then filed a "Joint Notice of Settlement" representing to the court that the parties "reached an agreement in a signed term sheet" and requested for the trial to be taken off calendar.[35]  A couple days later, the parties appeared in court saying they "had reached an agreement with respect to the main terms and are just really hammering out the details at this point."[36]  The court's docket confirms its understanding that the case had settled.[37]

The Ninth Circuit has an expansive view of what it means to settle a case and California has a strong policy in favor of enforcing settlement agreements.[38]  "California law permits parties to bind themselves to a contract, even when they anticipate that 'some material aspects of the deal [will] be papered later.'"[39]  The fact that the parties were to later draft other agreements "reasonably necessary to effect" the terms of the term sheet, does not make any less binding those terms that *are* agreed to in the signed term sheet.[40]  Even if the parties still had to work out the details of purchase order scope, those details were not so essential as to invalidate the main terms that the parties did work out.[41]  The court sees little reason to incentivize parties to back out of a

---

[35] Docket No. 474.

[36] Docket No. 529.

[37] *See* Docket No. 475.

[38] *See Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007) ("Strong public policy in favor of the settlement of civil cases gives the trial court, which approves the settlement, the power to enforce it.").

[39] *Larson v. Warner Bros. Entm't, Inc.*, 504 F. App'x 586, 587-88 (9th Cir. 2013) (citing *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011); *Harris v. Rudin, Richman & Appel,* 74 Cal. App. 4th 299 (1999)).

[40] *See* Docket No. 533, Exhibit A.

[41] *See Mann v. Mueller*, 140 Cal. App 2d 481, 487 (1956) ("Where the parties, as in the instant action, have agreed in writing upon the essential terms of their contract, even though several more formal instruments are to be prepared and signed later, the written agreement which they have already signed is a binding contract."); *Facebook, Inc.*, 640 F.3d at 1038 (finding the parties "meant to bind themselves and each other, even though everyone understood that some material aspects of the deal would be papered later").

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

United States District Court
For the Northern District of California

deal to which they clearly intended to be bound.[42] At the time of signing, both GTE and Western Digital intended to enter into an agreement and intended it to end all litigation. GTE simply has not met its burden to show that the term sheet is so indefinite as to render it an unenforceable settlement agreement.

### C. The Termination Clause Does Not Render the Agreement Unenforceable

GTE separately argues the termination clause renders the term sheet an illusory promise and thus unenforceable.[43] This provision essentially permits Western Digital to terminate the entire agreement if GTE sues for breach of contract. Thus, a dispute about a small amount of money could provide the hook from which Western Digital could avoid issuing purchase orders totaling ████. However, there is a difference between a bad deal and an unenforceable one. GTE may have entered into a bad deal because such an immaterial portion of the consideration can be the grounds for termination of the entire settlement agreement. However, that does not alter the conclusion that the parties intended to end their dispute with the term sheet and its material terms are sufficiently definite to do just that. Western Digital is still required to pay ████ ████, which, by itself, is adequate consideration. Furthermore, GTE has control over the condition precedents for any Western Digital termination action. The agreement, therefore, is not illusory. This termination provision was agreed to by both parties and does not render the agreement unenforceable.[44]

---

[42] *See Facebook*, 640 F.3d. at 1034 ("There are also very important policies that favor giving effect to agreements that put an end to the expensive and disruptive process of litigation . . . [T]here is an overriding public interest in settling and quieting litigation.").

[43] *See* Docket No. 538-4 at 14-15.

[44] Western Digital separately argues that GTE should be judicially estopped from arguing there is no enforceable settlement agreement because it has taken two inconsistent positions – that the case had settled and then later that it had not. Judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." *Blix Street Records*, 191 Cal.App.4th at 47. However, the court is not persuaded that judicial estoppel should apply here

11

United States District Court
For the Northern District of California

### III. CONCLUSION

GTE has not met its burden to show that the term sheet agreement does not contain all the material terms to settle this case or that the material terms are not sufficiently definite. "At some point, litigation must come to an end. That point has now been reached."[45]

**IT IS SO ORDERED.**

Dated: March 21, 2014

PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

---

because GTE was not completely successful in asserting the position that the case had settled. Although the court did send home the jury relying on both parties' representations, the case was not yet dismissed and it was understood that ancillary issues might remain. These facts do not rise to the level of egregious circumstances this doctrine is intended to prevent.

[45] *Facebook, Inc.*, 640 F.3d at 1042.

Case No. 5:11-cv-03786-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT